# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE HUNTINGTON BANCSHARES INC., ERISA LITIGATION,<br><br>This document relates to:<br><br>No. 2:08-cv-0175<br>No. 2:08-cv-00197 | Case No. 2:08-cv-00165<br><br>District Judge Gregory L. Frost<br>Magistrate Judge Terence P. Kemp |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS; AND APPROVAL OF CLASS NOTICE

**BARROWAY TOPAZ  KESSLER MELTZER & CHECK, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@btkmc.com
eciolko@btkmc.com
plevan@btkmc.com
mgyandoh@btkmc.com

*Co-Lead Counsel for Plaintiffs*

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko
Derek W. Loeser
David Copley
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
dcopley@kellerrohrback.com

*Co-Lead Counsel for Plaintiffs*

**KITRICK, LEWIS & HARRIS CO., L.P.A.**
Mark Lewis, Ohio Bar #0063700
Mark Kitrick, Ohio Bar #0000021
515 East Main Street, Suite 515
Columbus, Ohio  4315-5398
Telephone:  (614) 224-7711
Facsimile:  (614) 225-8985
mlewis@kitricklaw.com
mkitrick@kitricklaw.com

*Liaison Counsel for Plaintiffs*

**S.D. OHIO RULE 7.2(A)(3) TABLE OF CONTENTS AND SUMMARY**

I.     **INTRODUCTION**.................................................................................................1

Based on an evaluation of the facts, governing law and the recognition of the substantial risks of continued litigation, Plaintiffs and Co-Lead Counsel submit that the proposed Settlement of this case for $1,450,000 cash, is fair, reasonable and adequate, and in the best interests of the proposed Settlement Class by providing a meaningful recovery now.

II.    **FACTUAL AND PROCEDURAL BACKGROUND** .......................................................3

    A.    **Description Of The Action** ...................................................................3

Plaintiffs' Consolidated Amended Complaint for Violations of ERISA ("Complaint"), filed on August 4, 2008 alleges, *inter alia*, that Defendants and other Plan fiduciaries violated their statutory duties of prudence, care, and loyalty under Section 404(a) of ERISA, 29 U.S.C. § 1104(a), through their management, oversight and administration of the Plan's investment in Huntington stock during the Class Period. Plaintiffs further assert five (5) causes of action for the losses suffered by the Plan as the result of the alleged breaches of fiduciary duty by the Defendants.

    B.    **Investigation Of Claims And Plaintiffs' Complaint** ...........................................5

Plaintiffs' thorough and diligent review of documents including, but not limited to (i) review of documents produced by Defendants, including Plan-related documents in response to Plaintiffs' request for such documents pursuant to ERISA §104(b); (ii) review of publicly-available materials (including government agency filings) relating to the Company and the Plan; (iii) analysis of specific corporate transactions, and (iv) interviews of Plan participants, resulted in a 78 page, 279 paragraph Complaint detailing Defendants' operation and administration of the Plan.

    C.    **Summary Of The Litigation**..................................................................6

This complex litigation was hotly contested by Defendants from the outset as evidenced by the briefing regarding Defendants' motion to dismiss, followed by briefing on a  notice of supplemental authority to the Court advising the Court of a recently decided decision relevant to Defendants' motion to dismiss, and by Plaintiffs' notice of appeal to the United States Court of Appeals for the Sixth Circuit on March 6, 2009 appealing the entirety of the Order and judgment in favor of Defendants dismissing Plaintiffs' Complaint.

    D.    **Settlement Negotiations** ......................................................................7

The settlement negotiations in this matter were hard fought, lengthy and certainly arms' length.  Beginning on April 13, 2009, the parties participated in a mediation program conducted by the Office of the Circuit Mediators of the United Court of Appeals for the Sixth Circuit Court of Appeals ("Office of the Circuit Mediators").  Indeed, it was

not until November 30, 2009, following months of arm's-length negotiations and mediation sessions with an independent mediator -- Mariann Yevin -- from the Office of the Circuit Mediators that the Parties, through their attorneys, reached an agreement.

**E. The Proposed Settlement ...................................................................................8**

The Settlement provides that the Defendants will pay $1,450,000 to the Plan to be allocated to participants pursuant to a Court-approved Plan of Allocation which will be presented to the Court for approval in connection with Plaintiffs' motion for final approval of the Settlement. In exchange, the Plaintiffs and the Plan will dismiss all claims in the Complaint and release related claims.

**F. Reasons For The Settlement ...............................................................................9**

Plaintiffs entered into this Settlement Agreement after evaluating: (1) investigation materials and documents produced by Defendants; (2) the serious questions of law and fact which could preclude any recovery by the Class especially in light of the fact that Plaintiffs' Complaint was dismissed by the Court; (3) the range of possible recovery; and (4) the substantial expense and length of time necessary to prosecute this action through appeal, and if successful on appeal, trial, post-trial motions, and likely further appeals, and the significant uncertainties in predicting the outcome of this complex litigation.

**G. Proposed Timetable ...........................................................................................10**

The proposed Preliminary Approval Order provides September 1, 2011 at 12:00 p.m. as the date and time for the Fairness Hearing, which the Court selected after consulting with the Parties. Additionally, the Parties have consented to a generalized schedule of events if the Court is inclined to preliminarily approve the Settlement Agreement.

**III. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................................11**

**A. Description Of The Notice Plan .........................................................................11**

The proposed Notice Plan includes multiple components designed to reach the largest number of Class members possible, including direct mailing and publication in a newspaper and on the internet, and will fully inform Settlement Class members about the Litigation, the proposed Settlement, and the facts that they need to make informed decisions about their rights.

**B. The Proposed Notice Plan Meets The Requirements Of Due Process ............12**

Courts in this Circuit, and in particular this district, have determined that direct mailings to class members' last known address coupled with publication of notice provide class members with reasonable notice. Here, Plaintiffs' proposed means of class notice exceed these standards. Indeed, the form and method of notice of the proposed Settlement agreed to by the Parties satisfies all due process considerations and meets the

requirements of FED. R. CIV. P. 23(e)(1),  and thus more than satisfies the mandates of due process.

**IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE   AND SHOULD BE APPROVED BY THE COURT** .........................13

    **A. The Law Favors And Encourages Settlement** ....................................13

Strong judicial policy favors resolution of litigation prior to trial, particularly in class actions. *Franks v. Kroger Co*., 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (1982) (the law generally favors and encourages the settlement of class actions); *In re Nationwide Fin. Servs. Litig.,* No. 08-CV-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) (same); *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369 (S.D. Ohio 2006); 6 James Wm. Moore et al., Moore's Federal Practice (3d Ed. 1999); Manual for Complex Litigation (Third)  § 30.42 (1995); Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.41 (3d ed. 1992).

    **B. The Proposed Settlement Should Be Approved** ................................14

        **1. Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in Settlement** ................................................................................14

            **a. Likelihood Of Success** ...................................................14

The likelihood of success on the merits balanced against the relief obtained through settlement is an important factor for evaluating the propriety of settlement approval. *Gen Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369, 372 (S.D. Ohio 2006). Here, while Co-Lead Counsel believes that Plaintiffs would be successful in their appeal of the Court's Order dismissing the Complaint, and ultimately at trial, they recognize that ultimate success is not assured and believe that this Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable.

            **b. The Amount and Form of Relief Offered in Settlement** ...........16

A proposed class action settlement must fall "within the 'range of reasonableness.'" *Manners v. American General Life Ins. Co.*, No. Civ. A. 3-98-0266, 1999 WL 33581944, at *20 (M.D. Tenn. Aug. 11 1999). Here, Plaintiffs acknowledge they may face substantial risk in proving damages as ERISA requires the breaching fiduciaries to make good to the plan the difference between the most profitable plan alternative and the challenged imprudent investment. Accordingly, the $1.45 million Settlement Payment here provides valuable relief to all applicable Plan participants. Once approved, the Settlement Payment will be allocated to each Class Member's account without the need for any further action to be taken by the Class Members to avail themselves to relief. On balance, consideration of (1) the benefits that Plaintiffs and the Settlement Class will receive from the Settlement Agreement, (2) the uncertain viability

of Plaintiffs' legal claims and claims for damages, and (3) the risk of continued litigation compared with the form of relief achieved now all favor approval of the Settlement.

**2.      The Complexity, Expense and Likely Duration of the Litigation Favors Settlement**......................................................................18

Courts must evaluate the complexity, expense and likely duration of litigation before approving a class action settlement. *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).  Courts in this district have aptly characterized class action trials as a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000).  Class action trials of claims alleging breach of fiduciary duty under ERISA are no different.  The certain and immediate benefits to the Class as a result of the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal.

**3.      The Stage of the Proceedings and the Amount of Discovery Completed**.................................................................................19

Exhaustive discovery is not a prerequisite for preliminary approval of class action settlements. Neither is formal discovery. *See UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).  Rather, "the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Manners*, 1999 WL 33581944, at *21. The volume and substance of Plaintiffs' knowledge of this case ascertained from the diligent pre-filing investigation, further investigation in preparation for the mediation, and investigation prior to agreeing to settle Plaintiffs' claims, are unquestionably adequate to support the Settlement.

**4.      The Recommendation and Experience of Counsel**................................20

Courts also recognize that the opinion of experienced and informed and competent counsel in favor of settlement should be afforded substantial consideration. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).  Here, Co-Lead Counsel have substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this Action.  Co-Lead Counsel, together and separately, have litigated numerous similar ERISA class action cases.  Thus, based on  (1) their extensive and broad based experience litigating and successfully resolving ERISA breach of fiduciary duty cases, and (2) their diligent investigation of the claims and fully exploring the claims and defenses during the mediation process and while negotiating a potential settlement, Co-Lead Counsel strongly recommend this Settlement.

**5.      The Nature of the Negotiations**..................................................................23

Settlement approval is appropriate where the parties reach an agreement after arm's length negotiations, where there is no collusion or benefit to certain parties to the detriment of the class as a whole. *See In re Dun & Bradstreet Credit Services Customer*

*Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).  The Parties reached settlement in this case after intensive drawn out and adversarial negotiations.  Moreover, as noted above, after the principal terms of settlement had been reached, several weeks of further negotiation ensued regarding the specific terms of the Settlement.  Thus, this factor also weighs in favor of approving the Settlement.

**6.      The Objections Raised by the Class Members** .......................................24

At this stage of the litigation, prior to preliminary approval, and class notice, no members of the Settlement Class have raised any objections to the Settlement Agreement.  Each of the Plaintiffs, who are Settlement Class members, approves this Settlement.

**7.      Public Interest** .........................................................................................24

The Sixth Circuit has expressly recognized the public interests served through compromise.  *See, e.g.*, *Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 555 n.11 (6th Cir. 1982), *rev'd on other grounds*, 467 U.S. 561 (1984); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citing *also Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)).  The Settlement of this litigation brings closure to litigation, which if litigated through the current appeal, trial and further appeals would consume an enormous amount of the Parties' time and the valuable resources of this Court.  Further, the Settlement brings significant benefit to the Class years earlier than the uncertain amount to be gained years from now after trial.  Accordingly, the public interest, as well as the Class members', interests are served by resolution of this action now.

**V.     CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES**......................................................................................................25

**A.      The Proposed Class Meets The Prerequisites For Class Certification Under Rule 23(a)** ...................................................................................25

Plaintiffs' claims for breach of fiduciary duty under ERISA are well-suited for certification.  Class certification for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure entails a two-step analysis.  First, the Court must determine whether Rule 23(a)'s prerequisites are met, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Here, Plaintiffs can easily satisfy the prerequisites of Rule 23(a).

**1.      Rule 23(a)(1) – "Numerosity"** ...................................................................26

To satisfy the numerosity requirement, the court must find that the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Defendants do not dispute numerosity and the Plan's publicly filed documents reveal that there were thousands of participants in the Plan.  Thus, numerosity is satisfied.

        2.          Rule 23(a)(2) – "Commonality"................................................27

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Class proposed in this action easily meets this requirement as the paramount question of law and fact -- whether the Defendants breached their fiduciary duties owed to the Plan and its participants by allowing the Plan to invest in Company stock when Defendants knew or should have known of non-public financial and operational problems that affected the prudence of Huntington stock as an investment of the Plan during the Class Period -- is shared by *all* Settlement Class members.

        3.          Rule 23(a)(3) – "Typicality"....................................................28

Typicality exists where plaintiffs' claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Plaintiffs' claims are clearly typical of those of the proposed Class. The claims of the Plaintiffs and the Class arise from Defendants' alleged breaches of fiduciary duty and Plaintiffs and the Class seek to recover based upon the very same legal theories. Each class member alleges injury arising out of Defendants' alleged wrongful conduct of breaching of their fiduciary duties and violating ERISA during the Class Period as alleged in the Complaint. Therefore, the typicality requirement of Rule 23(a)(3) is easily met.

        4.          Rule 23(a)(4) – Adequacy of Representation.........................................29

This Circuit has set out two criteria for determining the adequacy of representation: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Plaintiffs' here meet both of the Sixth Circuit's criteria as (1) Plaintiffs' interests here are not antagonistic to those of the Class but rather each individual Plaintiff's focus is on recovering losses to the Plan and, only indirectly, to themselves, and (2) Plaintiffs have retained qualified, experienced attorneys who are at the forefront of this type of ERISA breach of fiduciary duty class action.

**B.**        **The Class May Be Properly Certified Under Rule 23(b)(1)**..............................30

In addition to the four prerequisites of Rule 23(a), a case may proceed as a class action if it also satisfies one of the three alternative requirements of Rule 23(b). FED. R. CIV. P. 23(b). Plaintiffs request certification of a Settlement Class under Rule 23(b)(1).

        1.          Subsection 23(b)(1)(B) .............................................................31

Many courts have relied on Rule 23(b)(1)(B) in certifying a class in similar cases, because it is particularly suited for cases alleging breach of a defendant's fiduciary obligations to plaintiffs. *See* FED. R. CIV. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating certification under 23(b)(1) is appropriate "in cases [such as the instant one] charging breach of trust by fiduciary to large class of beneficiaries"); *In*

*re Nortel Networks, Corp. "ERISA" Litig.*, No. 03-md-1537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009).

**2. Subsection 23(b)(1)(A)** ............................................................................**31**

It is not uncommon for courts to certify ERISA class actions under both subsections 23(b)(1)(A) and 23(b)(1)(B). *See, e.g.*, *Smith*, 238 F.R.D. at 617; *Rankin v. Rots*, 220 F.R.D. at 522; *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 at *16. Again, the representative nature of Plaintiffs' ERISA claims alleging Defendants' plan-wide fiduciary misconduct illustrates the propriety of certification under this subsection. Therefore, if necessary, it is clear that the proposed Class could be certified under Rule 23(b)(1)(A).

**3. The Proposed Class Meets the Requirements of Rule 23(b)(2)** ...........**31**

Certification of the proposed Class would also be appropriate under Rule 23(b)(2). Defendants' challenged conduct in this case (and the relief sought from the effects of it) affected the Plan, and the proposed class of Plan participants, as a whole. Moreover, courts have recognized that certification is appropriate under Rule 23(b)(2) where declaratory or injunctive relief is an important aspect of the overall relief sought.

**4. Rule 23(g) is Satisfied**............................................................................**33**

Rule 23(g) requires the Court to examine the capabilities and resources of counsel for the Class to determine whether they will provide adequate representation to the Class. Here, counsel for the Class satisfy Rule 23(g) because Co-Lead Class counsel has substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this action. The capabilities and resources of counsel for the Class are demonstrated by the work performed to date in this case. Hence, Co-Lead Counsel's extensive efforts in prosecuting this case, in combination with the in-depth knowledge of counsel for the Class, satisfy Rule 23(g).

**VI. CONCLUSION** ..............................................................................................**33**

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Abbott v. Lockheed Martin Corp.*,
No. 06-CV-0701, 2009 WL 969713 (S.D. Ill. Apr. 03, 2009)................................26

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................27, 28, 29

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................25

*In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*,
No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005)............................22

*Bailey v. Great Lakes Canning, Inc*,
908 F.2d 38 (6th Cir. 1990) ................................................................14

*Bonime v. Doyle*,
416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) ................17

*Brieger v. Tellabs, Inc.*,
473 F. Supp. 2d 878 (N.D. Ill. 2007) ................................................................22

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ................................................13, 14, 15

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................19, 24, 26

*In re Citigroup ERISA Litig.*,
No. 07-CV-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009)............................15

*In re CMS Energy ERISA Litig.*,
225 F.R.D. 539 (E.D. Mich. 2004) ................................................26, 28, 31

*Crawford v. TRW Automotive U.S. LLC*,
No. 06-CV-14276, 2007 WL 851627 (E.D. Mich. March 21, 2007) ....................27

*Cross v. Nat'l Trust Life Ins. Co.*,
553 F.2d 1026 (6th Cir. 1977) ................................................................29

*Dann v. Lincoln National Corp. et al.*,
No. 08-CV-5740, 2010 WL 1644276 (E.D. Pa. Apr. 20, 2010)............................22

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................3

*Detroit Police Officers Ass'n v. Young*,
    920 F. Supp. 755 (E.D. Mich. 1995)...........................................................................14

*DiFelice v. U.S. Airways, Inc.*,
    235 F.R.D. 70 (E.D. Va. 2006) ...................................................................................26

*Dudenhoeffer v. Fifth Third Bancorp*,
    No. 08-CV-538, 2010 WL 4970767 (S.D. Ohio Nov. 24, 2010).................................16

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997)...................................................................................15

*In re Dun & Bradstreet Credit Services Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ..............................................................................24

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71
    (1982) ..........................................................................................................................13

*Gee v. UnumProvident Corp.*,
    No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005)...............................22

*Gen Tire & Rubber Co. Sec. Litig.*,
    726 F.2d 1075 (6th Cir. 1984) ...................................................................................14

*George v. Kraft Foods Global*,
    270 F.R.D. 355 (ND. Ill. Aug. 25, 2010) ..............................................................26, 32

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................17, 19

*Graden v. Conexant Sys., Inc.*,
    496 F.3d 291 (3d Cir. 2007)........................................................................................17

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................................................12

*Hans v. Tharaldson*,
    No. 05-CV-115, 2010 WL 1856267 (D.N.D. May 7, 2010).......................................26

*Harris v. Koenig*,
    No. 02-CV-618, 2010 WL 4553537 (D.D.C. Nov. 12, 2010) ...................................26

*In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*,
    No. 08-CV-01708, 2010 WL 135186 (D. Conn. Jan. 13, 2010)...............................22

*In re JDS Uniphase Corp. ERISA Litig.*,
    No. 03-CV-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005)..........................................22

*Jones v. Novastar Fin., Inc.*,
    257 F.R.D. 181 (W.D. Mo. 2009) ....................................................................................26, 31

*Levell v. Monsanto Research Corp.*,
    191 F.R.D. 543 (S.D. Ohio 2000) ........................................................................................18

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................15

*Manners v. Am. General Life Ins. Co.*,
    No. 98-CV-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11 1999) ...........................16, 19, 24

*In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*,
    No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006)............................................22, 26

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
    No. 08-CV-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009) .............................................22, 31

*Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ...........................................................................................17

*Moore v. Comcast Corp.*,
    No. 08-CV-0773, 2010 WL 1375462 (E.D. Pa. Apr. 6, 2010) ...................................26, 28, 31

*Mullane v. Central Bank & Trust Co.*,
    339 U.S. 306 (1950)...........................................................................................................12

*In re Nationwide Fin. Servs. Litig.*,
    No. 08-CV-249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009).........................13

*In re Nortel Networks Corp. ERISA Litig.*,
    MDL No. 03-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)...............................26, 31

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................................23

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ............................................................................... passim

*Rankin v. Rots*,
    No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006)...............13, 15

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009)................................................................................................25

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ........................................................................29

*Shirk v. Fifth Third Bancorp*,
  No. 05-CV-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ...........................................26

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .....................................................................27, 28

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009)...........................................................26, 27, 28, 31

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)........................................................................27

*Stotts v. Memphis Fire Dept.*,
  679 F.2d 541 (6th Cir. 1982), *rev'd on other grounds*, 467 U.S. 561 (1984).........................24

*Tatum v. R.J. Reynolds Tobacco Co.*,
  No. 02-CV-0373, 2008 WL 4482857 (M.D.N.C. Sept. 29, 2008) ...........................................26

*In re Telectronics Pacing Sys., Inc.*,
  186 F.R.D. 459 (S.D. Ohio 1999) ...................................................................14

*In re Telectronics Pacing Sys, Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................18

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001).....................................................................33

*UAW v. General Motors Corp.*,
  No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ......................14, 16, 19, 20

*Veera v. Ambac Plan Admin. Order Comm.*,
  No. 10-CV-4191, 2011 WL 43534 (S.D.N.Y. Jan. 6, 2011) ...................................15

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................17

*In re Williams Cos. ERISA Litig.*,
  231 F.R.D. 416 (N.D. Okla. 2005).................................................................33

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .................................................................14, 20

*Woods v. Southern Co.*,
  396 F. Supp. 2d 1351 (N.D. Ga. 2005) ............................................................22

*In re Xcel*,
364 F. Supp. 2d 980 (D. Minn 2005) ...................................................................19

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ............................................................................................32

*Smith v. Aon Corp.*,
238 F.R.D. 609 (N.D. Ill. 2006) .........................................................................31

**DOCKETED CASES**

*In re Advanta Corp. ERISA Litig.*,
No. 09-CV-04974 (E.D. Pa.) ...............................................................................21

*In re AIG ERISA Litig.*,
No. 04-CV-9387 (S.D.N.Y.) ................................................................................22

*Alvidres v. Countrywide Fin. Corp.*,
No. 07-CV-05810 (C.D. Cal.) ..............................................................................22

*In re Beazer Homes USA, Inc. ERISA Litig.*,
No. 07-CV-00952-RWS (N.D. Ga.) .....................................................................21

*In re Beazer Homes USA, Inc. ERISA Litig.*,
No. 07-CV-952 (N.D.Ga.) ....................................................................................23

*Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A., et al.*,
No. 09-CV-00686 (S.D.N.Y. May 28, 2009) .......................................................22

*Brieger v. Tellabs, Inc.*,
No. 06-CV-01882 (N.D. Ill.) .................................................................................2

*In re Broadwing ERISA Litig.*,
No. 02-CV-00857 (S.D. Ohio 2002) ......................................................................3

*Cedarleaf et al. v. Huntington Bancshares Inc., et al.*,
No. 08-CV-0175 (S.D. Ohio) .................................................................................3

*In re CMS Energy ERISA Litig.*,
No. 02-CV-72834 (E.D. Mich.) ...........................................................................22

*In re Delphi Corp. Sec., Derivative, and "ERISA" Litig.*,
MDL No. 1725 (E.D. Mich.) ...............................................................................22

*In re Diebold ERISA Litig.*,
No. 06-CV-0170 (N.D. Ohio) ..............................................................................21

*In re Dynegy, Inc. ERISA Litig.*,
   No. 02-CV-3076 (S.D. Tex.) ....................................................................23

*In re Enron ERISA Litig.*,
   No. 01-CV-3913 (S.D. Tex.) ....................................................................22

*Evans v. Akers*,
   No. 04-CV-11380-WGY (D. Mass. June 8, 2009) ..................................13

*In re First American Corp. ERISA Litig.*,
   No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007) ........................22

*In re Ford Motor Co. ERISA Litig.*,
   No. 06-CV-11718 (E.D. Mich.) ...............................................................21

*In re Ford Motor Co. ERISA Litig.*,
   No. 06-CV-11718 (E.D. Mich. Feb. 15, 2011) ..........................................3

*In re Ford Motor Company ERISA Litig.*,
   No. 06-CV-11718 (E.D. Mich. Feb. 15, 2011) ........................................13

*Gee v. UnumProvident Corp., et al*,
   No. 03-CV-147 (E.D. Tenn. Jan. 25, 2008) .......................................3, 13

*Gee v. UnumProvident Corp.*,
   No. 03-CV-1552 (E.D. Tenn.) .................................................................21

*Gee v. UnumProvident Corp.*,
   No. 03-CV-1552 (E.D. Tenn. Sept. 3, 2003) ...........................................22

*In re Global Crossing ERISA Litig.*,
   No. 02-CV-7453 (S.D.N.Y) ....................................................................22

*In re Goodyear Tire & Rubber Co. ERISA Litig.*,
   No. 03-CV-02182 (N.D. Ohio) ................................................................23

*In re HealthSouth ERISA Litig.*,
   No. 03-CV-1700 (N.D. Ala.) ...................................................................23

*In re Honeywell ERISA Litig.*,
   No. 03-CV-1214 (D.N.J.) ........................................................................22

*In re Household Int'l, Inc. ERISA Litig.*,
   No. 02-CV-7921 (N.D. Ill.) .....................................................................23

*Koch v. Loral Space & Commc'ns Ltd.*,
   No. 03-CV-9729 (S.D.N.Y.) ....................................................................22

*In re Lear ERISA Litig.*,
    No. 06-CV-11735 (E.D. Mich.) ...................................................................21

*In re Lear ERISA Litig.*,
    No. 06-CV-11735 (E.D. Mich. 2006) .............................................................3

*In re Lear ERISA Litig.*,
    No. 06-CV-11735 (S.D. Mich. Apr. 10, 2006) ............................................22

*In re Lear ERISA Litig.*
    No. 06-cv-11735 (E.D. Mich. Mar. 26, 2009) .............................................13

*Lewis v. El Paso Corp.*,
    No. 02-CV-4860 (S.D. Tex. Feb. 3, 2009) ...................................................13

*In re Lincoln Nat'l ERISA Litig.*,
    No. 08-CV-5740 (E.D. Pa.) ..........................................................................21

*In re Loral Space ERISA Litig.*,
    No. 03-CV-9729 (LTS) (S.D.N.Y. Sept. 9, 2008) .......................................13

*In re Lucent Technologies, Inc. ERISA Litig.*,
    No. 01CV--3491 (D.N.J.) .............................................................................22

*In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.*,
    No. 07-CV-9633 (S.D.N.Y.) .........................................................................22

*In re Merck ERISA Litig.*,
    No. 05-CV-01151 (D.N.J. ............................................................................23

*In re National City Corp. ERISA Litig.*,
    No. 08-CV-70000 (N.D. Ohio) .....................................................................21

*In re National City ERISA Litig.*,
    08-nc-70000 (N.D. Ohio Nov. 30, 2010) ................................................3, 13

*In re Polaroid Fin'll Corp. ERISA Litig.*,
    No. 01-CV-5027 (N.D.Cal.) .........................................................................23

*In re Providian Financial Corp. ERISA Litig.*,
    No. 01-CV-5027 (N.D. Cal.) .........................................................................22

*In re R.H. Donnelley Corp. ERISA Litig.*,
    No. 09-CV-7571 (N.D. Ill. Jan. 10, 2011) ...................................................22

*In re R.H. Donnelley ERISA Litig.*,
    No. 09-CV-07571 (N.D. Ill.) .........................................................................21

*Rankin v. Rots*,
No. 02-CV-71045 (E.D. Mich. 2002) ..............................................................................3, 29

*In re Raytheon ERISA Litig.*,
No. 03-CV-10940-RGS (D. Mass.) ..........................................................................................22

*In re Schering-Plough Corp. ERISA Litig.*,
No. 03-CV-1204 (D.N.J.) ..........................................................................................................22

*Shane v. Amcore Fin. Inc.*,
No. 10-CV-50089 (N.D. Ill.) ....................................................................................................21

*In re: SLM Corp. ERISA Litig., et al.*,
No. 08-CV-4334 (S.D.N.Y.) ....................................................................................................21

*In re Syncor ERISA Litig.*,
No. 03-CV-2446 (C.D. Cal.) ....................................................................................................23

*Uberti v. Huntington Bancshares Inc., et al.*,
No. 08-CV-0197 (S.D. Ohio) ......................................................................................................3

*In re Visteon Corp. ERISA Litig.*,
No. 05-cv-71205 (E.D. Mich. Mar. 9, 2007) ....................................................................3, 13

*In re Visteon ERISA Litig.*,
No. 05-CV-71205 (E.D. Mich.) ................................................................................................22

*In re Washington Mutual, Inc., et al. ERISA Litig.*,
No. 07-1874 (W.D. Wash.) ........................................................................................................22

*In re Westar Energy Inc. ERISA Litig.*,
No. 03-CV-4032 (D. Kan.) ........................................................................................................22

*In re Williams Cos. ERISA Litig.*,
No. 02-CV-153 (N.D. Okla.) ....................................................................................................23

*Wilson v. Federal Home Loan Mortgage Corp.*,
MDL No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y.) ..............................................................22

*In re WorldCom, Inc. ERISA Litig.*,
No. 02-CV-4816 (S.D.N.Y.) ....................................................................................................22

*In re Xerox ERISA Litig.*,
No. 02-CV-1138 (D. Conn.) ....................................................................................................22

*In re YRC Worldwide, Inc. ERISA Litig.*,
No. 09-CV-2593 (D. Kan. Oct. 29, 2010) ..............................................................................22

*In re YRCW Worldwide ERISA Litig.*,
    No. 09-CV-02593 (D. Kan.) ................................................................21

**FEDERAL STATUTES**

29 U.S.C. § 1104(a) ................................................................................3, 4

29 U.S.C. §§ 1109 and 1132 .......................................................................3

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice") .....................................10

§ 409(a), 29 U.S.C. § 1109(a) ...................................................................32

§§ 502(a)(2)-(3), 29 U.S.C. §§ 1132(a)(2)-(3) ................................................32

Employee Retirement Income Security Act of 1974 ("ERISA") .......................................... passim

**RULES**

FED. R. CIV. P. 12(b)(6) .............................................................................6

FED. R. CIV. P. 23 ............................................................................... passim

FED. R. CIV. P. 62.1 .................................................................................7

**OTHER AUTHORITIES**

6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE (3d Ed. 1999) ...................................13

Newberg & Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)....................................13

Plaintiffs Hilda Riccio, Nathan Cedarleaf, Aileen Moening and Carol Uberti ("Named Plaintiffs" or "Plaintiffs"), participants in the Huntington Investment and Tax Savings Plan (the "Plan"), respectfully submit this Memorandum of Law in Support of their Motion for Preliminary Approval of the proposed Settlement[1] ("Motion for Preliminary Approval") entered into with Defendants[2] and for conditional certification of a settlement class pursuant to FED. R. CIV. P. 23.  Plaintiffs seek an Order (1) granting preliminary approval of the Settlement, (2) conditionally certifying the Settlement Class, and (3) approving the manner of giving notice of the Settlement to the proposed Settlement Class ("Notice Plan").[3]

## I.    INTRODUCTION

The Parties have reached a proposed Settlement of this case for $1,450,000 cash, which will provide meaningful benefits to members of the Settlement Class and resolve all claims

---

[1]    The Class Action Settlement Agreement (the "Settlement Agreement," "Settlement" or "Agreement"), attached hereto as Exhibit A, itself has several exhibits, including the proposed forms of notice of Settlement and proposed forms of the Preliminary and Final Approval Orders.  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Thus, all capitalized terms not otherwise defined in this memorandum shall have the same meaning as ascribed to them in the Settlement Agreement.

[2]    Defendants include Huntington Bancshares Incorporated ("Huntington"), the Administrative Committee Defendants, the Director Defendants, the Pension Committee Defendants, and the Investment Advisory Committee Defendants.  The Administrative Committee Defendants collectively refers to the Plan's Administrative Committee and the individuals who served on the Administrative Committee during the Class Period.  The Administrative Committee Defendants include Melinda Ackerman, Daniel Brian Benhase, Shirley L. Graham, John W. Liebersbach, Thomas P. Reed, and Wilton W. Dolloff.  The Director Defendants refers to Huntington's Board of Directors and anyone who served on the Board of Directors during the Class Period.  The Director Defendants include Marty E. Adams; Raymond J. Biggs; Don M. Casto, III; Michael J. Endres; Marylouise Fennell; John B. Gerlach; D. James Hilliker; Thomas E. Hoaglin; David P. Lauer; Jonathan A. Levy; William J. Lhota; Gene E. Little; Gerard P. Mastoianni; David L. Porteous; Kathleen H. Ransier; and Stephen D. Steinour.  The Pension Committee Defendants refers to Pension Review Committee of Huntington's Board of Directors and any individuals who served on the Pension Review Committee during the Class Period.  The Pension Committee Defendants include Don M. Casto, III; Marylouise Fennell; John B. Gerlach, Jr.; and D. James Hilliker.  Finally, the Investment Advisory Committee Defendants refers to the Plan's Investment Advisory Committee and any individuals who served on the Investment Advisory Committee during the Class Period.  The Investment Advisory Committee Defendants include Nancy V. Kelly, Beth Ann Russell, Robert Comfort, and Donald L. Keller.

[3]    This Memorandum sets forth various factors (factual, legal, and financial) that Plaintiffs believe support the conclusion that the proposed Settlement is within the range of what the Court can determine to be fair, reasonable, and adequate.  Plaintiffs do not admit to the ultimate truth or falsity of any of the factual, legal or financial factors or conclusions discussed herein that favor Defendants.

asserted by Plaintiffs in this Litigation.  This is an excellent result for the Settlement Class. Based on an evaluation of the facts, governing law and the recognition of the substantial risks of continued litigation, including the fact that Plaintiffs' action was dismissed by the Court and settled while an appeal to the Sixth Circuit was pending, Plaintiffs and Co-Lead Counsel submit that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the proposed Settlement Class by providing a recovery for the Settlement Class now.  Resolution of this case at this juncture allows the Parties to avoid years of litigation that could deplete potential future recovery for the Settlement Class.  Moreover, continued litigation could result in a judgment or verdict lesser than the recovery provided under the Settlement Agreement, or in no recovery at all.

There is no doubt that lawsuits of this type brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") face significant risks.  Co-Lead Counsel Barroway Topaz Kessler Meltzer & Check, LLP ("BTKMC") recently completed a trial on the merits in a similar class action (*Brieger v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.)).  Similarly, Co-Lead Counsel Keller Rohrback L.L.P. ("Keller Rohrback") has vast experience litigating these types of ERISA breach of fiduciary claims.  Co-Lead Counsel are thus in a unique position to realistically evaluate the risks of proceeding to trial.  Moreover, the Parties agreed to the proposed Settlement only after vigorous, arm's-length negotiations by experienced counsel assisted by an experienced mediator from the Sixth Circuit's mediation office.

Further, Plaintiffs firmly believe that certification of a non-opt-out Settlement Class pursuant to FED. R. CIV. P. 23 is clearly appropriate.  As an integral part of the Settlement Agreement, Plaintiffs seek conditional class certification of all participants or beneficiaries in the Plan for whose individual accounts the Plan purchased and/or held interests in the Huntington

Stock Fund at any time during the period July 1, 2007 to April 1, 2009, inclusive. The proposed Notice Plan exceeds the requirements of due process. Indeed, the proposed individualized direct-mail, publication in the *Columbus Dispatch* and *PR Newswire*, and proposed Internet settlement information website described herein are consistent with the forms of notice approved in directly analogous actions. Such notice will inform Settlement Class members of the terms of the Settlement, how to object to the Settlement, and the date of the Fairness Hearing.

As set forth below in detail, all prerequisites for preliminary approval of the Settlement have been met. In short, the proposed Settlement should be preliminarily approved allowing Plaintiffs to begin notifying the Settlement Class.[4]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Description Of The Action[5]

On February 20, 2008, Plaintiff Hilda Riccio, a former employee of Huntington and participant in the Plan, filed her initial class action complaint pursuant to §§ 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132, against Huntington and certain other alleged named and unnamed fiduciaries of the Plan, who allegedly are and were responsible for the investment of the Plan's assets. Thereafter, two additional, substantially identical, cases were filed in this Court: *Cedarleaf et al. v. Huntington Bancshares Inc., et al.*, No. 08-CV-0175 (S.D. Ohio); and *Uberti v. Huntington Bancshares Inc., et al.*, No. 08-CV-0197 (S.D. Ohio). By Order dated May

---

[4]     The Preliminary Approval Order proposed by all parties to the Settlement Agreement is appended to the Settlement Agreement as Exhibit 6 and the proposed Final Judgment and Order is appended to the Settlement Agreement as Exhibit 7.

[5]     In at least eight other ERISA breach of fiduciary duty class actions, courts in this circuit have approved the parties' respective settlement agreements. *See In re Ford Motor Co. ERISA Litig.*, No. 06-CV-11718 (E.D. Mich. Feb. 15, 2011) (Order Granting Final Approval of Settlement); *In re National City ERISA Litig.*, 08-nc-70000 (N.D. Ohio Nov. 30, 2010) (Order Granting Final Approval of Settlement); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008); *In re Visteon Corp. ERISA Litig.*, No. 05-CV-71205 (E.D. Mich. March 9, 2007); *In re Lear ERISA Litig.*, No. 06-CV-11735 (E.D. Mich. 2006); *Gee v. UnumProvident Corp., et al*, No. 03-CV-147 (E.D. Tenn. Jan. 25, 2008); *In re Broadwing ERISA Litig.*, No. 02-CV-00857 (S.D. Ohio 2002) and *Rankin v. Rots*, No. 02-CV-71045 (E.D. Mich. 2002).

22, 2008, the Court consolidated the three ERISA cases as well as any ERISA case thereafter filed in or transferred to the Southern District of Ohio arising out of the same facts and claims (referred herein as the "Litigation").  By the same May 22 Order, the Court appointed BTKMC and Keller Rohrback as Interim Class Counsel and Kitrick, Lewis & Harris Co., L.P.A., ("Kitrick Lewis") as Interim Liaison Class Counsel.

On August 4, 2008, Plaintiffs filed a Consolidated Amended Complaint for Violations of ERISA ("Complaint").  The Complaint alleges, *inter alia*, that Defendants and other Plan fiduciaries violated their statutory duties of prudence, care, and loyalty under Section 404(a) of ERISA, 29 U.S.C. § 1104(a), through their management, oversight and administration of the Plan's investment in Huntington stock during the Class Period.  In the Complaint, Plaintiffs assert causes of action for the losses suffered by the Plan as the result of the alleged breaches of fiduciary duty by the Defendants.  Specifically, Plaintiffs allege that investment of Plan assets in Huntington stock was imprudent during the alleged Class Period due to, among other things, the Company's:  (1) overexposure to loans tied to the declining housing and construction market; (2) exposure to risky subprime loans through its ill-timed acquisition of Sky Financial Group, Inc.; (3) failure to implement and maintain risk management control processes; (4) failure to properly reserve for losses; and (5) failure to properly account for and disclose its exposure to losses tied to its business operations in the subprime market, all of which caused Huntington's financial statements to be misleading and which artificially inflated the value of shares of Huntington stock in the Plan.  *See* Complaint at ¶ 5.

In Count I, Plaintiffs allege that Defendants who were responsible for the investment of Plan assets breached their fiduciary duties to Plan participants in violation of ERISA by failing to prudently and loyally manage the Plan's investment in Huntington stock.  *See* Complaint at ¶ 6.

4

In Count II, Plaintiffs allege that Defendants who were responsible for the selection, monitoring, and removal of the Plan's other fiduciaries failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate, as well as provide them with the necessary information to fulfill their fiduciary duties. *Id.* In Count III, Plaintiffs allege that Defendants with knowledge of the risks associated with Huntington stock breached their duty to disclose necessary information to co-fiduciaries. *Id.* In Count IV, Plaintiffs allege that Defendants breached their duty to inform the Plan's participants by failing to provide complete and accurate information regarding the soundness of Huntington stock and the prudence of investing and holding retirement contributions in Huntington equity. *Id.* Finally, in Count V, Plaintiffs allege that Defendants breached their duties and responsibilities as co-fiduciaries by failing to prevent breaches by other fiduciaries. *Id.*

### B.     Investigation Of Claims And Plaintiffs' Complaint

By the time Plaintiffs filed their Complaint, their counsel had already conducted a thorough investigation into Plaintiffs' claims and had the benefit of informal discovery, including documents that Defendants produced regarding the Plan and the fiduciaries of the Plan. For example, in connection with the motion to consolidate the three ERISA cases, Plaintiffs negotiated an agreement with Defendants for production of certain Plan documents.  In May of 2008, counsel for Defendants and Co-Lead Counsel held a meet and confer conference where the parties reached an agreement that prior to the filing of any consolidated complaint, the Defendants would produce three categories of documents and information:  (1) a list of the names of the individuals who served on the Investment Advisory Committee, Administrative Committee, and the Pension Review Committee during the proposed class period; (2) the prospectuses for the investment options that were offered to participants in the Plan during the proposed class period; and (3) any Trust Agreements for the Plan effective during the proposed

class period, including but not limited to, any Trust Agreements where Huntington National Bank was the Trustee.

Co-Lead Counsel's investigation also included, but was not limited to: (i) review of other documents produced by Defendants, including Plan-related documents in response to Plaintiffs' request for such documents pursuant to ERISA §104(b); (ii) review of publicly-available materials (including government agency filings) relating to the Company and the Plan; (iii) analysis of specific corporate transactions; and (iv) interviews of Plan participants. These efforts enabled Plaintiffs to identify as defendants the persons or entities with alleged discretionary fiduciary authority or control over the Plan and its assets. The information derived from their substantial investigatory efforts resulted in the 78 page, 279 paragraph Complaint detailing Defendants' operation and administration of the Plan.

### C.      Summary Of The Litigation

This complex litigation was hotly contested by Defendants from the outset. On October 6, 2008, Defendants filed a motion to dismiss the Complaint with prejudice pursuant to FED. R. CIV. P. 12(b)(6) (Dkt. No 48). Defendants asserted that the Complaint should be dismissed because, *inter alia*, Huntington was a viable company, and as such, Plaintiffs could not rebut the presumption of prudence for investing Plan assets in Company stock. Plaintiffs filed an opposition to Defendants' motion to dismiss on November 21, 2008 fully addressing each of Defendants' points (Dkt. No. 50). Thereafter, Defendants filed a reply in support of their motion to dismiss on December 22, 2008 (Dkt. No. 56).

After briefing on Defendants' motion to dismiss was complete, the Parties addressed a notice of supplemental authority concerning a recently decided decision that Plaintiffs argued was relevant to Defendants' motion to dismiss. On February 9, 2009, the Court entered an Order granting Defendants' motion to dismiss (Dkt. No. 64). Following dismissal of the Complaint,

Plaintiffs filed a notice of appeal on March 6, 2009 to the United States Court of Appeals for the Sixth Circuit appealing the entirety of the Order and judgment in favor of Defendants (Dkt. No. 67).

As described in further detail below, the Parties settled this Litigation while the appeal to the Sixth Circuit was pending.  After a Settlement had been reached, the Parties on February 16, 2011 filed a joint motion to the Court for an indicative ruling pursuant to FED. R. CIV. P. 62.1 (Dkt. No. 68).  In the joint motion, the Parties informed the Court that the Parties had settled and requested the Court to issue an order providing that if Plaintiffs' action were remanded from the Sixth Circuit, the Court would review the Settlement pursuant to FED. R. CIV. P. 23(e).  The Parties' Joint Motion was granted on February 17, 2011 (Dkt. No. 69).  Following the granting of the joint motion for an indicative ruling, on February 23, 2011the Parties, filed a joint motion with the Sixth Circuit asking for the remand of this matter to the Court in order to allow the Court an opportunity to review the Settlement.  On March 1, 2011, the Sixth Circuit granted the joint motion.

On March 25, 2011, the Parties held a telephonic status conference call with the Court to discuss the timing of the Parties' presentation of the Settlement Agreement to the Court.  Based upon discussions during this telephonic conference call, and follow-up discussions with the Court, it was determined that Plaintiffs would file the motion for preliminary approval of the Settlement on April 27, 2011.  Further, this Court advised that, in the event that the Court preliminarily approves the settlement, a Fairness Hearing will be held on September 1, 2011.

**D.    Settlement Negotiations**

Beginning on April 13, 2009, the parties participated in a mediation program conducted by the Office of the Circuit Mediators of the United Court of Appeals for the Sixth Circuit Court of Appeals ("Office of the Circuit Mediators").  The settlement negotiations in this matter were

hard fought, lengthy and certainly arm's-length. Indeed, it was not until November 30, 2009, following months of arm's-length negotiations and mediation sessions with an independent mediator -- Mariann Yevin -- from the Office of the Circuit Mediators that the Parties, through their attorneys, reached an agreement. During the mediation sessions before Ms. Yevin, the Parties vigorously asserted their respective positions.

Following agreement of the principal terms of Settlement, several months of further intense negotiation ensued regarding the specific terms of the Settlement, including the scope of the releases and the Plan of Allocation. In short, the negotiations in this matter were undoubtedly arm's-length and complex with both sides strenuously arguing their respective positions.

### E.    The Proposed Settlement

The terms of the settlement are memorialized in the Settlement Agreement. The following is a summary of the principal terms of the Settlement.

The Settlement Agreement provides that Defendants shall pay the sum of $1,450,000 into an interest-bearing escrow account (the "Settlement Fund") within thirty (30) days after the Court enters the Preliminary Approval Order. The principal (less amounts expended for certain approved costs) will accrue interest between preliminary approval and distribution out of the escrow account. Following final approval of the Settlement, the Settlement Fund will be paid to the Plan, and kept in the Plan's trust, after payment of expenses incurred in calculating, satisfying, and administrating the allocation and payment of attorneys' fees and costs. Once the balance of the Settlement Fund is paid to the Plan, distribution will be made directly from the Plan to the current and former participants. Direct distribution of this type allows the Parties to preserve tax benefits that apply to qualified retirement plans.

Plaintiffs propose a plan of distribution to the Court that in their opinion will fairly and

adequately address the issues of settlement administration, claims procedures, and allocation among the members of the Settlement Class.  The proposed allocation will provide for *pro rata* distributions to Settlement Class members that will be based, in part, on the amount of Huntington stock participants held in their accounts.[6]  Basing the amount of each eligible participant's *pro rata* share on his/her holdings in Huntington stock is equitable and appropriate because it will allow the settlement to offset the actual losses complained of in the Complaint. Further, to avoid unnecessary additional costs of administering the settlement, the Plan of Allocation provides that when the calculation of the Preliminary Settlement Amount is performed for Settlement Class Members who are former Plan participants and are no longer employed at Huntington, if his or her Preliminary Settlement Amount is less than or equal to $10.00 (the "*De Minimis* Amount"), he or she will not receive a payment under the Settlement Agreement.  The plan of distribution is subject to Court approval.

In exchange for this Settlement, the Plaintiffs and the Plan will dismiss all claims in the Complaint and grant releases, as set forth more fully in the Settlement Agreement.   The Settlement Agreement also sets forth the proposed Notice Plan to Class members and provides that Co-Lead Class Counsel will seek the payment of attorneys' fees and Plaintiffs' Case Contribution Awards.

### F.  Reasons For The Settlement

Plaintiffs entered into the proposed Settlement only after having a thorough understanding of the strengths and weaknesses of Plaintiffs' claims.  Their understanding is based upon:  (1) a comprehensive investigation relating to the events and transactions underlying Plaintiffs' claims; (2) discovery, consisting of the review and analysis of documents produced by

---

[6]     The terms and details of distribution are more specifically detailed in the Plan of Allocation, which is attached to the Settlement Agreement as Exhibit 1.

Defendants, including documents in response to Plaintiffs' request for documents pursuant to ERISA § 104(b), and gathered by Plaintiffs' counsel which were directly relevant to Plaintiffs' factual claims; (3) their review and analysis of other publicly available information concerning the Company, the Plan and the individual Defendants, including news articles; and (4) intimate and up-to-date review, analysis and understanding of relevant and potentially dispositive ERISA jurisprudence.

Plaintiffs entered into this Settlement Agreement after evaluating: (1) the materials reviewed during the investigation and discovery; (2) the serious questions of law and fact which could preclude any recovery by the Settlement Class especially in light of the fact that Plaintiffs' Complaint was dismissed by the Court; (3) the range of possible recovery; and (4) the substantial expense and length of time necessary to prosecute this action through appeal, and if successful on appeal, trial, post-trial motions, and likely further appeals, and the significant uncertainties in predicting the outcome of this complex litigation.

### G. Proposed Timetable

The proposed Preliminary Approval Order ("Order") includes September 1, 2011 (at 12:00 p.m.) as the date for the Fairness Hearing. The Court selected the Fairness Hearing date after consulting with the Parties. Additionally, the Parties have consented to the following generalized schedule of events if the Court is inclined to preliminarily approve the Settlement Agreement:

| Event | Time for Compliance under the Proposed Preliminary Approval Order |
|---|---|
| Deadline for Huntington to mail Notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice") | May 6, 2011 (*See* Order, ¶ 6) |
| Deadline for Mailing of Class Notice to members of the Settlement Class (the "Notice Date") | June 17, 2011 (*See* Order, ¶ 5) |

| Deadline for Publishing Notice in *PR Newswire*, *Columbus Dispatch* and on the dedicated Settlement website | June 17, 2011 (*See* Order, ¶ 5) |
|---|---|
| Deadline for Filing of Motion in Support of Final Approval of Settlement and Motion for Counsel Fees, Reimbursement of Expenses, and for Case Contribution Awards to Named Plaintiffs | July 7, 2011 (*See* Order, ¶ 13) |
| Deadline for filing of Objections | July 28, 2011 (*See* Order, ¶ 6) |
| Deadline for Independent Fiduciary to make the determinations called for by the Department of Labor's Class Exemption, PTE 2003-39 | August 11, 2011 (*See* Order, ¶ 17) |
| Deadline to file any responses to objections | August 18, 2011(*See* Order, ¶ 21) |

## III.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.    Description Of The Notice Plan

The proposed Notice Plan will fully inform Settlement Class members about the Litigation, the proposed Settlement, and the facts that they need to make informed decisions about their rights.  The Notice Plan includes multiple components designed to reach the largest number of Class members possible.  The Class Notice, attached as Exhibit 2 to the Settlement Agreement will be sent by first-class mail to the last known address of the Class members by June 17, 2011.  Additionally, by that same date, the Publication Notice, attached as Exhibit 3 to the Settlement Agreement, will be published in the *Columbus Dispatch* and *PR Newswire*, at least once (together, the Class Notice and Publication Notice are referred to as "Notices.") Plaintiffs will post the Notices on a dedicated Settlement website, established by Co-Lead Counsel.[7]  The number and variations of these types of notices will help ensure the dissemination of adequate and reasonable notice and information consistent with standards employed in notification programs designed to reach unidentified members of settlement groups or classes.

---

[7]      Other documents related to this Litigation will be posted to the website as well, such as a list of frequently

All Notices will provide potential Class members with contact information for Co-Lead Counsel.

### B. The Proposed Notice Plan Meets The Requirements Of Due Process

In order to satisfy due process considerations, notice to Class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Courts in this Circuit, and in particular this District, have determined that direct mailings to class members' last known address coupled with publication of notice provide class members with reasonable notice. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 672-673 (S.D. Ohio 2007). Here, Plaintiffs' proposed means of class notice exceed these standards and thus more than satisfies the mandates of due process. Plaintiffs believe that the combination of the direct mail, publication in the *Columbus Dispatch* and *PR Newswire*, and internet website presence will result in a very high percentage of actual notice to affected participants and beneficiaries.

Here, the form and method of notice of the proposed Settlement agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e)(1). The proposed Notices describe in plain English (i) the terms and operation of the Settlement, (ii) the nature and extent of the release of claims, (iii) the maximum counsel fees and Plaintiffs' Case Contribution Awards that may be sought, (iv) the procedure and timing for objecting to the Settlement, and (v) the date and place of the Fairness Hearing. Similar Notice Plans utilized in the settlement of analogous actions have been judicially approved as appropriate, fair and adequate. *See, e.g.*, *In re Ford Motor Company ERISA Litig.*, No. 06-CV-11718 (E.D. Mich. Feb. 15, 2011) (Dkt. No. 283); *In re National City ERISA Litig.*, 08-nc-70000 (N.D. Ohio Nov.

---

asked question and the Settlement Agreement itself with all of its exhibits.

30, 2010) (Dkt. No. 136); *In re Lear ERISA Litig.* No. 06-cv-11735 (E.D. Mich. Mar. 26, 2009) (Dkt. No. 93); *In re Visteon Corp. ERISA Litig.*, No. 05-cv-71205 (E.D. Mich. Mar. 9, 2007) (order granting final approval of the settlement approving form and method of notice) (Dkt. No. 58); *Gee v. UnumProvident Corp., et al*, No. 03-cv-147 (E.D. Tenn. Jan. 25, 2008) (order that the settlement class received proper and adequate notice) (Dkt. No. 135); *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *13-*14 (E.D. Mich. June 28, 2006).[8] As such, the proposed Notices satisfy the requirements of due process. *See* Newberg on Class Actions, § 8.34 (4th Ed. 2002).

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Law Favors And Encourages Settlements

Strong judicial policy favors resolution of litigation prior to trial, particularly in class actions. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (1982) (the law generally favors and encourages the settlement of class actions); *In re Nationwide Fin. Servs. Litig.*, No. 08-CV-249, 2009 U.S. Dist. LEXIS 126962, at *3 (S.D. Ohio Aug. 18, 2009) (same); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006); 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE (3d Ed. 1999); MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); Newberg & Conte, NEWBERG ON CLASS ACTIONS §11.41 (3d ed. 1992) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits.") Because settlement is a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement. *In re Telectronics Pacing Sys., Inc.,* 186 F.R.D. 459, 476 (S.D. Ohio 1999).

---

[8]      *See also Evans v. Akers*, No. 04-CV-11380-WGY (D. Mass. June 8, 2009) (Dkt No.237); *In re Loral Space ERISA Litig.*, No. 03-CV-9729 (LTS) (S.D.N.Y. Sept. 9, 2008) (Dkt. No. 58); *Lewis v. El Paso Corp.*, No. 02-CV-4860 (S.D. Tex. Feb. 3, 2009) (Dkt. No. 134).

In the Sixth Circuit, the district courts consider several factors in evaluating the fairness, adequacy and reasonableness of a proposed settlement: (1) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 372. The decision to grant or deny approval of a settlement lies within the broad discretion of the trial court. *Detroit Police Officers Ass'n v. Young*, 920 F. Supp. 755, 761 (E.D. Mich. 1995), citing *Bailey v. Great Lakes Canning, Inc*, 908 F.2d 38, 42 (6th Cir. 1990).

**B.      The Proposed Settlement Should Be Approved**

   **1.      Plaintiffs' Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in Settlement**

      **a.      Likelihood Of Success**

The likelihood of success on the merits balanced against the relief obtained through settlement is an important factor for evaluating the propriety of settlement approval. *Gen Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 372. However, the Court "has no occasion to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams*, 720 F.2d at 921 (citing *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981)). Rather, the focus is on "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *UAW v. General Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *15 (E.D. Mich. Mar. 31, 2006) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)).

As evidenced by the vigor with which they have prosecuted the Litigation, and the amount of time and money they have expended on a contingent basis toward that end, Co-Lead Class Counsel are optimistic about their ultimate success in this matter. But there is risk in any litigation, and especially here, where the Court dismissed the Litigation, and the area of the law — ERISA class actions — is one of the most complex, unpredictable, and rapidly developing in all of American jurisprudence. As a result, any prediction of success is far from reliable. *Compare Veera v. Ambac Plan Admin. Order Comm.*, No. 10-CV-4191, 2011 WL 43534 (S.D.N.Y. Jan. 6, 2011), *with In re Citigroup ERISA Litig.*, No. 07-CV-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009). Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373 (approving settlement while noting that "little authority supports the theories that are fundamental to Plaintiffs' [ERISA] claims. Moreover, if litigation were to continue, Plaintiffs would need to establish new law to overcome Defendants' defenses to liability."); *Rankin*, 2006 U.S. Dist. LEXIS 45706, at *10-*11 (noting that "[a]lthough plaintiffs survived a motion to dismiss by defendants, whether they would prevail on the merits of their [ERISA] breach of fiduciary duty claims is far from clear."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68-69 (D. Mass. 1997) (approving settlement of class action where plaintiffs "faced substantial obstacles to success if litigation were to proceed" with "recovery after trial. . . far from assured"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002) ("while plaintiffs believe there is substantial evidence to support their claims, the complexities and uncertainties of this litigation nevertheless warrant the approval of the Settlement").

Despite Plaintiffs' belief in the strength of their case, they face numerous hurdles to proving liability and damages. In this case, Defendants have forcefully defended their actions

with respect to the Plan, and have shown no hesitancy to litigate this matter fully through the appeal and trial, should Plaintiffs' appeal be successful. Moreover, Defendants are represented by highly experienced and competent counsel. If this case were to resume a litigation posture, Defendants would likely assert several defenses, including that: (1) the Court properly dismissed the Litigation with prejudice; (2) Huntington stock was a prudent investment for the Plan and its participants; (3) Defendants fully and prudently discharged any fiduciary duties under ERISA; and (4) neither the Plan nor its participants suffered any compensable losses. Further, there have been several recent plaintiff-adverse decisions, including one decision within this Circuit.[9]

### b.      The Amount and Form of Relief Offered in Settlement

A proposed class action settlement must fall "within the 'range of reasonableness.'" *Manners v. Am. General Life Ins. Co.*, No. 98-CV-0266, 1999 WL 33581944, at *20 (M.D. Tenn. Aug. 11 1999) (citing *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("[i]n assessing the settlement, the court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation")). Indeed, settlements never result in the recovery of full amount of alleged losses. *UAW*, 2006 WL 891151, at *17. Rather, a "just" settlement is generally "an arbitrary point between competing notions of reasonableness." *Id.* (citing *In re Corrugated Container Antitrust Litig. (II)*, 659 F.2d 1322, 1325 (5th Cir. 1981)).

Plaintiffs also acknowledge they may face substantial risk in proving damages. As a threshold matter, the methodology for calculating Plaintiffs' alleged damages would be disputed. Plaintiffs contend that ERISA requires the breaching fiduciaries to make good to the plan the difference between the most profitable plan alternative and the challenged imprudent investment.

---

[9]      *See, e.g., Dudenhoeffer v. Fifth Third Bancorp*, No. 08-CV-538, 2010 WL 4970767 (S.D. Ohio Nov. 24, 2010) (granting motion to dismiss ERISA breach of fiduciary duty claims).

*See, e.g., Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("the measure of damages is the amount that affected accounts would have earned if prudently invested") *citing Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).  Defendants, on the other hand, would advance a different measure of damages that would generate a lower potential damage award.  Moreover, the calculation of "ERISA" damages would be "complex, time-consuming and expensive."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004).  In the event that the Sixth Circuit reversed the dismissal of this action and Plaintiffs subsequently prevailed on the merits after the conclusion of a trial, this Court would need to set the relevant time period for when Huntington stock was to be considered "imprudent" for the Plan at issue, a factually intensive question in and of itself.  Damages calculations in ERISA cases generally require both expert and computer-based analysis, requiring a sophisticated computer model of the plans involved to track the purchase and sale of assets held by the plan and its participants.  These calculations must be for each participant's account as well as the plan as a whole.  An expert must create a reliable and legally admissible model, which he or she must then test and be able to effectively present to the court.  This intricate and complex process creates the possibility of glitches and can have unexpected results.  This type of complexity favors early resolution.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985); *Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement and noting that damage calculations are often a "battle of experts at trial, with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).

Here, the $1.45 million Settlement Payment provides valuable relief to the Class.  Once approved, the Settlement Payment will be allocated to Class Members pursuant to the proposed

Plan of Allocation discussed above.  On balance, consideration of (1) the benefits that Plaintiffs and the Settlement Class will receive from the Settlement Agreement, (2) the uncertain viability of Plaintiffs' legal claims and claims for damages, and (3) the risk of continued litigation compared with the form of relief achieved now all favor approval of the Settlement.

### 2. The Complexity, Expense and Likely Duration of the Litigation Favors Settlement

Courts must evaluate the complexity, expense and likely duration of litigation before approving a class action settlement.  *In re Telectronics Pacing Sys, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).  Courts in this district have aptly characterized class action trials as a "long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court."  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000) (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998)).  Class action trials of claims alleging breach of fiduciary duty under ERISA are no different.

Here, in the absence of settlement, the Parties would recommence litigation in earnest, focusing upon Plaintiffs' pending appeal.  If the Sixth Circuit reversed this Court's dismissal of the action, the Parties would return to this Court to continue litigation of this matter, including conducting ERISA and merits discovery and extensive depositions, all of which would lead to dispositive motions, trial, and likely additional appeals.  Were this case to proceed to judgment on the merits, both sides would retain experts in numerous areas -- including experts on accounting issues and pension costs, fiduciary responsibility and damages.  In addition, the huge volume of documents and the complexity of the underlying factual issues would necessitate the presentation of large numbers of fact witnesses and exhibits at trial.  In short, the parties and the Court would face substantial litigation without the instant Settlement.

The certain and immediate benefits to the Class stemming from the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal. *Cardizem*, 218 F.R.D. at 525. *See also In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. at 456 (noting that determining the "numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans … would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval."); *In re Xcel*, 364 F. Supp. 2d 980, 992 (D. Minn 2005) ("This is the type of complex [ERISA] litigation that easily could have dragged on for several more years.").

Although Co-Lead Counsel believe that they can overcome the potential obstacles to establishing Defendants' liability and damages, including having to win their appeal, they recognize the inherent uncertainties of litigation which militate in favor of settlement at this time.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

Exhaustive discovery is not a prerequisite for preliminary approval of class action settlements. *Manners*, 1999 WL 33581944, at *21. Neither is formal discovery. *UAW*, 2006 WL 891151, at *19. Rather, "the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Manners*, 1999 WL 33581944, at *21 (citing *Woodward v. NOR-AM Chem. Co.*, No. 94-CV-0780, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996)).

The volume and substance of Plaintiffs' knowledge of this case are unquestionably adequate to support the Settlement. Even before filing the Complaint, Co-Lead Counsel conducted an extensive investigation and informal discovery in relation to the lawsuit, including: (a) the review and analysis of Plan-related documentation and communications, including Plan annual reports to the SEC and Department of Labor ("DOL"); (b) an analysis of Huntington's

19

publicly disseminated financial statements; (c) the review of media reports and public financial analyst reports; (d) the review and analysis of voluminous publicly-available materials – media reports, filings in factually related cases – with regards to the factual predicates outlined in the Complaint; (e) researching and reviewing filings and pleadings in related litigation involving the Company; (f) interviews of a number of participants, including the Plaintiffs, as well as potential fact witnesses; (g) extensive researching of the applicable law with respect to the claims asserted in the Complaint and Defendants' potential defenses thereto; and (h) the monitoring and evaluation of the performance of Huntington stock during and after the proposed Class Period. Thereafter, Co-Lead Counsel reviewed newly filed and published public filings, annual reports, press releases and other public statements as part of their ongoing investigation.

Additionally, in preparation for mediation and before agreeing to settle Plaintiffs' claims, Plaintiffs reviewed Plan materials produced by Defendants.  Plaintiffs respectfully submit that their investigative efforts provided them with more than ample information to properly and fairly assess the merits of the proposed Settlement Agreement.

### 4.    The Recommendation and Experience of Counsel

Courts also recognize that the opinion of experienced and informed and competent counsel in favor of settlement should be afforded substantial consideration.  *Williams*, 720 F.2d at 922-23; *UAW*, 2006 WL 891151, at *18 ("It is . . . well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.") (citing *Mich. Hosp. Ass'n v. Babcock*, No. 89-CV-00070, 1991 U.S. Dist LEXIS 2058, at *6 (W.D. Mich. Feb. 11, 1991)).  Here, Co-Lead Counsel have substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this Action. Co-Lead Counsel, together and separately, have litigated numerous similar ERISA class action

cases.

Indeed, Co-Lead Counsel BTKMC has the rare benefit of having tried a similar company stock action to verdict, which (upon information and belief, is one of only four such litigations to ever proceed through trial.  Thus, they are in a unique position to truly evaluate the wisdom of settling the claims prior to a risk-fraught trial.  Here, BTKMC, headed by Joseph H. Meltzer, chair of the ERISA Litigation Department, and his partner Edward W. Ciolko are experienced ERISA class action attorneys and recommend this Settlement.[10]  BTKMC is comprised of over 95 attorneys and a support staff consisting of over 100 paralegals, secretaries, file clerks, summer interns, and administrative personnel in two offices (in Radnor, PA and San Francisco, CA) providing abundant resources necessary to litigate any case.  The firm's ERISA litigation department is one of the foremost in the country.  Acknowledging the firm's history and track record of impressive results, courts have not hesitated to appoint BTKMC as class counsel in numerous ERISA breach of fiduciary class actions, directly analogous to the instant matter, including the following within this Circuit:  *In re National City Corp. ERISA Litig.*, No. 08-CV-70000 (N.D. Ohio); *In re Ford Motor Co. ERISA Litig.*, No. 06-CV-11718 (E.D. Mich.) (Co-Lead Counsel with Keller Rohrback); *In re Lear ERISA Litig.*, No. 06-CV-11735 (E.D. Mich.); *In re Diebold ERISA Litig.*, No. 06-CV-0170 (N.D. Ohio); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn.).[11]  BTKMC's ERISA department, under Mr. Meltzer and Mr. Ciolko's

---

[10]      *See* firm resume of BTKMC attached hereto as Exhibit B.

[11]      Other actions in which BTKMC was appointed Lead or Co-Lead Counsel include:  *Shane v. Amcore Fin. Inc.*, No. 10-CV-50089 (N.D. Ill.); *Harris v. First Regional Bancorp*, No. 10-CV-7164 (C.D. Cal.); *In re Advanta Corp. ERISA Litig.*, No. 09-CV-04974 (E.D. Pa.); *In re R.H. Donnelley ERISA Litig.*, No. 09-CV-07571 (N.D. Ill.); *In re YRCW Worldwide ERISA Litig.*, No. 09-CV-02593 (D. Kan.); *In re Lincoln Nat'l ERISA Litig.*, No. 08-CV-5740 (E.D. Pa.); *In re: SLM Corp. ERISA Litig., et al.*, No. 08-CV-4334 (S.D.N.Y.); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-CV-00952-RWS (N.D. Ga.) (Co-Lead Counsel with Keller Rohrback); *In re Raytheon ERISA Litig.*, No. 03-CV-10940-RGS (D. Mass.); *Gee v. UnumProvident Corp.*, No. 03-CV-1552 (E.D. Tenn. Sept. 3, 2003); *In re Westar Energy Inc. ERISA Litig.*, No. 03-CV-4032 (D. Kan.); *Koch v. Loral Space & Commc'ns Ltd.*, No. 03-CV-9729 (S.D.N.Y.); *In re Honeywell ERISA Litig.*, No. 03-CV-1214 (D.N.J.); *Wilson v. Federal Home*

guidance, has prosecuted numerous ERISA cases, with courts rendering favorable opinions in a number of decisions denying defendants' motions to dismiss and/or for summary judgment.[12] In addition to its extensive litigation experience, the firm has also successfully engaged in extensive, intricate and intense settlement negotiations, including court-ordered mediations.

Keller Rohrback also has extensive class action experience in the Sixth Circuit, and indeed, throughout the country.[13] For example, Keller Rohrback served as co-lead counsel for the ERISA class in the following cases litigated in the Eastern District of Michigan: *In re CMS Energy ERISA Litig.*, No. 02-CV-72834 (E.D. Mich.), *In re Visteon ERISA Litig.*, No. 05-CV-71205 (E.D. Mich.), and *In re Delphi Corp. Sec., Derivative, and "ERISA" Litig.*, MDL No. 1725 (E.D. Mich.).[14] Having prosecuted numerous ERISA cases, with courts rendering

---

*Loan Mortgage Corp.*, MDL No. 1584, No. 04-CV-2632 (JES) (S.D.N.Y.); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-CV-1204 (D.N.J.).

[12] *See, e.g.*, *In re R.H. Donnelley Corp. ERISA Litig.*, No. 09-CV-7571 (N.D. Ill. Jan. 10, 2011); *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-CV-2593 (D. Kan. Oct. 29, 2010); *Dann v. Lincoln National Corp. et al.*, No. 08-CV-5740, 2010 WL 1644276 (E.D. Pa. Apr. 20, 2010); *In re Hartford Fin. Svc. Grp. Inc. ERISA Litig.*, No. 08-CV-01708 (PCD), 2010 WL 135186 (D. Conn. Jan. 13, 2010); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009); *Board of Trustees of the AFTRA Retirement Fund, et al. v. JPMorgan Chase Bank, N.A., et al.*, No. 09-CV-00686 (S.D.N.Y. May 28, 2009); *In re First American Corp. ERISA Litig.*, No. 08-CV-01357-JVS-RNB (C.D. Cal. Nov. 16, 2007); *Brieger v. Tellabs, Inc.*, 473 F. Supp. 2d 878 (N.D. Ill. 2007); *In re Lear ERISA Litig.*, No. 06-CV-11735 (S.D. Mich. Apr. 10, 2006); *In re: Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005); *Gee v. UnumProvident Corp.*, No. 03-CV-0147, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005).

[13] *See* firm resume of Keller Rohrback, attached as Exhibit C hereto.

[14] Other actions in which Keller Rohrback was appointed lead or co-lead counsel for plaintiffs include: *In re Enron ERISA Litig.*, No. 01-CV-3913 (S.D. Tex.), *In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816 (S.D.N.Y.), *In re Global Crossing ERISA Litig.*, No. 02-CV-7453 (S.D.N.Y), *In re AIG ERISA Litig.*, No. 04-CV-9387 (S.D.N.Y.); *In re Washington Mutual, Inc., et al. ERISA Litig.*, No. 07-1874 (W.D. Wash.); *In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 07-CV-9633 (S.D.N.Y.); *Alvidres v. Countrywide Fin. Corp.*, No. 07-CV-05810 (C.D. Cal.); *In re Lucent Technologies, Inc. ERISA Litig.*, No. 01CV--3491 (D.N.J.); *In re Providian Financial Corp. ERISA Litig.*, No. 01-CV-5027 (N.D. Cal.); *In re Xerox ERISA Litig.*, No. 02-CV-1138 (D. Conn.); *In re Dynegy, Inc. ERISA Litig.*, No. 02-CV-3076 (S.D. Tex.); *In re Williams Cos. ERISA Litig.*, No. 02-CV-153 (N.D. Okla.); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-CV-7921 (N.D. Ill.); *In re Syncor ERISA Litig.*, No. 03-CV-2446 (C.D. Cal.); *In re HealthSouth ERISA Litig.*, No. 03-CV-1700 (N.D. Ala.); *In re Goodyear Tire & Rubber Co. ERISA Litig.*, No. 03-CV-02182 (N.D. Ohio); *In re Beazer Homes USA, Inc. ERISA Litig.*, No. 07-CV-

favorable opinions in a number of decisions denying defendants' motions to dismiss and/or for summary judgment, Keller Rohrback possess extensive litigation experience. In addition to Keller Rohrback's substantial litigation experience, it has also successfully engaged in extensive, intricate and intense settlement negotiations, including court-ordered mediations.

Equally qualified, interim Liaison Counsel, Kitrick Lewis, is a nationally recognized law firm whose trial attorneys have more than forty combined years of litigation experience. Their practice includes complex litigation involving violations of federal and state consumer protection laws. Principals of the firm include Mark Kitrick, Mark Lewis, and Sean Harris.

Thus, based upon (1) their extensive and broad-based experience litigating and successfully resolving ERISA breach of fiduciary duty cases, and (2) after diligently investigating the claims and fully exploring the claims and defenses during the mediation process and while negotiating a potential settlement, Co-Lead Counsel strongly recommend this Settlement.

### 5.    The Nature of the Negotiations

"So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997). *See also* Manual for Complex Litigation § 30.43 at 289 (3d Ed. 2002); Newberg & Conte, Newberg on Class Actions § 11.41 (4th Ed. 2002). Settlement approval is appropriate where the parties reach an agreement after arm's-length negotiations, where there is no collusion or benefit to certain parties to the detriment of the class as a whole. *See In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D.

---

952 (N.D.Ga.); *In re Polaroid Fin'll Corp. ERISA Litig.*, No, 01-CV-5027 (N.D.Cal.); and *In re Merck ERISA Litig.*, No. 05-CV-01151 (D.N.J.).

366, 372 (S.D. Ohio 1990); *Manners*, 1999 WL 33581944, at *22 (settlement approved as "product of extensive, contentious arm's length negotiations that lasted for close to a year.").

As discussed herein, the Parties reached settlement in this case after intensive drawn-out and adversarial negotiations. *See also* discussion *supra* at Section IID. The Parties recognized a unique opportunity to resolve this Litigation while Plaintiffs' appeal was pending and seized upon it. Moreover, as noted above, after the principal terms of settlement had been reached, months of further negotiation ensued regarding the specific terms of the Settlement. Thus, this factor also weighs in favor of approving the Settlement.

### 6. The Objections Raised by the Class Members

At this stage of the litigation, prior to preliminary approval, and class notice, no members of the Settlement Class have raised any objections to the Settlement Agreement. Each of the Plaintiffs, who are Settlement Class members, approves this Settlement.

### 7. Public Interest

Public policy favors settlement, especially in complex matters, such as class actions alleging breach of fiduciary duty claims under ERISA. Indeed, the Sixth Circuit has expressly recognized the public interests served through compromise:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Stotts v. Memphis Fire Dept.,* 679 F.2d 541, 555 n.11 (6th Cir. 1982), *rev'd on other grounds*, 467 U.S. 561 (1984); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (citing

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)).

The Settlement of this Litigation brings closure to the action, which if litigated through the current appeal, trial and further appeals, would consume an enormous amount of the Parties' time and the valuable resources of this Court. Further, the Settlement brings significant benefit to the Settlement Class years earlier than the uncertain amount to be gained in the future after trial. Accordingly, the public interest, as well as the Settlement Class members', interests are served by resolution of this Litigation now.

## V.  CONDITIONAL CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

### A.  The Proposed Class Meets The Prerequisites For Class Certification Under Rule 23(a)

Plaintiffs pursuant to the Settlement Agreement, seek certification of the following class for settlement purposes only:

> All persons, excluding the Defendants, who participated in the Plan for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").

The Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, the court's "dominant concern" is "whether a proposed class has sufficient unity so that absent members can fairly be bound by the decisions of class representatives." *Id.* at 621.

Plaintiffs' claims for breach of fiduciary duty under ERISA are well-suited for certification. Specifically, "in light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (collecting decisions).

Time and again, courts across the country and within this Circuit -- have certified similar ERISA claims for breach of fiduciary duty for class treatment. *See, e.g.*, *In re Nortel Networks Corp. ERISA Litig.*, MDL No. 03-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) (magistrate report and recommendation) (certifying claims for breach of fiduciary duty under Rule 23(b)1)); *Shirk v. Fifth Third Bancorp,* No. 05-CV-049, 2008 WL 4425535, at *5 (S.D. Ohio Sept. 30, 2008) (same); *Tatum v. R.J. Reynolds Tobacco Co.*, No. 02-CV-0373, 2008 WL 4482857, at *6-*7 (M.D.N.C. Sept. 29, 2008) (certifying under Rule 23(b)(1)(B)); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006) (finding certification of the proposed class appropriate under Rule 23(b)(1)); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) (same); *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (same).[15]

Class certification for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure entails a two-step analysis. First, the Court must determine whether Rule 23(a)'s prerequisites are met, which are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Next, the court must determine whether Plaintiffs have met the requirements of Rule 23(b). *See In re Cardizem*, 218 F.R.D. at 517. Here, Plaintiffs can easily satisfy the prerequisites of Rule 23(a), as well as the alternative requirements of Rule 23(b)(1).

### 1. Rule 23(a)(1) – "Numerosity"

To satisfy the numerosity requirement, the court must find that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff is not

---

[15]     *See also Harris v. Koenig*, No. 02-CV-618, 2010 WL 4553537, at *13 (D.D.C. Nov. 12, 2010) (certifying class under Rules 23(b)(1)(A) and 23(b)(1)(B)); *George v. Kraft Foods Global*, 270 F.R.D. 355, 372 (ND. Ill. Aug. 25, 2010) (certifying class under Rule 23(b)(1)(B)); *Hans v. Tharaldson*, No. 05-CV-115, 2010 WL 1856267, at *10 (D.N.D. May 7, 2010) (certifying under Rules 23(b)(1)(A) and 23(b)(1)(B)); *Moore v. Comcast Corp.*, No. 08-CV-0773, 2010 WL 1375462 (E.D. Pa. Apr. 6, 2010) (certifying 23(b)(1)(B) class); *Stanford v. Foamex L.P.,* 263 F.R.D. 156 (E.D. Pa. 2009) (certifying 23(b)(1)(A) and (B) class); *Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181 (W.D. Mo. 2009) (same); *Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) (same); *Abbott v. Lockheed Martin Corp.*, No. 06-CV-0701, 2009 WL 969713, at * 9 (S.D. Ill. Apr. 03, 2009) (same).

required to state the exact number of class members to satisfy the numerosity requirement.  *See Crawford v. TRW Automotive U.S. LLC*, No. 06-CV-14276, 2007 WL 851627, at *7 (E.D. Mich. Mar. 21, 2007) (finding that a class including forty or more members generally satisfies Rule 23's numerosity requirement).  But there should be no dispute that the proposed Class satisfies the numerosity requirement.

Defendants do not dispute numerosity and the Plan's publicly filed documents reveal that there were thousands of participants in the Plan.  Complaint at ¶ 274.  Thus, numerosity is satisfied.  *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (court explaining a class exceeding 40 will satisfy numerosity); *Stanford*, 263 F.R.D. at 166 (finding 576 members satisfied "numerosity" requirement in certifying claim brought pursuant to ERISA § 502(a)(2)).

### 2.     Rule 23(a)(2) – "Commonality"

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The Class proposed in this action easily meets this requirement.  "[T]here need be only a single issue common to all members of the class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996), and "the resolution of [that common issue] will advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

The paramount question of law and fact -- whether the Defendants breached their fiduciary duties owed to the Plan and its participants by allowing the Plan to invest in Company stock when Defendants knew or should have known of non-public financial and operational problems that affected the prudence of Huntington stock as an investment of the Plan during the Class Period -- is shared by *all* Class members here.  *See Rankin*, 220 F.R.D. at 517-18 (finding commonality in analogous action alleging nearly identical common questions of law and fact); *see also In re CMS Energy ERISA Litig.*, 225 F.R.D. at 543-544 (finding in ERISA company

stock case that the plaintiffs had "persuaded the court that common issues, the resolution of which would advance the litigation, certainly exist among members of the proposed class, including whether the company stock was an imprudent investment for the Plan); *Moore*, 2010 WL 1375462, at *5 ("[Plainitff] has established, as well, that a number of common issues pervade this case, including whether defendants were fiduciaries of the Plan and whether defendants breached their fiduciary duties by allowing the Plan to invest in the Company Stock Fund.  A plaintiff need show only one common issue to fulfill the commonality requirement.") This ERISA case undoubtedly satisfies the commonality requirement.

### 3. Rule 23(a)(3) – "Typicality"

Typicality exists where the plaintiffs' claim "arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083. *See also Rankin*, 220 F.R.D. at 518.  "The premise of the typicality requirement is simply stated:  as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague*, 133 F.3d at 399. Typicality is often met in putative class actions brought for breaches of fiduciary duty under ERISA.  *See, e.g.*, *In re CMS ERISA Litig.*, 225 F.R.D. at 543-544  (typicality exists where plaintiffs' and the putative class claims stem from the same alleged facts and circumstances); *Stanford*, 263 F.R.D. at 167 (finding the "typicality" requirement of Rule 23 satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members.")

Plaintiffs' claims are clearly typical of those of the proposed Class.  The claims of the Plaintiffs and the Class arise from Defendants' alleged breaches of fiduciary duty, and Plaintiffs and the Settlement Class seek to recover based upon the very same legal theories.  Each Class

member alleges injury arising out of Defendants' alleged wrongful conduct of breaching of their fiduciary duties and violating ERISA during the Class Period as alleged in the Complaint. Therefore, the typicality requirement of Rule 23(a)(3) is easily met. *See, e.g.*, *Rankin*, 220 F.RD. at 519 (ERISA company stock cases are properly certified since "the appropriate focus in a breach of fiduciary duty claim is on the conduct of the defendants") (quoting *In re IKON Office Solutions, Inc. Sec. Litig.,* 191 F.R.D. 457, 465 (E.D. Pa. 2000)).

### 4. Rule 23(a)(4) – Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Given the binding effect of a class action judgment, due process demands a finding of adequate representation. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32, 61 (1940)).

This Circuit has set out two criteria for determining the adequacy of representation: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). *See also Am. Med. Sys.*, 75 F.3d at 1083; *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) (adequacy rule tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interest of the plaintiffs and other members of the class they seek to represent").

Plaintiffs here meet both of the Sixth Circuit's criteria. The first prong of the "adequacy" requirement largely overlaps with the commonality and typicality requirements of Rule 23(a)(2)-(3). Plaintiffs' interests here are not antagonistic to those of the Class. Instead, Plaintiffs have been harmed by the same wrongdoing by Defendants as the absent Class members. Their

interests are united in proving Defendants' alleged fiduciary misconduct and achieving the maximum possible recovery.  Each individual Plaintiff's focus is on recovering losses to the Plan (and, only indirectly, to themselves).  *See Rankin*, 220 F.R.D. at 520.  Here, Plaintiffs' interests are squarely in line with those of the proposed Class.  Moreover, each Plaintiff has contributed to the efficient prosecution of this litigation evidenced by their production of documents pertinent to this litigation.  Also, each Plaintiff was prepared to make himself or herself available for a deposition by Defendants if the case proceeded into discovery.

Second, as detailed above, Plaintiffs have retained qualified, experienced attorneys who are at the forefront of this type of ERISA breach of fiduciary duty class action.  *See* discussion *supra* in section IV.B.4; *see also* Co-Lead Counsel firm resumes attached hereto as Exhibits B and C.  Thus, Plaintiffs and Co-Lead Counsel have more than adequately represented the Class, and will continue to do so.

### B.    The Class May Be Properly Certified Under Rule 23(b)(1)

In addition to the four prerequisites of Rule 23(a), a case may proceed as a class action if it also satisfies one of the three alternative requirements of Rule 23(b).  FED. R. CIV. P. 23(b).  Plaintiffs request certification of a Settlement Class under Rule 23(b)(1), which states a class may be certified if:

> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of
>
>> (A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
>>
>> (B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair

or impede their ability to protect their interests . …

FED. R CIV. P. 23(b)(1).

### 1. Subsection 23(b)(1)(B)

Many courts have relied on Rule 23(b)(1)(B) in certifying a class in similar cases, because it is particularly suited for cases alleging breach of a defendant's fiduciary obligations to plaintiffs.  *See* FED. R. CIV. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating certification under 23(b)(1) is appropriate "in cases [such as the instant one] charging breach of trust by fiduciary to large class of beneficiaries"); *see also Moore*, 2010 WL 1375462 (certifying 23(b)(1)(B) class); *In re Nortel Networks, Corp. ERISA Litig.*, 2009 WL 3294827  (certifying 23(b)(1)B) and 23(b)(1)(A) class); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (same).

### 2. Subsection 23(b)(1)(A)

It is not uncommon for courts to certify ERISA class actions under both subsections 23(b)(1)(A) and 23(b)(1)(B).  *See, e.g.*, *Smith v. AON Corp.*, 238 F.R.D. 609, 617 (N.D. Ill. 2006); *Rankin v. Rots*, 220 F.R.D. at 522; *Stanford*, 263 F.R.D. at 173-174; *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 at *16; *Jones*, 257 F.R.D. at 193-194; *Merck*, 2009 WL 331426, at *10-*11.  Again, the representative nature of Plaintiffs' ERISA claims alleging Defendants' plan-wide fiduciary misconduct illustrates the propriety of certification under this subsection.  Therefore, if necessary, it is clear that the proposed Settlement Class could be certified under Rule 23(b)(1)(A).

### 3. The Proposed Class Meets the Requirements of Rule 23(b)(2)

Certification of the proposed Class would also be appropriate under Rule 23(b)(2). Under that subsection, a class may be certified if:

> [T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive

> relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

FED. R. CIV. P. 23(b)(2).

The proposed Class clearly satisfies the requirements of Rule 23(b)(2).  As noted *supra*, Defendants' challenged conduct in this case (and the relief sought from the effects of it) affected the Plan, and the proposed class of Plan participants, as a whole.  *See generally Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985).  Moreover, courts have recognized that certification is appropriate under Rule 23(b)(2) where declaratory or injunctive relief is an important aspect of the overall relief sought.  *See, e.g.*, *George*, 270 F.R.D. at 362 ("A class may properly be certified in this case under Rule 23(b)(2), because the putative class in Counts I and II seeks primarily injunctive and declaratory relief.")

As is clear from the Complaint, Plaintiffs have asked for numerous forms of injunctive and declaratory relief among other relief.  *See, e.g.*, Complaint, Prayer for Relief.  If Plaintiffs prevail in establishing Defendants' liability, Defendants will be obliged to make the Plan whole and take whatever equitable actions are ordered by the Court, including the declaratory and equitable relief specifically sought by Plaintiffs.  *See* ERISA § 409(a), 29 U.S.C. § 1109(a); ERISA §§ 502(a)(2)-(3), 29 U.S.C. §§ 1132(a)(2)-(3).  In light of this, courts have certified analogous claims under Rule 23(b)(2), reasoning that the "remedies requested by [p]laintiffs are by definition plan-wide. . . .  If [p]laintiffs prevail and the [p]lan recoups its losses through the declaratory and injunctive relief sought by [p]laintiffs, any consequential financial benefit to individual participants and beneficiaries would flow directly and incidentally from the [p]lan's recovery."  *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005); *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001) ("Rule 23(b)(2) permits an action to be maintained as a class action when 'the party opposing the class has acted

or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'") Therefore, given the above, Plaintiffs' ERISA claims may also be certified pursuant to Rule 23(b)(2).

### 4. Rule 23(g) is Satisfied

Rule 23(g) requires the Court to examine the capabilities and resources of counsel for the Class to determine whether they will provide adequate representation to the Class. Here, counsel for the Class satisfy Rule 23(g) because Co-Lead Class counsel has substantial experience in handling class actions, other complex litigation, and claims of the type asserted in this action. *See* discussion *supra* in section IV.B.4. Of particular relevance here, Co-Lead Class Counsel have litigated numerous similar ERISA class action cases and has recovered hundreds of millions of dollars for plan participants and retirees in these cases.

The capabilities and resources of counsel for the Class are demonstrated by the work performed to date in this case. Co-Lead Counsel have done substantial work to identify or investigate potential claims in the Litigation, and have also vigorously pursued the interests of the class through extensive negotiations. Hence, Co-Lead Counsel's extensive efforts in prosecuting this case, in combination with their in-depth knowledge more than satisfy Rule 23(g).

## VI. CONCLUSION

Based upon the foregoing, Plaintiffs respectfully move this Court to grant their Motion for Preliminary Approval of Settlement, Conditional Certification of a Settlement Class, and Approval of Class Notice.

Dated:  April 27, 2011                          Respectfully submitted,

                                      **BARROWAY TOPAZ  KESSLER
MELTZER & CHECK, LLP**

                                        *s/ Mark K. Gyandoh*
Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@btkmc.com
eciolko@btkmc.com
plevan@btkmc.com
mgyandoh@btkmc.com

*Co-Lead Counsel for Plaintiffs*

**KELLER ROHRBACK L.L.P.**
Lynn L. Sarko
Derek W. Loeser
Erin M. Riley
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
eriley@kellerrohrback.com

*Co-Lead Counsel for Plaintiffs*

**KITRICK, LEWIS & HARRIS CO., L.P.A.**
Mark Lewis, Ohio Bar #0063700
Mark Kitrick, Ohio Bar #0000021
515 East Main Street, Suite 515
Columbus, Ohio  4315-5398
Telephone:  (614) 224-7711
Facsimile:  (614) 225-8985
mlewis@kitricklaw.com
mkitrick@kitricklaw.com

*Liaison Counsel for Plaintiffs*

34

**STATMAN HARRIS & EYRICH**
Alan J. Statman
Jeffrey P. Harris
441 Vine Street, Suite 3700
Cincinnati, Ohio 45202
Telephone: (513) 621-2666
Facsimile: (513) 621-4896
ajstatman@statmanharris.com
jharris@statmanharris.com

*Counsel for Plaintiffs Cedarleaf and Moening*