# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

IN RE HUNTINGTON BANCSHARES INC.   )      Case No. 2:08-CV-0165
ERISA LITIGATION,                           )
                                        )      Hon. Gregory L. Frost
                                        )
                                        )      Magistrate Judge Terence P. Kemp
———— ——————————— ————)

**SETTLEMENT AGREEMENT AND RELEASE**

             This Settlement Agreement and Release ("Settlement Agreement") is entered

into among Hilda Riccio, Nathan Cedarleaf, Aileen Moening and Carol Uberti ("Named

Plaintiffs") individually and on behalf of the Settlement Class (defined below); Huntington

Bancshares Incorporated ("Huntington"); the Huntington Investment and Tax Savings Plan

(the "Plan"); and the Defendants (defined below), by and through their attorneys, pursuant to

Rule 23 of the Federal Rules of Civil Procedure and subject to the Court's approval.

**RECITALS**

             WHEREAS, on February 20, 2008, plaintiff Hilda Riccio instituted <u>Riccio v.</u>

<u>Huntington Bancshares Incorporated, et al.</u>, Case No. 2:08-CV-0165 by filing a Complaint in

the United States District Court for the Southern District of Ohio (the "Court") pursuant to

Sections 409 and 502 of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. § 1132;

             WHEREAS, thereafter, two additional and substantially identical cases were

filed in this Court (<u>Cedarleaf v. Huntington Bancshares Inc. et al.</u>, No. 08-CV-0175 (S.D.

Ohio)) and <u>Uberti v. Huntington Bancshares Inc. et al.</u>, No. 08-CV-0197 (S.D. Ohio)), and by

court order dated May 22, 2008, the Court consolidated the three ERISA cases (the

"Litigation");

WHEREAS, pursuant to its May 22, 2008 order, the Court appointed the firms of Keller Rohrback L.L.P. and Barroway Topaz Kessler Meltzer & Check, LLP as Interim Co-Lead Counsel for the Named Plaintiffs (defined below) and the putative class ("Class Counsel");

WHEREAS, on August 4, 2008, the Named Plaintiffs filed a Consolidated Amended Complaint in the Litigation on behalf of themselves, the Plan, and a putative class of current and former Plan participants (collectively referred to as "Plaintiffs," as defined below);

WHEREAS, the Consolidated Amended Complaint alleges, among other things, that Defendants breached fiduciary duties and otherwise violated ERISA, 29 U.S.C. § 1101 et seq. by, among other things, (1) allowing the Plan to purchase and hold the common stock of Huntington at a time when, according to Plaintiffs, Huntington's stock was an unsuitable and imprudent investment for the Plan, and (2) misrepresenting and failing to disclose information concerning Huntington's financial condition, including information concerning the alleged risks of Huntington's merger with Sky Financial Group, Inc. ("Sky Financial");

WHEREAS, the Consolidated Amended Complaint sought relief on behalf of Plaintiffs, plus attorneys' fees, costs, and expenses;

WHEREAS, on October 6, 2008, Defendants filed a motion to dismiss the Consolidated Amended Complaint in its entirety;

WHEREAS, Plaintiffs opposed Defendants' motion to dismiss;

WHEREAS, on February 9, 2009, the Court dismissed the Consolidated Amended Complaint with prejudice and entered final judgment in favor of Defendants;

WHEREAS, on March 6, 2009, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit appealing the opinion and entry of judgment in favor of Defendants;

WHEREAS, commencing on April 13, 2009, the parties participated in a mediation program conducted by the Office of the Circuit Mediators of the United States Court of Appeals for the Sixth Circuit Court of Appeals ("Office of the Circuit Mediators");

WHEREAS, on or about November 30, 2009, following months of arm's-length negotiations and mediation sessions conducted by an independent mediator from the Office of the Circuit Mediators, Plaintiffs and Defendants, through their respective attorneys, reached an agreement, subject to the execution of definitive settlement documentation, to settle the Released Claims (defined below), including, but not limited to, the claims that Plaintiffs asserted in the Consolidated Amended Complaint;

WHEREAS, Defendants have denied and continue vigorously to deny that they engaged in any wrongdoing and all allegations of wrongdoing or liability that have been asserted against them;

WHEREAS, while vigorously denying any wrongdoing or liability, Defendants have agreed to enter into this Settlement on the terms and conditions set forth herein to halt any further expense and distraction that is attendant to the Litigation;

WHEREAS, Class Counsel have conducted a thorough investigation into, inter alia, the claims that were asserted or could have been asserted by the Plaintiffs, the underlying events and transactions alleged in the Consolidated Amended Complaint, and the operation and administration of the Plan;

WHEREAS, Plaintiffs believe that the claims asserted in the Litigation have merit, but despite the alleged strengths of their case, after considering (1) the benefits that

Plaintiffs will receive from the Settlement Agreement, (2) the risk of litigation, (3) the uncertain viability of Plaintiffs' legal claims and claims for damages, and (4) the benefits provided by the Settlement Agreement, Plaintiffs have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate, and are in the best interest of the Plaintiffs and the Settlement Class (defined below);

WHEREAS, Plaintiffs agree to release all Released Claims, including but not limited to any individual claims for money damages, upon the terms and conditions set forth herein and in exchange for the payments made pursuant to this Settlement Agreement and the Plan of Allocation (defined below);

WHEREAS, Plaintiffs and Defendants wish to resolve and settle with finality all of the Released Claims, including those that were asserted in the Consolidated Amended Complaint; and

WHEREAS, Plaintiffs and Defendants have reached a settlement by and through their respective undersigned counsel on the terms and conditions set forth in this Settlement Agreement.

NOW, THEREFORE, Plaintiffs and Defendants, in consideration of the promises, covenants and agreements herein described, and intending to be legally bound, do hereby mutually agree as follows:

## DEFINITIONS

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined shall have the meanings provided below:

1.      "Administrative Committee Defendants" collectively refers to the Plan's Administrative Committee and the individuals who served on the Administrative Committee during the Class Period.  The Administrative Committee Defendants include Melinda Ackerman, Daniel Brian Benhase, Shirley L. Graham, John W. Liebersbach, Thomas P. Reed, and Wilton W. Dolloff.

2.      "Agreement Execution Date" shall mean the date on which the final signature is affixed to this Agreement.

3.      "CAFA Notice" is defined in Section 5 and is attached as Exhibit 4.

4.      "Class Counsel" refers to Keller Rohrback L.L.P. and Barroway Topaz Kessler Meltzer & Check, LLP.

5.      "Class Notice" is defined in Section 4 and is attached as Exhibit 2.

6.      "Class Period" shall mean the time period from July 1, 2007 through April 1, 2009, inclusive.

7.      "Consolidated Amended Complaint" shall refer to the Consolidated Amended Complaint that Plaintiffs filed on August 4, 2008.

8.      "Court" shall mean the United States District Court for the Southern District of Ohio.

9.      "Defendants" collectively refers to the defendants named in the Consolidated Amended Complaint.  Defendants is defined to include Huntington, the Administrative Committee Defendants, the Director Defendants, the Pension Committee

Defendants, and the Investment Advisory Committee Defendants. (*See* Consolidated Amended Complaint, ¶¶ 18-28.)

10. "Defendant Releasees" shall include Huntington, the Administrative Committee Defendants, the Director Defendants, the Pension Committee Defendants, the Investment Advisory Committee Defendants, and their current or former parents, subsidiaries, affiliates, representatives, insurers, employees, attorneys, or agents, including, without limitation, Sky Financial. The Defendant Releasees shall also include anyone acting for or on behalf of the Plan or any of its past, current, or future participants, including, but not limited to, Plan sponsors, administrators, attorneys, representatives, recordkeepers, agents, fiduciaries, consultants, or advisors. Each Defendant Releasee is an intended third-party beneficiary of this Settlement Agreement and is entitled to enforce the releases contained in this Settlement Agreement.

11. "Director Defendants" collectively refers to Huntington's Board of Directors and anyone who served on the Board of Directors during the Class Period. The Director Defendants include Marty E. Adams; Raymond J. Biggs; Don M. Casto, III; Michael J. Endres; Marylouise Fennell; John B. Gerlach; D. James Hilliker; Thomas E. Hoaglin; David P. Lauer; Jonathan A. Levy; William J. Lhota; Gene E. Little; Gerard P. Mastoianni; David L. Porteous; Kathleen H. Ransier; and Stephen D. Steinour.

12. "Effective Date" of the Final Judgment and Order is defined in Section 14.

13. "ERISA" shall mean the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq., including all regulations promulgated thereunder.

14. "Escrow Account" shall refer to the account referenced in Section 6 into which Huntington will deposit the Settlement Payment.

15. "Escrow Agent" shall mean Huntington National Bank.

16.     "Fairness Hearing" shall mean the hearing at which the Court will consider Plaintiffs' Motion for Final Approval of the proposed Settlement.  At the Fairness Hearing, the Court may also consider other matters, including whether the distribution of the Settlement Fund as provided in the Plan of Allocation should be approved, and what legal fees, compensation, and expenses should be awarded to Class Counsel.

17.     "Final Date" is defined in Section 14 and is the final date of any order granting Class Counsel's Petition for Fees, Costs and Named Plaintiff's Case Contribution Award.

18.      "Final Judgment and Order" is defined in Section 13 and is attached as Exhibit 7.

19.     "Former Plan Participants," for purposes of this Settlement Agreement, is collectively defined as Settlement Class Members who are former Plan participants, who no longer have an account balance under the Plan, or who are no longer employed at Huntington at the time of the distribution of the Net Settlement Payments.

20.     "Gross Settlement Fund" is defined in Section 6(c).

21.     "Huntington" shall refer to Huntington Bancshares Incorporated and any of its past, present, and future directors, officers, fiduciaries, employees, partners, principals, agents, members, independent contractors, registered representatives, underwriters, insurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, personal representatives, predecessors, successors, successors-in-interest, parents, subsidiaries, divisions, assigns, administrators, associates, and related or affiliated entities, including, without limitation, Sky Financial.

22.     "Huntington Stock Fund" shall refer to the HBI Common Stock Fund that was offered as an investment choice in the Plan during the Class Period.

23.     "Independent Fiduciary" shall refer to the individual or entity retained by Huntington to make certain determinations regarding the Settlement Agreement as contemplated in Section 3.

24.     "Individual Defendants" shall collectively refer to the Administrative Committee Defendants, the Director Defendants, the Pension Committee Defendants, and the Investment Advisory Committee Defendants.

25.     "Investment Advisory Committee Defendants" collectively refers to the Plan's Investment Advisory Committee and any individuals who served on the Investment Advisory Committee during the Class Period. The Investment Advisory Committee Defendants include Nancy V. Kelly, Beth Ann Russell, Robert Comfort, and Donald L. Keller.

26.     "Named Plaintiffs" refers to Hilda Riccio, Nathan Cedarleaf, Aileen Moening and Carol Uberti.

27.     "Named Plaintiff's Case Contribution Award" as described in Section 12 herein means the monetary amount not to exceed $2,000.00 awarded by the Court to be paid from the Gross Settlement Fund in recognition of the Named Plaintiff's assistance in the prosecution of this Litigation.

28.     "Net Settlement Fund" is defined in Section 7.

29.     "Net Settlement Fund Payment" shall refer to the amount of the Net Settlement Fund that that will ultimately be distributed to the Settlement Class Members pursuant to the Plan of Allocation.

30.     "Notice" shall collectively refer to the Class Notice, the Publication Notice, and the CAFA Notice.

31.     "Parties" collectively refers to the Plaintiffs and Defendants.

32.     "Pension Committee Defendants" collectively refers to the Pension Review Committee of Huntington's Board of Directors and any individuals who served on the Pension Review Committee during the Class Period.  The Pension Committee Defendants include Don M. Casto, III; Marylouise Fennell; John B. Gerlach, Jr.; and D. James Hilliker.

33.     "Plaintiffs" shall collectively refer to the Named Plaintiffs on behalf of themselves, the Settlement Class Members, and the Plan.

34.     "Plan" shall refer to the Huntington Investment and Tax Savings Plan.

35.     "Plan of Allocation" shall refer to the plan to provide for the allocation of the Net Settlement Fund and is attached hereto as Exhibit 1.

36.     "Preliminary Approval Order" shall mean the proposed order attached hereto as Exhibit 6.

37.     "Publication Notice" is defined in Section 4 and is attached hereto as Exhibit 3.

38.     "Qualified Settlement Fund" is defined in Section 6.

39.     "Released Claims" are defined in Section 9.

40.     "Settlement" or "Settlement Agreement" shall refer to the terms and conditions of this Settlement Agreement.

41.     "Settlement Administrator" shall refer to the individual or entity referenced in Section 4.

42.     The "Settlement Class" or "Settlement Class Members" shall consist of all persons, excluding the Defendants, who participated in the Plan for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").

43.     "Settlement Fund" is defined in Section 6.

44.     "Settlement Payment" shall mean the aggregate sum of one million four hundred and fifty thousand dollars in United States currency ($1,450,000).

45.     "Sky Financial" refers to Sky Financial Group, Inc. and any of its past, present, and future directors, officers, fiduciaries, employees, partners, principals, agents, members, independent contractors, registered representatives, underwriters, insurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, personal representatives, predecessors, successors, successors-in-interest, parents, subsidiaries, divisions, assigns, administrators, associates, and related or affiliated entities.

46.     "Sky Merger" refers to the merger between Huntington Bancshares Incorporated and Sky Financial Group, Inc. that was completed on July 1, 2007.

47.     "Tax Expenses" are defined in Section 6.

## SETTLEMENT CLASS

1.      **Certification of Settlement Class.**

(a)     Solely for the purposes of this Settlement and for effectuating the Settlement Agreement, the Parties agree to stipulate to the certification of the Settlement Class.

(b)     Plaintiffs shall file a Preliminary Approval Motion that will request the Court to certify a Settlement Class conditionally for purposes of the Settlement. The Settlement Class shall be certified pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2) for purposes of settling and releasing all Released Claims. The Settlement Agreement is contingent upon the Court certifying the Settlement Class as a non-opt out class pursuant to Federal Rules 23(b)(1) and/or 23(b)(2).

(c)     Class Counsel shall take reasonable steps to (i) secure entry of the Preliminary Approval Order; and (ii) request the Court to hold a Fairness Hearing within a reasonable time after the completion of Notice.

2.      **Defendants' Reservation of Rights.**  The Parties have agreed to the certification of the Settlement Class for settlement purposes only.  If the Litigation is not settled pursuant to the terms of this Settlement Agreement, then (a) no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and (b) no reference to the Settlement Class or any documents related thereto shall be made for any purpose.  Plaintiffs agree that Defendants' agreement to a Settlement Class for the purpose of settling the Litigation does not constitute an admission that class certification would be appropriate if the Litigation were to proceed.  If the Settlement Agreement is terminated pursuant to its terms, or is not approved by the Court, or is reversed, vacated, or modified, Defendants shall have the right to oppose any class certification that may subsequently be sought.  Defendants preserve the right to object to class certification in any other lawsuit and under all other circumstances.

## INDEPENDENT FIDUCIARY

3.      The Parties agree that the Settlement shall be contingent upon an independent fiduciary (the "Independent Fiduciary") approving the Settlement, including, but not limited to, the Plan of Allocation, providing a release on behalf of the Plan that is coextensive with the release provided by the Plaintiffs and making a determination that the Settlement Agreement complies with the terms of the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-39 ("Department of Labor's Class Exemption, PTE 2003-39").  Huntington shall pay the cost of the Independent Fiduciary, and such costs shall not be taken from or otherwise reduce the Settlement Payment.

## NOTICE OF THE SETTLEMENT

4.      **Notice to the Settlement Class Members.**

(a)      If the Independent Fiduciary preliminarily determines that the

-11-

Settlement Agreement should be authorized for the Plan and preliminarily makes the other determinations called for by the Department of Labor's Class Exemption, PTE 2003-39, Class Counsel shall provide the Settlement Class Members with two forms of notice: (i) notice by first class mail, postage prepaid ("Class Notice"); and (ii) notice by publication ("Publication Notice"). The form of Class Notice is attached as Exhibit 2, and the form the Publication Notice is attached as Exhibit 3.

(b)  Class Counsel will retain a Settlement Administrator to mail the Class Notice to each Settlement Class Member at the last known address currently on file with the Plan's recordkeeper. Huntington will provide the Settlement Administrator with a Class Notice mailing list that contains the last known mailing address for each Settlement Class Member, in electronic form, within thirty (30) days following the date on which the Court enters the Preliminary Approval Order, and timely respond to any additional reasonable written requests for accessible data in Huntington's custody or control that is necessary to effectuate Notice. With respect to information that resides in Huntington's Plan recordkeeping system, no charge against the Settlement Fund or to Named Plaintiffs, Class Counsel, or the Settlement Class shall be made, directly or indirectly, for the gathering or the provision of such information or assistance. If Huntington is required to incur any out-of-pocket costs to gather participant data, those out-of-pocket costs will be deducted from the Gross Settlement Fund. Class Counsel, through the Settlement Administrator, shall be responsible for any returned mail and any additional investigation that may be required to ascertain the Class Member's correct mailing address. Class Counsel shall provide Huntington with any changes of address or updated contact information for Class Members.

(c)  Class Counsel shall cause Publication Notice to be published on at least one occasion in, in the absence of any agreement to the contrary, in PR Newswire and the

Columbus Dispatch.

(d)     Notice shall be given within the time permitted by an order of the Court.  In addition, Class Counsel will post copies of the Settlement Agreement, Plan of Allocation, Class Notice, and Publication Notice on an internet website.

(e)     If, at any point, Class Counsel obtains any updated or additional contact information for the Settlement Class Members, Class Counsel shall timely provide that information to Huntington.

5.      **Notice Under the Class Action Fairness Act of 2005 ("CAFA")**

(a)     Huntington shall provide the appropriate state and federal officials with notice of the Settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA").  This notice is referred to as the "CAFA Notice."  The form of the CAFA Notice is attached as Exhibit 4.  Huntington will incur the expense of the CAFA Notice.

(b)     The Parties will confer in advance of filing the Motion for Preliminary Approval.  Plaintiffs will file the Motion for Preliminary Approval and set the Motion for hearing on dates that are mutually agreeable to the Parties, and in accordance with the Court's rules and procedures, so that Huntington may serve a Court-approved form of CAFA Notice within ten (10) days of the date that Plaintiffs file the Motion for Preliminary Approval.

## SETTLEMENT PAYMENT

6.      **Settlement Payment and Creation of the Settlement Fund**

(a)     Huntington agrees to make a Settlement Payment in the amount of one million and four hundred fifty thousand dollars ($1,450,000).

(b)     Within thirty (30) days after the Court enters the Preliminary Approval Order described in Section 11, Huntington will deposit the Settlement Payment into an

-13-

Escrow Account (also referred to as the "Settlement Fund"). After such payment is made, all Settlement Payment obligations shall be satisfied and fulfilled.

(c)     Any interest earned on the Settlement Fund shall be added to the principal amount of the Settlement Fund. The Settlement Fund, together with the interest earned on the Settlement Fund, shall constitute the Gross Settlement Fund. Funds in the Escrow Account shall not be commingled with any other accounts or monies.

(d)     The Escrow Agent shall be Huntington National Bank. A copy of the Escrow Agreement with Huntington National Bank is attached as Exhibit 5. Huntington National Bank will not charge an escrow agent fee and will charge only its out-of-pocket expenses, if any, for serving as Escrow Agent. Subject to Court approval and oversight, the Escrow Account will be controlled by the Escrow Agent, or such other person or entity as the Court may appoint.

(e)     The Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class as are consistent with the terms of the Final Judgment and Order and this Settlement Agreement.

(f)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or until such time as directed by the Court.

(g)     The Gross Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. The Parties agree that Escrow Agent, or any accounting firm that the Escrow Agent may retain, shall timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of

1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Gross

Settlement Fund shall be the Escrow Agent.  The Escrow Agent, or any accounting firm that it

may retain, shall timely and properly prepare, deliver to all necessary parties for signature, and

file all necessary documentation for any elections required under Treas. Reg. §1.468B-1.

Escrow Agent or any accounting firm that it may retain shall timely and properly prepare and file

any informational and other tax returns necessary or advisable with respect to the Gross

Settlement Fund and the distributions and payments therefrom including without limitation the

returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-

2(1).

   (h) All taxes on the income of the Escrow Account and out-of-pocket

costs incurred by the Escrow Agent in connection with the taxation of the Escrow Account

(including, without limitation, any expenses of tax attorneys and accountants) (collectively, "Tax

Expenses") shall timely be paid by the Escrow Agent or its accounting firm out of the Gross

Settlement Fund without a prior order of court.  The Individual Defendants and their respective

counsel shall have no liability or responsibility of any sort for filing any tax returns or paying

any taxes with respect to the Escrow Account.  Plaintiffs shall hold the Defendant Releasees

harmless for any tax liabilities paid out of the Escrow Account.

   (i) In addition to Tax Expenses, the Gross Settlement Fund shall be

used to pay any other reasonable costs of administering the Settlement, including (1) with the

exception of the gathering of participant data that is contained within Huntington's Plan

recordkeeping system, the costs and expenses associated with identifying and notifying the

Settlement Class Members of the Settlement and effectuating Notice, including, without

limitation, (a) the costs of printing, mailing, and publishing the Class Notice and Publication

Notice, (b) the reasonable costs of the Settlement Administrator, (c) any out-of-pocket costs and

expenses that Huntington may incur to gather required data, including out-of-pocket costs incurred to gather any additional data necessary to effectuate Notice, to perform required settlement calculations, and to establish Plan accounts for the purpose of distributing the Net Settlement Fund Payments, and (2) the out-of-pocket costs and expenses incurred by the Escrow Agent.

(j)     Any payments of attorneys' fees and costs to Class Counsel shall be made from the Gross Settlement Fund within the time proscribed in Section 12. If the Court awards any of the Named Plaintiffs the Case Contribution Awards described in Section 12, the Named Plaintiff's Case Contribution Awards shall be made from the Gross Settlement Fund.

(k)     Anyone other than Class Counsel who seeks payment from the Gross Settlement Fund that is permitted by the Court and subparagraph (i) of this Section shall serve upon Class Counsel and Defendants' counsel adequate documentation of any such expense. All documentation must be submitted no later than seven (7) days after the Effective Date of the Final Judgment and Order and the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award (as defined in Section 14), whichever occurs later. After receiving adequate documentation, Class Counsel and Defendants' counsel shall submit to the Escrow Agent a joint letter directing the Escrow Agent to reimburse such expenses out of the Gross Settlement Fund. The Escrow Agent will make the payment out of the Gross Settlement Fund within five (5) business days of receiving the joint letter of direction.

7.     **Plan of Allocation and Distribution of Net Settlement Fund**.

(a)     The balance of the Gross Settlement Fund, after payment of the amounts referenced in Section 6, shall be the "Net Settlement Fund."

-16-

(b)     If the Settlement Agreement is approved by the Court, the Court will be asked to approve a Plan of Allocation that shall provide for the allocation of the Net Settlement Fund.  The Plan of Allocation that will be proposed to the Court is attached hereto as Exhibit 1.

(c)     No later than twenty-one (21) days after the Effective Date of the Final Judgment and Order and the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award (as defined in Section 12), whichever occurs later, the Escrow Agent shall disburse any Named Plaintiff Case Contribution Awards that were approved by the Court and transfer the Net Settlement Fund to a subaccount in the Huntington Investment and Tax Savings Trust, provided that copies of such judgment and orders were delivered promptly to the Escrow Agent.  The money held in the subaccount within the Trust will not earn interest.

(d)     As of the Effective Date of the Final Judgment and Order, Defendants shall not have a right to the return of the Net Settlement Fund.

8.     **Taxation of Settlement Payments.**  The Settlement Class Members shall be responsible for the payment of any federal, state, and local taxes that may be due with respect to the Settlement Payment.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due, and the Defendant Releasees shall not have any responsibility or liability for any tax payment.

## RELEASES

9.    **Released Claims.**  Upon the Effective Date of the Final Judgment and

Order, the Parties agree to the following concerning the release of asserted, unasserted, or

unknown claims, collectively referred to as the "Released Claims":

(a)    The Plaintiffs, on their own behalf and on behalf of their

representatives, heirs, executors, administrators, trustees, predecessors, successors-in-interest,

attorneys, and assigns, shall be deemed to have, and by operation of the Final Judgment and

Order shall have, fully, finally, and forever released, relinquished, and discharged the Defendant

Releasees from, and shall forever be enjoined from suing the Defendant Releasees for, any and

all actual or potential claims, actions, causes of action, demands, obligations, or liabilities of any

nature whatsoever (including, but not limited to, claims for any and all losses, damages, unjust

enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunctive relief, declaratory

relief, claims for contribution, indemnification or any other type of legal or equitable relief),

whether arising under local, state, or federal law, whether by statute, contract, common law, or

equity, whether brought in an individual, representative, or any other capacity, whether known or

unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or

contingent, liquidated or unliquidated, as well as any claim or right obtained by assignment or

brought by way of demand, complaint, cross-claim, counterclaim, third party claim or otherwise.

The Released Claims include claims that arise out of or are related to the acts, omissions, facts,

matters, transactions, or occurrences that have been alleged or referred to in the Litigation or the

Consolidated Amended Complaint, including, but not limited to, (1) any claims alleged under

ERISA, (2) the Sky Merger, (3) the administration or fiduciary oversight of the Plan, (4) the

Huntington Stock Fund, (5) the purchase, sale, or retention of any Huntington securities by or on

behalf of the Plan and any of its current, former or future Plan participants at any time during the

Class Period, or (6) the preparation or structuring of the methodology for the distribution of the Gross Settlement Fund or the Net Settlement Fund, including the Plan of Allocation or any amounts calculated in accordance therewith.

     (b)  The Released Claims shall include any claims which the Plaintiffs do not know or suspect to exist at the time of this release which, if known by him, her, or it, might have affected his, her or its decision to enter into the Settlement and release the Defendant Releasees or the decision not to object to this Settlement Agreement. Upon the Effective Date, Plaintiffs shall be deemed to have, and by operation of the Final Judgment and Order shall have, expressly waived the provisions, rights and benefits of any provision of the laws of the United States or of any state which provides that a general release does not extend to claims which a party does not know or suspect to exist in its favor at the time of executing the release, which if known to the party may have materially affected the settlement. This release includes, without limitation, any claims or rights that the Plaintiffs may have under California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Plaintiffs may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matters of the Released Claims, but upon the Effective Date, they shall be deemed to have, and by operation of the Final Judgment and Order shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or not contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the

subsequent discovery or existence of such different or additional facts. Plaintiffs shall be deemed by operation of the Final Judgment and Order to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement Agreement of which this release is a part.

(c) By operation of the Final Judgment and Order, the Defendants shall have, fully, finally, and forever released, relinquished, and discharged the Named Plaintiffs, the Settlement Class, and Class Counsel (collectively, the "Plaintiff Released Parties") from any and all claims relating to the institution or prosecution of the Litigation or the settlement of any Released Claims.

(d) Notwithstanding the forgoing, the Released Claims do not include any claims for an alleged breach of the terms of this Settlement Agreement, or any claims under ERISA Section 502(a)(1)(B) for vested benefits brought by an individual Plan participant or beneficiary that do not arise from or relate to the Litigation or the Consolidated Amended Complaint.

## SETTLEMENT APPROVAL PROCESS

10. **Limited Remand to the District Court for Approval of the Settlement**. After the Agreement Execution Date, the Parties shall file a joint motion in the U.S. District Court for the Southern District of Ohio pursuant to Federal Rule of Civil Procedure 62.1. The Parties will request the District Court to enter an indicative ruling stating that, should the case be remanded to it by the U.S. Court of Appeals for the Sixth Circuit (the "Sixth Circuit"), the District Court will adjudicate Plaintiffs' motion to approve the Settlement. After receiving such an order from the District Court, the Parties will file a joint motion in the Sixth Circuit pursuant to Federal Rule of Appellate Procedure 12.1 requesting the Sixth Circuit to stay the appeal and to order a limited remand for the limited purpose of approving the Settlement.

11.    **Preliminary Approval Order.**  Following the Sixth Circuit's entry of the order as provided by Section 10 and the Independent Fiduciary's review and preliminary approval of the Settlement, Plaintiffs shall move in the U.S. District Court for the Southern District of Ohio for entry of an order preliminarily approving the Settlement Agreement, conditionally certifying the class for settlement purposes, and approving Class Notice, Publication Notice, and the CAFA Notice (the "Preliminary Approval Order").  A copy of the proposed Preliminary Approval Order is attached as Exhibit 6 hereto.

12.    **Petition for Attorneys' Fees and Costs and Named Plaintiff Awards.**

(a)    The Parties agree that Class Counsel may petition the Court for (i) an award of attorneys' fees not to exceed thirty-three percent (33%) of the Settlement Fund, plus reimbursement of costs incurred in prosecution of this Litigation on behalf of the Settlement Class, and (ii) a Case Contribution Award for the Named Plaintiffs in an amount that shall not exceed two thousand dollars ($2,000.00) per Named Plaintiff (the "Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award").  Class Counsel shall request that the Court resolve such Petition by entry of an order that is separate and apart from the Final Judgment and Order.

(b)    Any award of attorneys' fees and costs shall be paid solely from the Gross Settlement Fund.  No earlier than ten (10) business days after the entry of an order granting the Petition for Fees, Costs and Named Plaintiff's Case Contribution Award, Class Counsel may send the Escrow Agent a copy of the Court's order and request disbursement of the award of attorneys' fees and costs from the Gross Settlement Fund.  Class Counsel shall copy Defendants' Counsel on the correspondence.  Subject to the provisions of subparagraph (c), below, the Escrow Agent will disburse the award of attorneys' fees and costs from the Gross Settlement Fund within five (5) business days of receiving from Class Counsel a copy of the

Court order granting the Petition for Fees, Costs and Named Plaintiff's Case Contribution Award.  If Class Counsel does not request the disbursement of attorneys' fees and costs prior to the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award, Class Counsel's attorneys' fees and costs will be distributed in the time and manner described in Section 8(c) of the Escrow Agreement.

(c)     The Escrow Agent's disbursement of attorneys' fees and costs will be subject to Class Counsel providing a letter of credit satisfactory to Defendants' counsel.  It will also be subject to Class Counsel's joint and several obligation (collectively, "Class Counsel Parties") to make appropriate refunds or repayments to the Gross Settlement Fund, plus accrued interest at the same rate that was earned by the Gross Settlement Fund, if the attorneys' fees or cost award to Class Counsel is reduced or reversed.  The Class Counsel Parties shall make any requisite refunds or repayments within ten (10) business days of written notification that the attorneys' fees and cost award has been reduced or reversed.  The Class Counsel Parties agree that they are subject to the continuing jurisdiction of the Court for purposes of enforcing the provisions of this Paragraph.

(d)     Defendants shall bear no responsibility for the allocation of attorneys' fees, costs, or expenses among Class Counsel and shall not be subject to suit under this Settlement Agreement or otherwise for the same.

(e)     The Parties agree that the allowance (or disallowance), in whole or part, by the Court of any Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award is not a term or condition of the Settlement Agreement, and that any order or proceedings relating thereto, or any appeal from any such order, shall not operate to terminate or cancel this Settlement Agreement.

13.    **Final Judgment and Order.**  If this Settlement Agreement is preliminarily approved by the Court, Plaintiffs will file a motion for final approval of the Settlement Agreement within the time period set forth in the Preliminary Approval Order. Plaintiffs, in consultation with Defendants, shall request at a final approval hearing that the Court enter final judgment (the "Final Judgment and Order").  The proposed Final Judgment and Order that Plaintiffs shall submit to the Court for approval is attached hereto as Exhibit 7.

14.    **Finality of Judgment and Orders.**

(a)    The Effective Date of the Final Judgment and Order that is entered by the Court (defined herein as the "Effective Date") shall be (a) thirty (30) days after the entry of the Final Judgment and Order if the time for any appellate and/or other potential proceedings has expired and no document is filed within that time seeking appeal, review, rehearing, reconsideration, *certiorari*, or any other action regarding that judgment and order; or (b) if any such document is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings or potential proceedings resulting from such document have been finally terminated in such a manner as to permit no further judicial action, and with the Settlement Agreement and Final Judgment and Order being affirmed and approved in all material respects.

(b)    The Final Date of any order regarding Class Counsel's Petition for Fees, Costs and Named Plaintiff's Case Contribution Award (the "Final Date") shall be (a) thirty (30) days after the order is entered if the time for any appellate and/or other potential proceedings has expired and no document is filed within that time seeking appeal, review, rehearing, reconsideration, *certiorari*, or any other action regarding that order; or (b) if any such document is filed, then fourteen (14) days after the date upon which all appellate and/or other proceedings or potential proceedings resulting from such document have been finally terminated in such a manner as to permit no further judicial action.

15.     **Effect of Non-Approval.**  In the event that the Court declines to enter either the Preliminary Approval Order or the Final Judgment and Order in the forms attached hereto, or in the event that the Final Judgment and Order is reversed, vacated, or modified in any material respect, the Settlement Agreement shall become void, the Litigation shall be returned to the Sixth Circuit for continuation of the appeal, and all orders entered pursuant to the Settlement Agreement shall be deemed vacated.

## MISCELLANEOUS PROVISIONS

16.     **Interpretation.**  This Settlement Agreement contains the entire agreement among the Parties and supersedes any prior agreements or understandings among them.  All terms are contractual and are not mere recitals.

17.     **Headings.**  The headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

18.     **Independent Investigation.**  The Parties each acknowledge that they have each made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so, and have not relied upon any representations from one another.  Moreover, the Parties expressly assume the risk that any fact not recited, contained, or embodied in the Settlement Agreement may turn out to be different from or contrary to the facts now known to them or believed by them to be true, and further agree that the Settlement Agreement shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

19.     **Amendment.**  This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties (or their respective counsel), or by a court

-24-

order that is agreed to by the Parties. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or the Court.

20. **Construction.** For the purpose of construing or interpreting this Settlement Agreement, the Parties agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed for or against any Party.

21. **Integration of Exhibits.** The exhibits to this Settlement Agreement are an integral and material part of the Settlement and are hereby made a part of the Settlement Agreement. However, as set forth in the Preliminary Approval Order, non-material modifications of the Notice may be made with consent of the Parties after approval of the form and substance of the Notice by the Court but prior to being mailed or published.

22. **Jurisdiction.** The Court shall have jurisdiction over the Parties and the claims asserted in the Litigation as stated in the Final Judgment and Order.

23. **No Admission.** Defendants have vigorously denied, and continue to deny, that they have committed any violation of ERISA or any other laws, and they have vigorously denied and continue to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Litigation. Defendants are agreeing to this Settlement solely because it will eliminate the substantial burden and expense of further litigation and the concomitant distraction of resources and efforts from their other affairs. This Settlement Agreement, any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, is not and shall not be construed as an admission by any of the Defendants of any fault, wrongdoing, or liability whatsoever. This Settlement Agreement, any of its terms, and any agreement or order relating thereto, shall not be used, offered, or received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever, as

a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any Defendant; provided, however, that nothing contained in this paragraph shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement, the Settlement Agreement or the Final Judgment and Order. This Settlement Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence or in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or any similar defense or counterclaim.

24. **No Disclosure of Non-Public Information.** The Parties agree that they shall not issue any press releases, respond to any press inquiries, or otherwise communicate any non-public information concerning this Settlement Agreement without the express approval of the Court. Class Counsel shall, however, publish a copy of the Settlement Agreement, and any Court-approved Plan of Allocation, Class Notice and Publication Notice on their internet websites.

25. **Governing Law.** This Settlement Agreement shall be governed by the laws of the United States of America, to the extent applicable, and otherwise in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Ohio relating to contracts made and to be performed in Ohio.

26. **Notices.** Any notice required under the Settlement Agreement, other than the Notice described in Sections 4 and 5, shall be sent by overnight mail and by facsimile transmission to the following addresses:

> **Plaintiffs**
>
> Joseph H. Meltzer
> Peter H. LeVan, Jr.

Mark K. Gyandoh
BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610-667-7706
Fax:  610-667-7056

Lynn L. Sarko
Derek W. Loeser
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206-623-1900
Fax: 206-623-3384

**Defendants**

Walter C. Carlson
Erin E. Kelly
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:  312-853-7000
Fax: 312-853-7036

Bradd N. Siegel
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Columbus, OH  43215
Telephone:  614-227-2000
Fax: 614- 227-2100

27.    **Binding Upon Successors and Assigns**.  This Settlement Agreement

shall be binding upon and inure to the benefit of the Parties' respective successors and assigns.

28.    **Counterparts.**  This Settlement Agreement may be executed in

counterparts, and may be executed by facsimile or electronic mail, and so executed shall

constitute one agreement.  Each signatory is duly authorized to execute this Settlement

Agreement on behalf of the Parties he or she represents.

**IN WITNESS WHEREOF,** the undersigned have caused this Settlement

Agreement to be executed as of the dates set forth below:

**ON BEHALF OF THE NAMED PLAINTIFFS AND THE SETTLEMENT CLASS:**

Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
Mark K. Gyandoh
BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Fax: 610-667-7056

Date: 2-16-11

Lynn L. Sarko
Derek W. Loeser
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206-623-1900
Fax: 206-623-3384

Date: 2-16-11

**ON BEHALF OF DEFENDANTS:**

Walter C. Carlson
Erin E. Kelly
Sidley Austin LLP
1 South Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Fax: 312-853-7036

Date: 2|15|11

-28-

Bradd N. Siegel
Porter Wright Morris & Arthur LLP
41 South High Street
Columbus, OH 43215
Telephone: 614-227-2000
Fax: 614-227-2100

Date: 02/15/2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| IN RE HUNTINGTON BANCSHARES INC. | ) | Case No. 2:08-CV-0165 |
| ERISA LITIGATION, | ) | |
| | ) | Hon. Gregory L. Frost |
| | ) | |
| | ) | Magistrate Judge Terence P. Kemp |
| | ) | |

**LIST OF EXHIBITS TO
SETTLEMENT AGREEMENT AND RELEASE**

**Exhibit 1 -** Plan of Allocation

**Exhibit 2 -** Class Notice

**Exhibit 3 -** Publication Notice

**Exhibit 4 -** CAFA Notice

**Exhibit 5 -** Escrow Agreement with Huntington National Bank

**Exhibit 6 -** Preliminary Approval Order

**Exhibit 7 -** Final Judgment and Order

# EXHIBIT 1

### RICCIO v. HUNTINGTON BANCSHARES INCORPORATED ET AL.

### PLAN OF ALLOCATION

## I.      DEFINITIONS.

All of the defined terms set forth herein shall have the same meaning that is ascribed to them in the Settlement Agreement.

A.      "Class Period" shall mean the time period from July 1, 2007 through April 1, 2009, inclusive.

B.      "*De Minimis* Amount" is the amount of ten dollars ($10.00).

C.      "*De Minimis* Group" collectively refers to Settlement Class Members who are Former Plan Participants and are no longer employed at Huntington and whose Preliminary Settlement Amount is equal to or less than the *De Minimis* Amount.

D.      "Former Plan Participants," collectively refers to Settlement Class Members who are former Plan participants, who no longer have an account balance under the Plan, and who are no longer employed at Huntington at the time of the distribution of the Net Settlement Payments.

E.      "Huntington Stock Fund" or "Stock Fund" shall refer to the HBI Common Stock Fund that was offered as an investment choice in the Plan during the Class Period.

F.      "Plan" shall refer to the Huntington Investment and Tax Savings Plan.

G.      "Individual Defendants" shall collectively refer to Melinda Ackerman; Marty E. Adams; Daniel Brian Benhase; Raymond J. Biggs; Don M. Casto, III; Robert Comfort; Wilton W. Dolloff; Michael J. Endres; Marylouise Fennell; John B. Gerlach; Shirley L. Graham; D. James Hilliker; Thomas E. Hoaglin; Donald L. Keller; Nancy V. Kelly; David P. Lauer; John W. Liebersbach; Jonathan A. Levy; William J. Lhota; Gene E. Little; Gerard P. Mastoianni; David L. Porteous; Kathleen H. Ransier; Thomas P. Reed; Beth Ann Russell; and Stephen D. Steinour.

H.      "Net Settlement Fund" is the total dollar amount that the Escrow Agent will deposit into a subaccount of the Huntington Investment and Tax Savings Plan Trust after the payment of the amounts referenced in Section 6 of the Settlement Agreement.  The Trust subaccount is a non-interest-bearing account.

I.      "Preliminary Settlement Amount" shall refer to the initial calculation of the Settlement Class Member's alleged net loss that is performed pursuant to Section II of this Plan of Allocation.

J.      "Settlement Class" or "Settlement Class Members" shall consist of all persons who participated in the Plan for whose individual accounts the Plan purchased or held units in

the Huntington Stock Fund at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period"), with the exception of the Individual Defendants.

## II.     CALCULATION OF THE PRELIMINARY SETTLEMENT AMOUNTS.

A.      No later than twenty-one (21) days after the Effective Date of the Final Judgment and Order and the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award (as defined in Section 14 of the Settlement Agreement), the Escrow Agent shall transfer the Net Settlement Fund to a subaccount in the Huntington Investment and Tax Savings Plan Trust (the "Trust"), provided that copies of such judgment and orders were delivered promptly to the Escrow Agent. The money held in the subaccount within the Trust will not earn interest.

B.      Within thirty (30) days after the Escrow Agent transfers the Net Settlement Fund to a subaccount in the Trust, Huntington shall calculate for each Settlement Class Member his or her Preliminary Settlement Amount.

C.      Calculation of the Alleged Net Loss.

For each Settlement Class Member, Huntington shall determine his or her approximate alleged net loss ("Net Loss"):   Net Loss = A + B - C - D, where, for each Settlement Class Member's account:

1.      A = the dollar value, if any, of the balance in the Huntington Stock Fund on the first day of the Class Period;

2.      B = the dollar value, if any, of all of the purchases of interests in the Huntington Stock Fund during the Class Period as of the time of purchase(s);

3.      C = the dollar value, if any, of all dispositions of interests in the Huntington Stock Fund during the Class Period as of the time of the sale(s); and

4.      D = the dollar value, if any, of the balance in the Huntington Stock Fund remaining as of the close of the market on last day of the Class Period, or, if a Settlement Class Member terminated his or her participation in the Plan before the end of the Class Period, the last day the Settlement Class Member was a Plan participant.

D.      Settlement Class Members whose Net Loss is negative (*i.e.*, they received a net gain rather than a net loss as a result of the calculations identified in this Section) are excluded from further calculations under this Plan of Allocation and those Settlement Class Members will not receive a payment from the Net Settlement Fund.

E.      Huntington shall then aggregate the dollar amount of the Settlement Class Members' Net Losses to determine the Preliminary Aggregate Net Loss.

F.    Huntington will calculate each Settlement Class Member's Preliminary Net Loss Percentage by dividing the dollar amount of each Settlement Class Member's Net Loss by the Preliminary Aggregate Net Loss.

G.    Huntington shall then calculate the Preliminary Settlement Amount for each Settlement Class Member by multiplying the Settlement Class Member's Preliminary Net Loss Percentage by the dollar amount of the Net Settlement Fund.

H.    Any Settlement Class Member who is a Former Plan Participant when the calculation of his or her Preliminary Settlement Amount is performed and whose Preliminary Settlement Amount is calculated to be less than or equal to ten dollars (the "*De Minimis* Amount") shall not receive a payment under the Settlement Agreement and shall be deemed to have a Net Settlement Fund Payment of zero (collectively, the "*De Minimis* Group"). Any Preliminary Settlement Amounts that are calculated for a deceased Settlement Class Member and his or her designated beneficiary shall be combined for purposes of determining whether the Settlement Class Member is a member of the *De Minimis* Group. The Preliminary Settlement Amounts that were calculated for the members of the *De Minimis* Group will be reallocated to the remaining Settlement Class Members pursuant to the calculations of the Net Settlement Payments that are described below.

I.    Class Counsel shall have an opportunity to review Huntington's calculations of the Preliminary Settlement Amounts. Class Counsel shall approve those calculations or raise any objections within 21 days of receiving those calculations from Huntington.

## III.    CALCULATION OF THE NET SETTLEMENT FUND PAYMENTS.

Unless Class Counsel or Huntington request additional time to review or discuss the calculations of the Preliminary Settlement Amounts, Huntington shall calculate the Net Settlement Fund Payments within fourteen (14) days after the Parties agree upon the calculations of the Preliminary Settlement Amounts. The Net Settlement Fund Payments shall be calculated for those Settlement Class Members who are not members of the *De Minimis* Group (at times referred to as "Non-*De Minimis* Settlement Class Members"). The Net Settlement Fund Payment is the amount that will ultimately be distributed to the Non-*De Minimis* Settlement Class Members.

A.    Huntington will aggregate the dollar amount of the Non-*De Minimis* Settlement Class Members' Net Losses to determine the Final Aggregate Net Loss.

B.    Huntington will calculate each Non-*De Minimis* Settlement Class Member's Final Net Loss Percentage by dividing the dollar amount of his or her Net Loss by the Final Aggregate Net Loss.

C.    Huntington shall then calculate the Net Settlement Fund Payment for each Non-*De Minimis* Settlement Class Member by multiplying his or her Final Net Loss Percentage by the dollar amount of the Net Settlement Fund.

D.     In light of the manner in which the data is kept, the ease with which it can be manipulated and the extent to which it is possible to locate Former Plan Participants, it may be appropriate to simplify some of the features of the calculations described under this Plan of Allocation (*e.g.,* allocate a slightly different Net Settlement Fund Payment due to rounding). Any material changes to the methodology for calculating the Net Settlement Fund Payments will be discussed with Class Counsel and presented to the Court and the Independent Fiduciary for approval.

E.     In the absence of an agreement to the contrary, Class Counsel must approve or raise any objections to Huntington's calculations of the Net Settlement Fund Payments within twenty-one (21) days of receiving those calculations from Huntington. After the Parties agree upon the calculations of the Net Settlement Fund Payments, the Settlement Class Members shall be barred from raising objections to the calculation process and the Net Settlement Fund Payment calculations shall be final.

F.     Class Counsel shall remain available and engaged to respond to inquiries from Settlement Class Members regarding the calculation of Net Settlement Fund Payments. Upon request, Huntington shall provide Class Counsel with any additional information that Class Counsel may reasonably request in order to respond to any inquiries that Class Counsel receive from Settlement Class Members.

## IV.     DISTRIBUTION OF THE NET SETTLEMENT FUND PAYMENTS.

A.     Within one hundred and twenty (120) days after the Net Settlement Fund Payment calculations become final, the Net Settlement Fund Payments shall be disbursed by or through the Plan for ultimate distribution to or for the benefit of the Non-*De Minimis* Settlement Class Members.

B.     Notwithstanding the foregoing, if a Former Plan Participant has additional time to make the election that is described in subparagraph D of this Section, the Net Settlement Payment shall be disbursed by or through the Plan for ultimate distribution to or for the benefit of the Former Plan Participant as soon as reasonably practicable after the expiration of the election period.

C.     If the Non-*De Minimis* Settlement Class Member is a current Plan participant or employed at Huntington at the time of the distribution of the Net Settlement Fund Payments, the Net Settlement Fund Payment will be deposited into an account under the Plan.

D.     Non-*De Minimis* Settlement Class Members who are Former Plan Participants at the time of the distribution of the Net Settlement Payments will receive their Net Settlement Fund Payments as follows:

(1)     Former Plan Participants who receive a Net Settlement Fund Payment that is greater than the *De Minimis* Amount and less than two hundred dollars ($200.00) will receive their Net Settlement Fund Payment from the Plan in the form of a check that will be mailed to the last known mailing address that is on file with Huntington, the Plan's recordkeeper, unless Class Counsel directs Huntington to mail the Net Settlement Fund Payment to an alternate mailing address in accordance with standard Plan procedures, as may be amended. The Plan will

withhold from the Net Settlement Fund Payment any state income tax that may be required. In the event that a Settlement Class Member took a distribution from the Plan in the same calendar year and federal income tax was withheld from that distribution, Huntington will withhold any applicable federal income tax from the Settlement Payment.

(2)     If a Former Plan Participant's Net Settlement Fund Payment is equal to or greater than two hundred dollars, but does not exceed one thousand dollars ($1,000.00), the Former Plan Participant may elect to have the Net Settlement Fund Payment paid to an eligible retirement plan or an Individual Retirement Account ("IRA") specified by the participant or to receive payment in the form of a check in accordance with standard Plan procedures, as may be amended. Provided, however, that if the Former Plan Participant fails to make an election within ninety (90) days after the election is offered, Huntington shall pay the Net Settlement Fund Payment to the Former Plan Participant in the form of a check that will be mailed to the last known mailing address on file with Huntington, unless Class Counsel directs Huntington to mail the Net Settlement Fund Payment to an alternate mailing address. If Huntington sends the Net Settlement Fund Payment in the form of a check payable to the Settlement Class Member, beneficiary or alternate payee, the Plan will be authorized to withhold funds from the Net Settlement Fund Payment pursuant to federal income tax withholding requirements. In addition, the Plan is authorized to withhold funds from the Net Settlement Fund Payment pursuant to any state income tax withholding requirements.

(3)     If a Former Plan Participant's Net Settlement Fund Payment is greater than one thousand dollars, and the Former Plan Participant is under the age of seventy (70) at the time of the distribution of the Net Settlement Fund Payment, the Former Plan Participant may elect to have the Net Settlement Fund Payment paid to an eligible retirement plan or an IRA specified by the participant or to receive payment in the form of a check in accordance with standard Plan procedures, as may be amended. Provided, however, that if the Former Plan Participant fails to make an election within ninety (90) days after the election is offered, the Net Settlement Fund Payment will be deposited into a Plan account. This Plan account shall be subject to the same Plan rules that apply to any other participant's account. If Huntington sends the Net Settlement Fund Payment in the form of a check payable to the Settlement Class Member, beneficiary or alternate payee, the Plan will be authorized to withhold funds from the Net Settlement Fund Payment pursuant to federal income tax withholding requirements. In addition, the Plan is authorized to withhold funds from the Net Settlement Fund Payment pursuant to any state income tax withholding requirements.

(4)     If a Former Plan Participant's Net Settlement Fund Payment is greater than one thousand dollars and the Former Plan Participant has reached the age of 70 at the time of the distribution of the Net Settlement Fund Payment, the Former Plan Participant may elect to have the Net Settlement Fund Payment paid to an eligible retirement plan or an IRA specified by the participant or to receive payment in the form of a check in accordance with standard Plan procedures, as may be amended. Provided, however, that if the Former Plan Participant fails to make an election within ninety (90) days after the election is offered, Huntington shall pay the Net Settlement Fund Payment to the Former Plan Participant in the form of a check that will be mailed to the last known mailing address on file with Huntington, unless Class Counsel directs Huntington to mail the Net Settlement Fund Payment to an alternate mailing address. If Huntington sends the Net Settlement Fund Payment in the form of a check payable to the

Settlement Class Member, beneficiary, or alternate payee, the Plan will be authorized to withhold funds from the Net Settlement Fund Payment pursuant to federal income tax withholding requirements. In addition, the Plan is authorized to withhold funds from the Net Settlement Fund Payment pursuant to any state income tax withholding requirements. Any Settlement Class Member who has reached the age of 70 ½ may receive all or a portion of the Settlement Payment in the form of a check pursuant to the minimum required distribution provisions stated under the Plan or as required by law.

E.      The Net Settlement Fund Payments that are deposited into an employee or participant's account in the Plan will be invested in the Huntington Conservative Deposit Account Fund investment option under the Plan ("HCDA Fund"). Unless the HCDA Fund is subsequently removed as an investment option under the Plan or the Plan's rules require a transfer, the Net Settlement Fund Payment will remain invested in the HCDA Fund until the Settlement Class Member transfers the balance to another investment option under the Plan, transfers the balance to another eligible retirement plan, to an IRA, or takes a distribution from the Plan. The Parties agree that depositing the Net Settlement Fund Payments into the HCDA Fund shall not cause the Plan to fail to comply with Section 404(c) of ERISA or the regulations thereunder.

F.      If any Class Member who is entitled to receive a Net Settlement Fund Payment is deceased, such Class Member's Net Settlement Fund Payment shall be distributed in accordance with standard Plan procedures, as may be amended, with regard to deceased Plan participants. If a Qualified Domestic Relations Order ("QDRO") is in effect, the standard Plan procedures, as may be amended, regarding QDROs shall apply.

## V.      MISSING SETTLEMENT CLASS MEMBERS OR UNCASHED CHECKS.

A.      If, at any time prior to the distribution of the Net Settlement Fund Payments, Class Counsel obtains any updated or additional contact information for the Settlement Class Members, Class Counsel shall timely provide that information to Huntington.

B.      If any Settlement Class Member who is entitled to receive a Net Settlement Fund Payment cannot be located despite reasonable efforts or if any Settlement Class Member who is entitled to receive a Net Settlement Fund Payment fails to cash his or her check for the Net Settlement Fund Payment from the Plan, Huntington and the Plan shall follow the Plan's Uncashed Check Procedures for Terminated Participants ("Plan Procedures), as in effect July 1, 2010 and as may be amended from time to time, regarding Plan participants who cannot be located or whose mail is returned as undeliverable or who fail to cash checks for benefit payments. A copy of the Plan Procedures, effective July 1, 2010, is attached to this Plan of Allocation as Exhibit 1. Any out-of-pocket costs or expenses that are incurred to follow the Plan Procedures with respect to unlocatable participants (including, without limitation, costs incurred to utilize a letter forwarding service by the IRS or the Social Security Administration) shall be paid by Huntington.

C.      As stated in the Plan Procedures, as in effect from time to time, if a Settlement Class Member cannot be located or fails to cash his or her check, Huntington may elect to deliver the Net Settlement Fund Payment to a third-party provider (*e.g.*, Rollover Systems or another

provider) for the purpose of opening an Individual Retirement Account ("IRA") for the Settlement Class Member. Any fees charged by the third-party provider related to the IRA, including any annual account or custodial fees, may be deducted from the IRA established for the Settlement Class Member by the Settlement Class Member's Net Settlement Payment. After the transfer of Settlement Class Member's Net Settlement Payment from the Plan to the third-party provider, Huntington will not be required to take any further action with respect to the Settlement Class Member or Net Settlement Payment. If a third-party provider opens an IRA for the Settlement Class Member, the notification procedures that the third-party provider utilizes to alert individuals to the existence of the IRA may be followed. As stated in the Plan Procedures, if no IRA provider is willing to open an IRA, Huntington may reestablish the Settlement Class Member's account in the Plan and the account shall be subject to periodic deduction for the Plan's administration fees on the same terms as any other participant account in the Plan.

## VI.    CONTINUING JURISDICTION.

The Court will retain jurisdiction over the Plan of Allocation to the extent necessary to ensure that it is fully and fairly implemented.

# EXHIBIT 1

## HUNTINGTON INVESTMENT AND TAX SAVINGS PLAN
### Uncashed Check Procedures for Terminated Participants
### Effective July 1, 2010

**Purpose**:

These procedures are designed to assist in processing checks of terminated participants who have received distributions from the Huntington Investment and Tax Savings Plan ("HIP") who cannot be located.  These procedures may be changed, amended or modified at any time by the HIP plan administrator, Huntington Bancshares Incorporated ("Huntington").

**Uncashed Check Procedures**

1. HIP's trustee, the Trust Department of Huntington National Bank ("Trust Services") will issue checks to terminated participants who are entitled to a distribution from the plan.

2. Each month, Trust Services will review the outstanding check ledger on their system and compare that with the outstanding checks on the reconciliation report received from Huntington National Bank.

3. Each month, Trust Services will provide Huntington with an outstanding checks report listing checks that have remained outstanding for ninety days or more.

4. If Huntington is able to locate a phone number or email address for the participant, Huntington will attempt to contact the participant by phone or e-mail.  If the participant verifies the existing mailing address and the participant has not received the check or the check can no longer be cashed because it is over six months old, Huntington will instruct Trust Services to place a stop payment on the original check, re-issue the check to the payee and mail it to the participant via the U.S. Postal Service to the existing mailing address.  If the participant provides a new mailing address, Huntington will instruct Trust Services to place a stop pay on the original check, re-issue the check to the payee and mail it to the participant at the new mailing address via the U.S. Postal Service.

5. If Step 4 fails to locate the participant, Huntington should review related plan records (e.g., health and welfare plans), human resources systems and databases and/or payroll records, and internet search tools such as Lexis/Nexis to determine if the participant has an updated address.  If performing these additional searches results in a different address from what was used in Step 4, Huntington will send a letter to the participant at the new address via the U.S. Postal Service certified mail return receipt requested. If the participant responds to the certified letter, Huntington will verify participant's identity.  Once the participant's identity and address is verified, Huntington will instruct Trust Services to place a stop payment on the original check, re-issue the check to the payee and mail it to the participant via the U.S. Postal Service to the new address.

6. If Step 5 fails to locate the participant, Huntington should contact the participant's beneficiary or beneficiaries (if any) for the plan from which the distribution was made to determine if the address is correct.  If a beneficiary provides an updated address, Huntington will send a letter to the participant at the new address via the U.S. Postal Service certified

mail return receipt requested. If the participant responds to the certified letter, Huntington will verify participant's identity. Once the participant's identity and address is verified, Huntington will instruct Trust Services to place a stop payment on the original check, re-issue the check to the payee and mail it to the participant via the U.S. Postal Service to the new address.

7. If Step 6 fails to locate the participant, Huntington will use a letter forwarding service by the IRS or Social Security Administration to locate the missing participant. If the participant responds to the letter forwarding service, Huntington will verify participant's identity. Once the participant's identity and address is verified, Huntington will instruct Trust Services to place a stop payment on the original check and re-issue the check to the payee and mail it to the participant via the U.S. Postal Service to the new address.

8. If step 7 fails to locate the participant, Huntington will instruct Trust Services to place a stop-payment on the original check and deliver a check to Rollover Systems [or other provider] to have an IRA opened for the participant. In the event the former participant contacts Huntington or Trust Services for information regarding their distribution, they will provide the former participant with a phone number/contact at Rollover Systems (or other provider). The former participant will be responsible for working directly with Rollover Systems (or other provider) to retrieve their account.

9. If no IRA provider is willing to open an IRA for a missing participant and the participant still has not been located after exhausting these steps, Huntington shall instruct Trust Services to reestablish the participant's account in the plan and the account shall be subject to periodic deduction for the plan's administration fees on the same terms as any other participant account in the plan.

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

IN RE HUNTINGTON BANCSHARES INC.   )
ERISA LITIGATION                    )
                                        )
This document relates to:           )
                                        )
No. 2:08-CV-0175                )
No. 2:08-CV-0197                )
                                        )

Case No. 2:08-CV-0165

Hon. Gregory L. Frost

Hon. Terence P. Kemp

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**YOUR LEGAL RIGHTS MIGHT BE AFFECTED IF YOU ARE A MEMBER OF THE FOLLOWING PROPOSED CLASS:**

**All persons, excluding the Defendants, who participated in the Huntington Investment and Tax Savings Plan (the "Plan") for whose individual accounts the Plan purchased or held units in the HBI Common Stock Fund ("Huntington Stock Fund") at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").**

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION FROM A LAWYER.
### YOU HAVE NOT BEEN SUED.

U.S. District Court Judge Gregory L. Frost of the United States District Court for the Southern District of Ohio (the "Court") has preliminarily approved a proposed settlement (the "Settlement") of a putative class action lawsuit brought under the Employee Retirement Income Security Act of 1974 ("ERISA"). Under the Settlement Agreement and Release ("Settlement Agreement"), a sum of money will be deposited into an account in the trust for the Plan, and that money will be allocated to members of the Settlement Class who invested in the Huntington Stock Fund that was offered as an investment choice in the Plan during the Class Period.

The Court has scheduled a fairness hearing to consider the Plaintiffs' Unopposed Motion for Final Approval of the Settlement and Class Counsel's Application for Attorneys' Fees, Costs and Named Plaintiff's Case Contribution Award. That hearing before U.S. District Judge Gregory L. Frost has been scheduled for _____, 2011 at _____ a.m./p.m., in the Courtroom of Gregory L. Frost, United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215.

Any objections to the Settlement or the Petition for Attorneys' Fees, Costs and the Named Plaintiff's Case Contribution Award must be served in writing on Class Counsel and on Defendants' attorneys, all of whom are identified on Page 2 of this Notice. The procedure for objecting is described below.

This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Settlement Agreement. Capitalized terms used in this Notice but not defined in this Notice have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement, and additional information with respect to this lawsuit and the Settlement, is available at an Internet site dedicated to the Settlement titled www.huntingtonERISAsettlement.com.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT BY FOLLOWING THE PROCEDURES DESCRIBED BELOW.

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| **YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION IF YOU ARE ENTITLED TO A PAYMENT UNDER THE SETTLEMENT AGREEMENT.** | If the Settlement is approved by the Court and you are a member of the Settlement Class, you will not need to do anything to be entitled to receive a settlement payment (called the "Net Settlement Payment"), if you are entitled to receive a Net Settlement Payment under the Settlement Agreement. |

| HOW SETTLEMENT PAYMENTS WILL BE DISTRIBUTED. | The Settlement Agreement describes how Net Settlement Payments will be distributed to Settlement Class Members who are entitled to receive a payment. The method and manner of the distribution will depend upon the amount of the Net Settlement Payment, the Settlement Class Member's employment status with Huntington Bancshares Incorporated ("Huntington"), and other factors. For most Settlement Class Members, the Net Settlement Payment, if any, will be allocated to a Plan account or sent by mail to the last known address on file with Huntington, the Plan's recordkeeper. Settlement Class Members who are eligible to do so will have an option to elect to roll the Net Settlement Payment over to an IRA. If you have any reason to believe that Huntington does not have your correct address or contact information, please contact Class Counsel as soon as possible. |
|---|---|
| YOU MAY OBJECT TO THE SETTLEMENT BY _____, 2011. | If you wish to object to any part of the Settlement, you may, as discussed below, write to the Court and counsel identified in Section 11 of this Notice about why you object to the Settlement. |
| YOU MAY ATTEND THE FAIRNESS HEARING TO BE HELD ON _____, 2011. | If you submit a written objection to the Settlement to the Court and to Class Counsel and Defendants' counsel before the Court-approved deadline, you may (but do not have to) attend the Court Hearing about the Settlement and present your objections to the Court. You may also attend the Hearing even if you do not file a written objection. However, you will only be allowed to speak at the Hearing if you file a written objection in advance of the Hearing before the Court-approved deadline. |

- These rights and options – *and the deadlines to exercise them* – are explained in this Notice.
- The Court still has to decide whether to approve the Settlement. The Net Settlement Payments will be made only if the Court approves the Settlement and that approval is upheld in the event of any appeal.

Further information regarding this litigation and this Notice may be obtained by contacting Class Counsel:

Joseph H. Meltzer
Peter H. LeVan, Jr.
Mark K. Gyandoh
BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Fax: 610-667-7056

Lynn L. Sarko
Derek W. Loeser
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206-623-1900
Fax: 206-623-3384

Class Counsel has established a toll-free phone number to receive your comments and questions: 877-226-1883. You may also send an email to _____.

## WHAT THIS NOTICE CONTAINS

SUMMARY OF SETTLEMENT .................................................................................................................3
BASIC INFORMATION .......................................................................................................................3
1.   WHY DID I GET THIS NOTICE? ...................................................................................................3
2.   WHAT IS THE LITIGATION ABOUT? ..........................................................................................4
3.   WHY IS THIS CASE A CLASS ACTION? .....................................................................................5
4.   WHY IS THERE A SETTLEMENT? ...............................................................................................5
5.   HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT? ........................................5
THE SETTLEMENT BENEFITS – WHAT YOU GET ..................................................................5
6.   WHAT DOES THE SETTLEMENT PROVIDE? .............................................................................5
7.   HOW MUCH WILL MY PAYMENT BE? .......................................................................................6
8.   HOW MAY I RECEIVE A PAYMENT? ..........................................................................................6
9.   WHEN WOULD I GET MY PAYMENT? ........................................................................................7
10.  CAN I GET OUT OF THE SETTLEMENT AGREEMENT? ..........................................................7
THE LAWYERS REPRESENTING YOU .........................................................................................7
11.  DO I HAVE A LAWYER IN THE CASE? .......................................................................................7
12.  HOW WILL THE LAWYERS BE PAID? ........................................................................................7
13.  HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT? .................................7

**THE FAIRNESS HEARING** ...........................................................................................................................8
14. WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ..........................8
15. DO I HAVE TO COME TO THE HEARING? ..............................................................................................................8
16. MAY I SPEAK AT THE HEARING? ..........................................................................................................................8
**IF YOU DO NOTHING** ...................................................................................................................................9
17. WHAT HAPPENS IF I DO NOTHING AT ALL? .......................................................................................................9
**GETTING MORE INFORMATION** ...............................................................................................................9
18. ARE THERE MORE DETAILS ABOUT THE SETTLEMENT? .....................................................................................9

## SUMMARY OF SETTLEMENT

This litigation (the "Litigation") is a consolidated putative class action in which Plaintiffs (which collectively refers to the Named Plaintiffs on behalf of themselves, the Settlement Class Members, and the Plan) allege that Defendants breached fiduciary duties owed to the participants in and beneficiaries of the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA") arising from Plan participants' investments in the Huntington Stock Fund during the Class Period (July 1, 2007 through April 1, 2009, inclusive). Copies of the Consolidated Amended Complaint (the "Complaint") and other documents filed in the Litigation are available at www.huntingtonERISAsettlement.com or from Class Counsel.

Under the Settlement Agreement, Huntington will make a Settlement Payment in the total amount of $1.45 million ($1,450,000.00) in cash. The Settlement Payment will be deposited into an Escrow Account, and the Settlement Payment, together with any interest earned, will constitute the Gross Settlement Fund. Payment of any tax expenses, costs associated with administering the Settlement, Class Counsel's attorneys' fees, costs, and any Case Contribution Awards to the Named Plaintiffs will be paid out of the Gross Settlement Fund. After the payment of such fees, costs, and awards, the amount that remains will constitute the Net Settlement Fund. The Net Settlement Fund will be allocated among the Settlement Class Members pursuant to the Plan of Allocation that is summarized in Section 7 of this Notice and is attached to the Settlement Agreement as Exhibit 1.

### STATEMENT OF POTENTIAL OUTCOME OF THE LITIGATION

Defendants strongly dispute the claims asserted in the Litigation. On February 9, 2009, the Court dismissed Plaintiffs' Complaint with prejudice and entered final judgment in favor of Defendants. On March 6, 2009, Plaintiffs appealed the dismissal to the United States Court of Appeals for the Sixth Circuit. The Settlement Agreement was reached while the appeal was pending. The Settlement Class would face an uncertain outcome if the Litigation were to continue. If the Settlement is not approved, this case will return to the Sixth Circuit Court of Appeals and there is no certainty at all that Plaintiffs will be able to overturn the dismissal of this case.

Plaintiffs and Defendants disagree on liability and damages. Defendants deny all claims and contentions by the Plaintiffs. The Defendants deny that they are liable, and deny that the Settlement Class or the Plan has suffered any damages. Defendants have agreed to enter into this Settlement on the terms and conditions set forth in the Settlement Agreement to halt any further expense and distraction that is attendant to the Litigation.

### STATEMENT OF ATTORNEYS' FEES AND COSTS SOUGHT IN THE LITIGATION

Class Counsel will apply to the Court for an order awarding attorneys' fees not to exceed thirty-three percent (33%) of the Settlement Payment (a maximum of $478,500.00), plus reimbursement of the costs incurred in prosecution of this Litigation on behalf of the Settlement Class. Any amount awarded by the Court will be paid out of the Gross Settlement Fund. Defendants take no position on this application and have no responsibility for payment of such fees and costs.

### WHAT WILL THE NAMED PLAINTIFFS RECEIVE?

The Named Plaintiffs will share in the allocation of the Net Settlement Fund on the same basis as all other members of the Settlement Class. In addition, the Named Plaintiffs will ask the Court to award a Case Contribution Award not to exceed $2,000.00 per Named Plaintiff for his or her representation of the Settlement Class. Any Case Contribution Award will be paid solely from the Gross Settlement Fund.

## BASIC INFORMATION

| 1. | **WHY DID I GET THIS NOTICE?** |
|---|---|

You or someone in your family may have been a participant in the Plan during the period July 1, 2007 through April 1, 2009, during which time the Plan account included an investment in the Huntington Stock Fund.

The Court directed that this Notice be sent to you because, if you are a member of the Settlement Class, you have a right to know about the Settlement and the options available to you regarding the Settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Fund will be

paid to an account in the trust for the Plan and then allocated among Settlement Class Members according to a Plan of Allocation that is summarized in this Notice and is attached to the Settlement Agreement. This Notice summarizes the Litigation and the terms of the Settlement Agreement.

The Court in charge of this case is the United States District Court for the Southern District of Ohio. The persons who filed the suit are called "Named Plaintiffs," and the people they sued are called "Defendants." The Named Plaintiffs are Hilda Riccio, Nathan Cedarleaf, Aileen Moening, and Carol Uberti. The Defendants are Huntington; Melinda Ackerman; Marty E. Adams; Daniel Brian Benhase; Raymond J. Biggs; Don M. Casto, III; Robert Comfort; Wilton W. Dolloff; Michael J. Endres; Marylouise Fennell; John B. Gerlach; Shirley L. Graham; D. James Hilliker; Thomas E. Hoaglin; Donald L. Keller; Nancy V. Kelly; David P. Lauer; John W. Liebersbach; Jonathan A. Levy; William J. Lhota; Gene E. Little; Gerard P. Mastoianni; David L. Porteous; Kathleen H. Ransier; Thomas P. Reed; Beth Ann Russell; and Stephen D. Steinour (the "Individual Defendants"). The Litigation is known as *In re Huntington Bancshares Incorporated ERISA Litigation,* No. 2:08-CV-0165 (S.D. Ohio).

## 2.    WHAT IS THE LITIGATION ABOUT?

During the Class Period, participants in the Plan were able to allocate their account balances among various investment funds, including the Huntington Stock Fund. In addition, Huntington made matching contributions that participants could elect to invest in the Huntington Stock Fund.

Plaintiffs allege that Defendants violated ERISA by, among other things, permitting Settlement Class Members to invest in the Huntington Stock Fund during the Class Period when the Defendants allegedly knew or should have known that Huntington common stock was an imprudent investment option under ERISA. Plaintiffs allege that Defendants (1) allowed the Plan to purchase and hold the common stock of Huntington at a time when, according to Plaintiffs, Huntington's stock was an unsuitable and imprudent investment for the Plan, and (2) misrepresented and failed to disclose information concerning Huntington's financial condition, including information concerning the alleged risks of Huntington's merger with Sky Financial Group, Inc. ("Sky Financial").

The Defendants deny that they have liability to the Plan or Settlement Class Members. On February 9, 2009, the Court dismissed the Plaintiffs' Complaint with prejudice and entered judgment in favor of Defendants. Plaintiffs appealed that decision, which was pending until the Parties reached a Settlement. If the Litigation were to continue, the Defendants would raise numerous defenses, including:

- The Court properly dismissed the Litigation with prejudice;
- Huntington common stock was a prudent investment for the Plan and its participants;
- Defendants fully and prudently discharged any fiduciary duties under ERISA; and
- Neither the Plan nor its participants suffered any compensable losses.

### STATUS OF THE LITIGATION

Class Counsel has extensively investigated the allegations in the Litigation. Class Counsel has obtained and reviewed Plan documents and materials, communications with Plan participants, Securities and Exchange Commission ("SEC") filings, press releases, public statements, news articles, and other documents.

Named Plaintiff Hilda Riccio filed her initial complaint against Defendants on or about February 20, 2008, which was consolidated shortly thereafter with substantially identical complaints that were filed by Named Plaintiffs Nathan Cedarleaf, Aileen Moening, and Carol Uberti. Thereafter, Plaintiffs filed a Consolidated Amended Complaint on August 4, 2008. On October 6, 2008, Defendants filed a motion seeking to dismiss the Complaint. Plaintiffs filed a brief in opposition to the motion to dismiss on November 21, 2008. On February 9, 2009, the Court dismissed Plaintiffs' Complaint with prejudice. On March 6, 2009, Plaintiffs appealed the dismissal to the United States Court of Appeals for the Sixth Circuit. While Plaintiffs' appeal was pending, the Parties reached a Settlement Agreement.

### SETTLEMENT DISCUSSIONS

The Settlement is the product of arm's-length negotiations between Class Counsel and the Defendants' counsel. Commencing on April 13, 2009, the parties participated in a mediation program conducted by the Office of the Circuit Mediators of the United States Court of Appeals for the Sixth Circuit Court of Appeals ("Office of the Circuit Mediators"). On or about November 30, 2009, following months of arm's-length negotiations and mediation sessions conducted by an independent mediator from the Office of the Circuit Mediators, Plaintiffs and Defendants, through their respective attorneys, reached an agreement, subject to the execution of definitive settlement documentation, to settle the Litigation.

## 3.    WHY IS THIS CASE A CLASS ACTION?

In a class action, one or more plaintiffs, called "class representatives" or "named plaintiffs," sue on behalf of people who have similar claims.  All of these people who have similar claims collectively make up the "class" and are referred to individually as "class members."  One case resolves the issues for all class members together.  Because the conduct alleged in this Litigation affected a large group of people – the Plan participants who invested in the Huntington Stock Fund during the Class Period – in a similar way, the Named Plaintiffs filed this case as a putative class action.

## 4.    WHY IS THERE A SETTLEMENT?

As in any litigation, all parties face an uncertain outcome.  On the one hand, continuing the case could result in no recovery at all, or a recovery that is less than the amount of the Settlement.  On the other hand, continuation of the case against the Defendants could cost the Defendants substantial time and expense.  Approval of the Settlement will also result in the dismissal of Plaintiffs' appeal.  Plaintiffs have concluded that the Settlement is in the best interests of Plaintiffs.

## 5.    HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT?

You are a member of the Settlement Class if you fall within the definition of the Class preliminarily approved by Judge Gregory L. Frost for purposes of the Settlement:

> All persons, excluding the Defendants, who participated in the Plan for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").

If you are a member of the Settlement Class, the amount of your Net Settlement Payment, if any, will be calculated pursuant to the Plan of Allocation.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

## 6.    WHAT DOES THE SETTLEMENT PROVIDE?

Under the Settlement Agreement, Huntington will make a Settlement Payment in the total amount of $1.45 million ($1,450,000.00) in cash.  The amount of money that will be allocated among members of the Settlement Class, after the payment of any Tax Expenses, out-of-pocket costs associated with administering the Settlement, Class Counsel's attorneys' fees and costs, and any Case Contribution Awards to the Named Plaintiffs, is the Net Settlement Fund.  The amount of the Net Settlement Fund will not be known until these amounts are quantified and deducted.  The Net Settlement Fund will be deposited into a non-interest bearing account in the trust for the Plan and will be allocated to Settlement Class Members according to the Plan of Allocation to be approved by the Court.  The Plan of Allocation is attached to the Settlement Agreement as Exhibit 1.

The Plan of Allocation describes how the Net Settlement Payments will be distributed to Settlement Class Members who receive a payment.  Not every member of the Settlement Class will receive a Net Settlement Payment.  For those who are entitled to a Net Settlement Payment, the method and manner of distribution will depend upon the amount of the Net Settlement Payment, the Settlement Class Member's employment status with Huntington, and other factors.  For most Settlement Class Members, the Net Settlement Payment, if any, will be allocated to a Plan account or sent by mail to the last known address on file with Huntington, the Plan's recordkeeper.  Settlement Class Members who are eligible to do so will have an option to elect to roll the Net Settlement Payment over to an IRA.

If the Settlement is approved by the Court, all Settlement Class Members and anyone claiming through them shall be deemed to fully release the "Defendant Releasees" from "Released Claims."  The Defendant Releasees include, among others, Defendants and their current or former parents, subsidiaries, affiliates, representatives, insurers, employees, attorneys, or agents, including, without limitation, Sky Financial, as well as anyone acting for or on behalf of the Plan or any of its past, current, or future participants, including, but not limited to, Plan sponsors, administrators, attorneys, representatives, recordkeepers, agents, fiduciaries, consultants, or advisors.  The Released Claims include any and all actual or potential claims, actions, causes of action, demands, obligations, or liabilities of any nature whatsoever (including, but not limited to, claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunctive relief, declaratory relief, claims for contribution, indemnification or any other type of legal or equitable relief), whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as well as any claim or right obtained by assignment or brought by way of demand, complaint, cross-claim, counterclaim, third party claim or otherwise.  The Released

Claims include claims that arise out of or are related to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the Litigation or the Consolidated Amended Complaint, including, but not limited to, (1) any claims alleged under ERISA, (2) the Sky Merger, (3) the administration or fiduciary oversight of the Plan, (4) the Huntington Stock Fund, (5) the purchase, sale, or retention of any Huntington securities by or on behalf of the Plan and any of its current, former or future Plan participants at any time during the Class Period, or (6) the preparation or structuring of the methodology for distribution of the Gross Settlement Fund or the Net Settlement Fund, including the Plan of Allocation or any amounts calculated in good faith in accordance therewith. The Released Claims include any claims which the Plaintiffs do not know or suspect to exist at the time of this release which, if known by him, her, or it, might have affected his, her or its decision to enter into the Settlement and release the Defendant Releasees or the decision not to object to this Settlement Agreement. The Released Claims do not include any claims for an alleged breach of the terms of the Settlement Agreement or any claims under ERISA Section 502(a)(1)(B) for vested benefits brought by an individual Plan participant or beneficiary that do not arise from or relate to the Litigation or the Consolidated Amended Complaint.

The above description of the proposed Settlement and Released Claims is only a summary. The complete terms, including the definitions of the Defendant Releasees and Released Claims, are set forth in the Settlement Agreement (including its exhibits), which may be obtained at a dedicated Settlement Internet site, www.huntingtonERISAsettlement.com or by contacting Class Counsel listed on Page 2, above.

| 7. | HOW MUCH WILL MY PAYMENT BE? |
|---|---|

Your share (if any) of the Net Settlement Fund will be calculated by Huntington, in consultation with Class Counsel, and distributed pursuant to a court-approved Plan of Allocation under the Settlement Agreement. Because the amounts of the Settlement Payment and Net Settlement Fund are less than the amount of total losses alleged by the Settlement Class, each Settlement Class Member's Net Settlement Payment will be less than his or her alleged loss on the investment in the Huntington Stock Fund. You are not required to calculate the amount you may be entitled to receive under the Settlement.

In general, your proportionate share of the Settlement (the "Net Settlement Payment") will be calculated as follows: For each Settlement Class Member, Huntington shall determine his or her approximate alleged net loss ("Net Loss"): Net Loss = $A + B - C - D$, where, for each Settlement Class Member's Plan account:

1. $A$ = the dollar value, if any, of the balance in the Huntington Stock Fund on the first day of the Class Period;

2. $B$ = the dollar value, if any, of all of the purchases of interests in the Huntington Stock Fund during the Class Period as of the time of purchase(s);

3. $C$ = the dollar value, if any, of all of dispositions of interests in the Huntington Stock Fund during the Class Period as of the time of the sale(s); and

4. $D$ = the dollar value, if any, of the balance in the Huntington Stock Fund remaining as of the close of the market on the last day of the Class Period, or, if a Settlement Class Member terminated his or her participation in the Plan before the end of the Class Period, the last day the Settlement Class Member was a Plan participant.

Settlement Class Members whose Net Loss is negative (i.e., they received a net gain rather than a net loss as a result of the calculations identified in this Section) are excluded from further calculations and will not receive a Net Settlement Fund Payment.

Before Huntington makes the Net Settlement Payment calculations, Huntington will determine each Settlement Class Member's Preliminary Settlement Amount pursuant to the Net Loss formula described above. Any Settlement Class Member who is a former Plan participant, who no longer has an account balance, and who is no longer employed at Huntington (collectively defined as, "Former Plan Participants") when the calculation of his or her Preliminary Settlement Amount is performed and whose Preliminary Settlement Amount is calculated to be less than or equal to ten dollars ($10.00) (the "*De Minimis* Amount") will not receive a payment under this Settlement Agreement and shall be deemed to have a Net Settlement Fund Payment of zero.

If you have questions regarding the allocation of the settlement proceeds, please contact Class Counsel listed on Page __ above.

| 8. | HOW MAY I RECEIVE A PAYMENT? |
|---|---|

You do not need to file a claim. The method and manner of distribution will depend upon the amount of the Net Settlement Payment, the Settlement Class Member's employment status with Huntington, and other factors. The Settlement Agreement provides that, with respect to most Settlement Class Members, the Net Settlement Payment, if any, will be allocated to a Plan account or sent by mail to the last known address on file with Huntington, the Plan's recordkeeper. Settlement Class Members who are eligible to do so will

have an option to elect to roll the Net Settlement Payment over to an IRA. If you have any reason to believe that Huntington does not have your correct address or contact information, please contact Class Counsel as soon as possible.

## 9.     WHEN WOULD I GET MY PAYMENT?

The Settlement cannot be completed unless and until several events occur. These events include final approval of the Settlement by the Court, approval of the Settlement by an independent fiduciary to the Plan, and calculation of the Preliminary Settlement Amounts and Net Settlement Payments pursuant to the Plan of Allocation. If objections are made to the Settlement or appeals are taken by objectors from approval of the Settlement, this process may take a long time to complete, possibly years. During the time period described in the Settlement Agreement, the Settlement Payment will be invested in an Escrow Account and any interest earned on the Settlement Payment will be included in the Gross Settlement Fund.

**THERE WILL BE NO PAYMENTS IF THE SETTLEMENT AGREEMENT IS TERMINATED.**

The Settlement Agreement may be terminated for several reasons, including if: (1) the Court does not approve, or materially modifies, the Settlement Agreement; or (2) the Court approves the Settlement Agreement but the approval is reversed or materially modified by an appellate court. If the Settlement Agreement is terminated, the Litigation will proceed as if the Settlement Agreement had not been entered into.

## 10.     CAN I GET OUT OF THE SETTLEMENT AGREEMENT?

*You do not have the right to exclude yourself from the Settlement.* The Settlement Agreement provides for certification of a Settlement Class as a non-opt-out class action under Federal Rule of Civil Procedure 23(b)(1) [and/or] 23(b)(2) and the Court has preliminarily determined that the requirements of the Rule have been satisfied. Thus, it is not possible for any Settlement Class Members to exclude themselves from the Settlement Agreement. As a Settlement Class Member, you will be bound by any judgments or orders that are entered in the Litigation for all claims that were or could have been asserted in the or are otherwise released under the Settlement Agreement.

Although you cannot opt out of the Settlement Agreement, you can object to the Settlement and ask the Court not to approve it. See Answer to Question No. 13, below.

## THE LAWYERS REPRESENTING YOU

## 11.     DO I HAVE A LAWYER IN THE CASE?

The Court has preliminarily appointed the law firms of Keller Rohrback L.L.P. and Barroway Topaz Kessler Meltzer & Check, LLP as Class Counsel to the Plaintiffs in the Litigation. You will not be charged directly by these lawyers. Rather, Class Counsel will file a petition requesting the payment of attorneys' fees and costs out of the Gross Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 12.     HOW WILL THE LAWYERS BE PAID?

Class Counsel will file a petition for an award of attorneys' fees not to exceed thirty-three percent (33%) of the Settlement Payment (up to an amount of $478,500.00), plus reimbursement of costs incurred in connection with the prosecution of this Litigation on behalf of the Settlement Class. This petition will be considered at the Fairness Hearing described below. Defendants will not take any position on that matter before the Court.

**OBJECTING TO THE PETITION FOR ATTORNEYS' FEES AND COSTS**

By following the procedures described in response to Question No. 13, you can tell the Court that you do not agree with the amount of attorneys' fees and costs the Class Counsel intend to seek and ask the Court to deny their petition or limit the award.

## 13.     HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT?

If you are a Settlement Class Member, you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. To object, you must send a letter or other writing saying that you object to the Settlement in *In re Huntington Bancshares Incorporated ERISA Litigation,* Case No. 2:08-CV-0165 (S.D. Ohio). Your written objection must certify that you are a member of the Settlement Class. Furthermore, your written objection must include your name, address, telephone number, and signature, as well as the address and telephone number of your attorney if you have one. Your written

objection should include a full explanation of all the reasons why you object to the Settlement. If you wish the Court to consider any documents in conjunction with your objection, they must be included with your written objection. *Your written objection must be sent to the following counsel and must be postmarked by no later than _____, 2011:*

**CLASS COUNSEL**
Joseph H. Meltzer
Peter H. LeVan, Jr.
Mark K. Gyandoh
BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087

**DEFENDANTS' COUNSEL**
Walter C. Carlson
Erin E. Kelly
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

Lynn L. Sarko
Derek W. Loeser
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

*You must also file your objection with the Clerk of the Court of the United States District Court for the Southern District of Ohio.* The address is: United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215. The objection must refer prominently to *In re Huntington Bancshares Incorporated ERISA Litigation,* Case No. 2:08-CV-0165 (S.D. Ohio).

**THE FAIRNESS HEARING**

The Court will hold a hearing to decide whether to finally certify the Settlement Class and to approve the Settlement as fair, reasonable and adequate (the "Fairness Hearing").

---

### 14.    WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

---

The Court will hold the Fairness Hearing at _____ _.m. on _____, 2011 at the United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215 in the Courtroom then occupied by United States District Judge Gregory L. Frost. The Court may adjourn the Fairness Hearing without further notice to the Settlement Class, so, if you wish to attend, you should confirm the date and time of the Fairness Hearing with Class Counsel before doing so. At that hearing, the Court will consider whether finally to certify the Settlement Class and whether to approve the Settlement as fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will also rule on the Petition for Class Counsel's Attorneys' Fees and Costs and Named Plaintiff's Case Contribution Award. We do not know how long these decisions will take or whether appeals will be taken.

---

### 15.    DO I HAVE TO COME TO THE HEARING?

---

No, but you are welcome to come at your own expense. If you file an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement. You also may pay your own lawyer to attend the Fairness Hearing, but such attendance is not necessary.

---

### 16.    MAY I SPEAK AT THE HEARING?

---

If you submit a written objection to the Settlement to the Court, Class Counsel, and Defendants' Counsel before the Court-approved deadline, you may (but do not have to) attend the Court Hearing about the Settlement and present your objections to the Court. You may attend the Hearing even if you do not file a written objection, but you will only be allowed to speak at the Hearing if you file a written objection in advance of the Hearing and include in the written objection a statement of your intent to appear at the Hearing. Be sure to include your name, address, telephone number, and your signature. If you seek to call any witnesses to testify at the Hearing, your objection must include their names, addresses, and telephone numbers. If you seek to introduce any exhibits into evidence at the Hearing, you must include those exhibits with your written objection. Your written objection containing your notice of intention to appear at the Hearing must be sent to the attorneys listed in the Answer to Question No. 13 above, postmarked no later than _____, 2011, and must be filed with the Clerk of the Court by that same deadline at the address listed in the Answer to Question No. 13.

## IF YOU DO NOTHING

### 17.  WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing and you are a Settlement Class Member and the Settlement is approved, you will participate in the Settlement of the Litigation as described above in this Notice and in the Settlement Agreement.

## GETTING MORE INFORMATION

### 18.  ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

Yes. This Notice only summarizes the proposed Settlement. The complete terms are set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to Class Counsel listed on Page 2 above. Copies may also be obtained at a dedicated Settlement Internet site, www.huntingtonERISAsettlement.com by calling the toll-free number 877-226-1883 or by sending an email to _____. You are encouraged to read the complete Settlement Agreement.

DATED: _____, 2011

EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN RE HUNTINGTON BANCSHARES INC. | ) | Case No. 2:08-CV-0165 |
| ERISA LITIGATION | ) | |
| | ) | Hon. Gregory L. Frost |
| This document relates to: | ) | |
| | ) | Hon. Terence P. Kemp |
| No. 2:08-CV-0175 | ) | |
| No. 2:08-CV-0197 | ) | |
| ———————————————— | ) | |

## NOTICE BY PUBLICATION

### TO ALL MEMBERS OF THE FOLLOWING PROPOSED SETTLEMENT CLASS:

**All persons, excluding the Defendants, who participated in the Huntington Investment and Tax Savings Plan (the "Plan") for whose individual accounts the Plan purchased or held units in the HBI Common Stock Fund ("Huntington Stock Fund") at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").**

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION.

A Settlement has been preliminarily approved in a class action lawsuit brought by the Named Plaintiffs on behalf of themselves, the Plan, and the Settlement Class Members (collectively, "Plaintiffs") against Huntington Bancshares Incorporated ("Huntington") and certain current and former officers, directors, and employees of Huntington for alleged breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). All capitalized terms not otherwise defined in this summary notice of the Settlement have the meanings provided in the Settlement Agreement and Release (the "Settlement Agreement") that is available on the Settlement website identified in this notice. The amount of the proposed Settlement Payment is $1.45 million ($1,450,000.00). Persons for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund during the Class Period may be entitled to a share of the Settlement.

The United States District Court for the Southern District of Ohio (the "Court") authorized this notice. The Court will hold a fairness hearing to decide whether to approve the Settlement.

**WHO IS INCLUDED?**

You are a Settlement Class Member and could receive a settlement payment if you purchased or held units of the Huntington Stock Fund in the Plan during the Class Period.

**WHAT IS THIS CASE ABOUT?**

The lawsuit alleges that Defendants breached their fiduciary duties under ERISA by, among other things, (1) allowing the Plan to purchase and hold the common stock of Huntington at a time when, according to Plaintiffs, Huntington's stock was an unsuitable and imprudent investment for the Plan, and (2) misrepresenting and failing to disclose information concerning Huntington's financial condition, including information concerning the alleged risks of Huntington's merger with Sky Financial Group, Inc. ("Sky Financial"). On February 9, 2009, the Court dismissed the lawsuit with prejudice. On March 6, 2009, Plaintiffs appealed the dismissal to the United States Court of Appeals for the Sixth Circuit. The Settlement Agreement was reached while the appeal was pending. Defendants deny any wrongdoing and will vigorously defend the lawsuit if the proposed Settlement is not approved. The Court has not made any finding that Defendants or any Plan fiduciary has engaged in any wrongful conduct or in violation of any law or regulation. The Plaintiffs have concluded that the Settlement is in the best interests of Plaintiffs.

**WHAT DOES THE SETTLEMENT PROVIDE?**

If the Settlement is approved, Huntington has agreed to make a Settlement Payment of $1.45 million ($1,450,000.00). The Settlement Payment will be deposited into an Escrow Account, and the Settlement Payment, together with any interest earned on the Settlement Payment, will constitute the Gross Settlement Fund. Payment of any Tax Expenses and costs associated with administering the Settlement will be paid out of the Gross Settlement Fund. In addition, Class Counsel will file a Petition for Attorneys' Fees, Costs and Named Plaintiff's Case Contribution Award not to exceed $2,000 to each of the four Named Plaintiffs. Class Counsel will request payment of attorneys' fees in an amount that does not exceed thirty-three (33) percent of the amount of the Settlement Payment (a maximum of $478,500.00), plus reimbursement of costs incurred in prosecution of this Litigation on behalf of the Settlement Class. If approved by the Court, Class Counsel's attorneys' fees and costs, as well as any Case Contribution Awards to the Named Plaintiffs, will be deducted from the Gross Settlement Fund. After the payment of such costs, expenses, and awards, the amount that remains will constitute the Net Settlement Fund. The Net Settlement Fund will be allocated among the Settlement Class Members pursuant to the Plan of Allocation attached to the Settlement Agreement and described in the Notice of Proposed Class Action Settlement mailed to locatable members of the Settlement Class and posted at the website listed below.

The Settlement Agreement, which is available from the Court and is also posted at the website listed below, describes in more detail the proposed Settlement.

**HOW DO YOU RECEIVE A PAYMENT?**

The Settlement Agreement and Plan of Allocation describe how Net Settlement Payments will be distributed to Settlement Class Members. The method and manner of distribution will depend upon the amount of the Net Settlement Payment, the Settlement Class Member's employment status with Huntington, and other factors. For most Settlement Class Members, the Net Settlement Payment, if any, will be allocated to a Plan account or sent by mail to the last known

address on file with Huntington, the Plan's recordkeeper. Settlement Class Members who are eligible to do so will have the option to elect to roll the Net Settlement Payment over to an IRA.

**YOU CANNOT OPT OUT OF THE SETTLEMENT**

If the Settlement is approved, you do not have the right to exclude yourself from the Settlement. The Settlement Class was preliminarily certified under Federal Rule of Civil Procedure 23(a) and 23(b)(1) [and/or] (b)(2) as a "non opt out" class action. Therefore, you will be bound by any judgments or orders that are entered in this Litigation, and, if the Settlement is approved, you will be deemed to have released the Released Claims against the Defendant Releasees, as defined in the Settlement Agreement.

The Released Claims are described in the Settlement Agreement and include any and all actual or potential claims, actions, causes of action, demands, obligations, or liabilities of any nature whatsoever (including, but not limited to, claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunctive relief, declaratory relief, claims for contribution, indemnification or any other type of legal or equitable relief), whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, as well as any claim or right obtained by assignment or brought by way of demand, complaint, cross-claim, counterclaim, third party claim or otherwise. The Released Claims include claims that arise out of or are related to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the Litigation or the Consolidated Amended Complaint, including, but not limited to, (1) any claims alleged under ERISA, (2) Huntington's merger with Sky Financial Group, Inc., (3) the administration or fiduciary oversight of the Plan, (4) the Huntington Stock Fund, (5) the purchase, sale, or retention of any Huntington securities by or on behalf of the Plan and any of its current, former or future Plan participants at any time during the Class Period, or (6) the preparation or structuring of the methodology for the distribution of the Gross Settlement Fund or the Net Settlement Fund, including the Plan of Allocation or any amounts calculated in good faith in accordance therewith.

The Released Claims also include any claims which the Plaintiffs do not know or suspect to exist at the time of this release which, if known by him, her, or it, might have affected his, her or its decision to enter into the Settlement and release the Defendant Releasees or the decision not to object to this Settlement Agreement. The Released Claims do not include any claims for an alleged breach of the terms of the Settlement Agreement or any claims under ERISA Section 502(a)(1)(B) for vested benefits brought by an individual Plan participant or beneficiary that do not arise from or relate to the Litigation or the Consolidated Amended Complaint.

The Court will hold a fairness hearing in this case (*In re Huntington Bancshares Inc. ERISA Litigation,* Case No. 2:08-CV-0165) (S.D. Ohio)) on ___ _____, 2011, at the United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215 to consider whether to certify the Settlement Class, approve the Settlement, and approve a request by Class Counsel (Keller Rohrback L.L.P. and Barroway Topaz Kessler Meltzer & Check, LLP) for attorneys' fees and costs. The Court will

also consider a request to award Case Contribution Awards to the Named Plaintiffs in an amount of up to $2,000 each.  You may ask to appear at the hearing, but it is not required.  Although you cannot opt out of the Settlement, you can object to all or any part of the Settlement.  To object, you must send a letter or other writing saying that you object to the Settlement in *In re Huntington Bancshares Inc. ERISA Litigation*, Case No. 2:08-CV-0165 (S.D. Ohio).  If you wish to object, you must also follow the instructions contained in the <u>Notice of Class Action Settlement</u> and in the Preliminary Approval Order, which are available by calling the toll-free number or visiting the website below.

For more information regarding anything in this Notice or how to object to the Settlement, call toll-free 877-226-1883 or visit www.huntingtonERISAsettlement.com.

# EXHIBIT 4

_____, 2011

### Class Action Fairness Act Notification Pursuant to 28 U.S.C. § 1715
### *In re Huntington Bancshares Inc. ERISA Litigation*, No. 2:08-CV-0165 (S.D. Ohio 2008)

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, defendants Huntington Bancshares Incorporated ("Huntington"), Melinda Ackerman, Marty E. Adams, Daniel Brian Benhase, Raymond J. Biggs, Don M. Casto, III, Robert Comfort, Wilton W. Dolloff, Michael J. Endres, Marylouise Fennell, John B. Gerlach, Shirley L. Graham, D. James Hilliker, Thomas E. Hoaglin, Donald L. Keller, Nancy V. Kelly, David P. Lauer, John W. Liebersbach, Jonathan A. Levy, William J. Lhota, Gene E. Little, Gerard P. Mastoianni, David L. Porteous, Kathleen H. Ransier, Thomas P. Reed, Beth Ann Russell, and Stephen D. Steinour (the "individual defendants"), provide the following notification of the proposed settlement in *In re Huntington Bancshares Inc. ERISA Litigation,* No. 2:08-CV-0165 (S.D. Ohio) (the "litigation").

On February 20, 2008, a lawsuit captioned *Riccio v. Huntington Bancshares Inc., et al.,* No. 2:08-CV-0165 (S.D. Ohio), was filed in the U.S. District Court in the Southern District of Ohio (the "Court") by plaintiff Hilda Riccio on behalf of herself, the Huntington Investment and Tax Savings Plan (the "Plan") and a putative class of Plan participants who invested in the HBI Common Stock Fund (the "Huntington Stock Fund") under the Plan. On February 29, 2008, three additional plaintiffs filed two substantially identical putative class action complaints, captioned *Cedarleaf v. Huntington Bancshares Inc. et al.*, No. 2:08-CV-0175 (S.D. Ohio), and *Uberti v. Huntington Bancshares Inc., et al.*, No. 2:08-CV-0197 (S.D. Ohio). On May 22, 2008, the Court consolidated the three cases. On August 4, 2008, plaintiffs filed a Consolidated Amended Complaint (the "Complaint"). The allegations of the Complaint arose, *inter alia,* out of Huntington's acquisition of Sky Financial Group ("Sky Financial") on July 1, 2007. In summary, the Complaint alleged that Huntington and the individual defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 *et seq.*, by, among other things, (1) allowing the Plan to purchase and hold the common stock of Huntington at a time when, according to plaintiffs, Huntington's stock was an unsuitable and imprudent investment for the Plan, and (2) misrepresenting and failing to disclose information concerning Huntington's financial condition, including information concerning the alleged risks of Huntington's merger with Sky Financial.

On October 6, 2008, Huntington filed a motion to dismiss the Complaint in its entirety. On February 9, 2009, the Court dismissed the Complaint with prejudice and entered final judgment in favor of the defendants. On March 6, 2009, plaintiffs filed a notice of appeal to the United States Court of Appeals for the Sixth Circuit.

While the litigation was pending on appeal, the parties executed a Settlement Agreement and Release (the "Settlement Agreement"). On _____, an unopposed motion for preliminary approval of the Settlement Agreement was filed with the Court. The Court granted preliminary approval of the Settlement Agreement on _____. The deadline for filing any objections is _____, 2011. The final approval hearing has been set for _____, 2011 at _____ __.m.

The following information is submitted on the enclosed CD:

1. A copy of: (1) the *Riccio* Complaint; (2) the *Cedarleaf* Complaint; (3) the *Uberti* Complaint; and (4) the Consolidated Amended Complaint (*see* 28 U.S.C. § 1715(b)(1)).

2. The Court's Order dated _____, 2011 preliminarily approving the Settlement Agreement and setting the date of the Fairness hearing (*see* 28 U.S.C. § 1715(b)(2)).

3. The Class Notice and Publication Notice, as preliminarily approved by the Court on _____. There is no right to exclusion from the class (*see* 28 U.S.C. § 1715(b)(3)).

4. The Settlement Agreement, together with the attached exhibits (*see* 28 U.S.C. § 1715(b)(4),(5)).

5. The parties' proposed Final Judgment and Order approving the Settlement Agreement (*see* 28 U.S.C. § 1715(b)(6)).

6. The Court's February 9, 2009 Order dismissing the Complaint with prejudice, the Court's February 9, 2009 Notice of Judgment in favor of the defendants, and the Court's February 10, 2009 *Nunc Pro Tunc* Order amending the February 9, 2009 Order (*see* 28 U.S.C. § 1715(b)(8)).

In addition, 28 U.S.C. § 1715(b)(7)(A) provides that a notification must include, "if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement …." Huntington has assembled a list, sorted by state, of all putative class members who participated in the Plan for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund during the proposed class period (defined as July 1, 2007 through April 1, 2009). Based on the information that is currently available to Huntington, Huntington has estimated the Net Settlement Fund Payment that will be distributed to each class member if the Court grants final approval to the settlement, as well as the proportionate share of the total amount of the Net Settlement Fund Payments that would be distributed to class members residing in each State. The enclosed CD contains an Excel spreadsheet that contains this information.

For purposes of calculating the Net Settlement Fund Payments, Huntington has assumed that the amount of the Net Settlement Fund, as defined in the Settlement Agreement, will be $900,000.00. Please be advised, however, that as described in Sections 6 and 12 of the Settlement Agreement, the final amount of the Net Settlement Fund will not be determined until the costs of administering the Settlement are known and the Court adjudicates Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award. The Settlement Agreement states that Class Counsel will request the Court to award each Named Plaintiff an amount not to exceed $2,000.00 from the Gross Settlement Fund. The proposed Case Contribution Awards have not been included in the Named Plaintiffs' estimated Net Settlement Fund Payments.

Section 1715 provides two time deadlines for service of the CAFA notice, and Huntington has complied with both of these deadlines. First, § 1715(b) provides that Huntington must file this notice "not later than 10 days after a proposed settlement of a class action is filed in court." Huntington has complied with this deadline because the settlement was filed in court on _____, 2011, and this notice is being served by Federal Express on _____, 2011. Second, § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than

2

90 days after" service of the notice on the appropriate federal official.  This notice complies with that deadline because the final approval hearing has been set for _____, 2011.

        The foregoing information is provided based on the information currently available to the defendants and is based on the status of the proceedings at the time of the submission of this notification.  For additional information, please contact counsel for Huntington Bancshares Inc., Walter C. Carlson or Erin E. Kelly, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, (312) 853-7000.

# EXHIBIT 5

## ESCROW AGREEMENT

This Escrow Agreement is made among Keller Rohrback L.L.P. and Barroway Topaz Keller Meltzer & Check LLP ("Class Counsel"), Sidley Austin LLP and Porter Wright Morris & Arthur LLP ("Defense Counsel"), and **THE HUNTINGTON NATIONAL BANK**, as escrow agent ("Escrow Agent").

### Recitals

A.      This Escrow Agreement governs the deposit, investment and disbursement of the Settlement Payment that, pursuant to the Settlement Agreement and Release ("Settlement Agreement") entered into by, among others, Class Counsel on behalf of Plaintiffs and Defense Counsel on behalf of Huntington Bancshares Incorporated ("Huntington") and the Individual Defendants (collectively, "Defendants"), will be paid to settle the putative class action captioned In re Huntington Bancshares Incorporated ERISA Litigation, No. 08-CV-0165, filed in the U.S. District Court for the Southern District of Ohio (the "Court"). Capitalized terms used herein, but not otherwise defined herein, shall have the respective meanings given to such terms in the Settlement Agreement.

B.      Pursuant to the Settlement Agreement, Huntington has agreed to pay or cause to be paid the total amount of one million four hundred and fifty thousand ($1,450,000) in cash (the "Settlement Payment" or "Settlement Fund") into the Escrow Account. The Settlement Payment shall be the full and sole monetary contribution made by or on behalf of the Defendants to the Plaintiffs in connection with the Settlement Agreement.

C.      Pursuant to the Settlement Agreement, the Settlement Payment is to be deposited into escrow and ultimately used to make Net Settlement Fund Payments to Settlement Class Members, make Court-approved payments for Class Counsel's attorneys' fees and costs, make Court-approved Case Contribution Awards to Named Plaintiffs, pay tax liabilities and expenses ("Tax Expenses"), and pay other costs of administering the Settlement. The balance of the Gross Settlement Fund, after the payment of such costs, shall be referred to as the Net Settlement Fund.

### Agreement

1.      **Appointment of Escrow Agent.**  Escrow Agent is hereby appointed to receive and deposit the Settlement Payment and disburse the Gross Settlement Fund pursuant to the terms and conditions described in this Escrow Agreement (which has been attached as Exhibit 5 to the Settlement Agreement and incorporated therein) and any other exhibits or schedules that may subsequently be annexed to this Escrow Agreement and made a part hereof and in accordance with orders of the Court.

2.      **The Escrow Account.**  Escrow Agent shall establish and maintain an escrow account titled the Huntington ERISA Settlement Escrow Account (the "Escrow Account"). Pursuant to the Settlement Agreement, Huntington shall cause the Settlement Payment to be

deposited into the Escrow Account within thirty (30) days after the Court enters the Preliminary Approval Order described in Section 11 of the Settlement Agreement. The Settlement Payment and any interest accrued thereon shall be referred to herein as the Gross Settlement Fund. The Gross Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions set forth in the Escrow Agreement and in orders of the Court approving the disbursement of the Gross Settlement Fund. The Defendants shall have no further funding obligation to the Settlement Fund whatsoever after such funding occurs.

3.    **Investment of Gross Settlement Fund.**   As promptly as possible upon the receipt of the Settlement Payment (or the next business day if funds become available after 12:00 noon) the Escrow Agent shall invest the Gross Settlement Fund exclusively in one or more of the following: United States Treasury Bills (T-Bills), a U.S. Government Money Market Fund, or an account fully guaranteed by the United States or an agency thereof, such as an FDIC-Insured Account. The Escrow Agent may sell or present for redemption any investment described in this Paragraph whenever it may be necessary in order to provide funds to meet any payment required pursuant to this Escrow Agreement. The Escrow Agent shall not be liable or responsible for any loss resulting therefrom, except for liability for losses arising out of the Escrow Agent's negligence, gross negligence or misconduct as adjudicated by a court of competent jurisdiction.

4.    **Escrow Funds Subject to Jurisdiction of the Court.**   The Gross Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Gross Settlement Fund shall be distributed pursuant to the Escrow Agreement and further order(s) of the Court.

5.    **Tax Treatment & Report.**   The Gross Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. The Parties agree that Escrow Agent, or any accounting firm that the Escrow Agent may retain, shall timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Gross Settlement Fund shall be the Escrow Agent. The Escrow Agent, or any accounting firm that it may retain, shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. The Escrow Agent, or any accounting firm that it may retain, shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Gross Settlement Fund and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.    **Tax Expenses of Gross Settlement Fund.**

(a)    As described in the Settlement Agreement, all Tax Expenses with respect to the Gross Settlement Fund shall be treated as and considered to be a cost of administration of

the Gross Settlement Fund and the Escrow Agent shall timely pay such Tax Expenses solely out of the Gross Settlement Fund, as appropriate, without prior order of the Court. Escrow Agent shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The Escrow Agent may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as described in Paragraphs 5 and 6 of this Escrow Agreement, and the expense of such assistance shall be paid from the Gross Settlement Fund. The Gross Settlement Fund shall indemnify and hold the Defendant Releasees, including, without limitation, Escrow Agent, harmless for any taxes that may be deemed to be payable by reason of the income earned on the Settlement Payment or Gross Settlement Fund, and Escrow Agent shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Payment or Gross Settlement Fund and the obligations imposed by this paragraph. In addition, Plaintiffs shall hold the Defendant Releasees, including, without limitation, Escrow Agent, harmless for any tax liabilities that are paid out of the Escrow Account. In all events, Class Counsel shall not have any liability or responsibility for the payment of taxes or Tax Expenses from the Escrow Account, or any tax withholding obligations, or the preparation or filing of any tax returns, information returns, or other tax-related documents. If the Settlement is not approved by the Court and the Settlement Payment or Gross Settlement Fund is returned to Huntington pursuant to the terms of the Settlement Agreement, Huntington shall provide Escrow Agent with a properly completed Form W-9.

(b)     Any and all information and tax returns filed in connection with the Escrow Account (as well as the election described in Paragraph 5, above) shall reflect that all Tax Expenses shall be paid out of the Escrow Account.

7.     **Disbursement Instructions.**

(a)     Disbursements other than those described in Paragraphs 5 and 6 of this Escrow Agreement must be authorized by either (i) a prior order of the Court, or (ii) the written consent of Class Counsel and Defense Counsel.

(b)     In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated pursuant to subparagraph (a) only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Escrow Agent receives written letters authorizing a disbursement from each of the law firms required pursuant to subparagraph (a), as applicable, on their letterhead. To assure accuracy of the instructions it receives, Escrow Agent may record such call backs. If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations,

3

and (ii) is received and acknowledged by Escrow Agent. Class Counsel and Defense Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

8. <u>**Creation of the Net Settlement Fund.**</u>

(a)     Pursuant to Section 6 of the Settlement Agreement, the Gross Settlement Fund shall be used to pay the Tax Expenses, the additional reasonable costs of administering the Settlement, any attorneys' fees and costs awarded by the Court to Class Counsel, and any Case Contribution Awards to the Named Plaintiffs. No earlier than ten (10) business days after the entry of an order granting the Petition for Fees, Costs and Named Plaintiff's Case Contribution Award (the "Petition") that is described in Section 12 of the Settlement Agreement, Class Counsel may request disbursement of the award of Class Counsel's attorney's fees and costs from the Gross Settlement Fund. In such an event, Class Counsel shall send the Escrow Agent a copy of the Court's order and request payment. Class Counsel shall copy Defendants' Counsel on the correspondence to the Escrow Agent. The Escrow Agent's disbursement of attorneys' fees and costs will be subject to Class Counsel providing a letter of credit satisfactory to Defendants' counsel as described in Section 12(c) of the Settlement Agreement. If the conditions described in Section 12(c) of the Settlement Agreement are satisfied, the Escrow Agent will disburse the award of attorneys' fees and costs from the Gross Settlement Fund within five (5) business days of receiving from Class Counsel a copy of the Court order granting the Petition.

(b)     The balance of the Gross Settlement Fund, after the payment of Class Counsel's attorneys' fees and costs, Case Contribution Awards to the Named Plaintiffs and the amounts described in Section 6 of the Settlement Agreement (*e.g.,* Tax Expenses, costs of the Settlement Administrator or other compensable out-of-pocket costs), shall be referred to as the Net Settlement Fund.

(c)     Upon the occurrence of the Effective Date of the Final Judgment and Order and the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award (as defined in Section 14 of the Settlement Agreement), Class Counsel may request the Escrow Agent to disburse the Case Contribution Awards to the Named Plaintiffs. In addition, if Class Counsel has not yet requested the distribution of attorney's fees and costs pursuant to Section 8(a), above, the Escrow Agent shall disburse any attorney's fees and costs that were awarded to Class Counsel by the Court.

(d)     In the absence of an agreement to the contrary, no later than twenty-one (21) days after the Effective Date of the Final Judgment and Order and the Final Date of any order regarding Class Counsel's Petition for Fees, Costs, and Named Plaintiff's Case Contribution Award, the Escrow Agent shall transfer the Net Settlement Fund to a subaccount in

4

the Huntington Investment and Tax Savings Trust, provided that copies of such judgment and orders were delivered promptly to the Escrow Agent.

9.    **Fees.**  Pursuant to Section 6 of the Settlement Agreement, the Escrow Agent will not charge an escrow agent fee and will charge only its out-of-pocket expenses for serving as Escrow Agent.  All out-of-pocket fees and expenses of Escrow Agent shall be paid solely from the Gross Settlement Fund.  With the exception of the Tax Expenses described in Paragraphs 5 and 6 of this Agreement, the Escrow Agent may pay itself such fees and expenses from the Gross Settlement Fund only after they have been approved for payment by Class Counsel or an order of the Court.  If Escrow Agent is asked to provide additional services, such as the preparation and administration of settlement payments made to Settlement Class Members, a separate agreement and fee schedule will be entered into.

10.    **Duties, Liabilities and Rights of Escrow Agent.**  This Escrow Agreement, which is incorporated into the Settlement Agreement, sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement, the Settlement Agreement, or any other agreement, instrument or document.

(a)    Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel or Defense Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)    Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred under this paragraph from the Escrow Account only (i) upon approval by Class Counsel or (ii) pursuant to an order of the Court.

(c)    The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Gross Settlement Fund may be invested.

(d)    Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)    Escrow Agent shall not bear any risks related to the investment of the Gross Settlement Fund in accordance with the provisions of Paragraph 3 of this Escrow Agreement, except for liability, damage or losses arising out of its negligence, gross negligence or misconduct as adjudicated by a court of competent jurisdiction.

5

        (f)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

        11.    **Non-Assignability by Escrow Agent.**    Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and Defense Counsel.

        12.    **Resignation of Escrow Agent.**  Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.  On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.  If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.  Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

        13.    **Notices.**  Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:        Joseph H. Meltzer
                                   Peter H. LeVan, Jr.
                                   Mark K. Gyandoh
                                   BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
                                   280 King of Prussia Road
                                   Radnor, PA  19087
                                   Telephone:  610-667-7706
                                   Fax:  610-667-7056

                                   Lynn L. Sarko
                                   Derek W. Loeser
                                   T. David Copley
                                   KELLER ROHRBACK L.L.P.
                                   1201 Third Avenue, Suite 3200
                                   Seattle, WA  98101-3052
                                   Telephone:  206-623-1900
                                   Fax:  206-623-3384

If to Defendants:      Walter C. Carlson
Erin E. Kelly
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone: 312-853-7000
Fax: 312-853-7016

Bradd N. Siegel
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Columbus, OH  43215
Telephone: 614-227-2000
Fax: 614- 227-2100

If to Escrow Agent:    THE HUNTINGTON NATIONAL BANK
Attention: Christopher Ritchie, Senior Vice President
630 Freedom Business Center, 3rd Floor
King of Prussia, PA  19406
Telephone:  (215) 568-2328
Facsimile:  (215) 568-2385
E-mail:  chris.ritchie@huntington.com

THE HUNTINGTON NATIONAL BANK
Attention:  Candada J. Moore, Senior Vice President
7 Easton Oval - EA4E63
Columbus, OH  43219
Telephone:  (614) 31-9556
Facsimile:  (614) 331-5862
E-mail:  candi.moore@huntington.com

14.    **Patriot Act Warranties.**  Class Counsel hereby acknowledges receiving from Huntington the following representations and warranties concerning the Settlement Payment that Huntington will deliver for deposit with the Escrow Agent:

(a)    Huntington hereby acknowledges that it seeks to comply with all applicable laws concerning money laundering and related activities.  In furtherance of those efforts, Huntington hereby represents, warrants, and agrees that, to the best of its knowledge:

(i)    none of the cash or property that it has paid, will pay or will contribute under the Settlement Agreement has been or shall be derived from, or related to, an activity that is deemed criminal under United States law; and

(ii)    no contribution or payment by Huntington to the Escrow Account shall cause Escrow Agent to be in violation of the United States Bank Secrecy Act, the United

7

States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001.

(b)     Huntington agrees to promptly notify Escrow Agent if any of the foregoing representations cease to be true and accurate. Huntington agrees to provide to Escrow Agent any additional information regarding itself or any insurers contributing to the Gross Settlement Fund which is reasonably necessary or appropriate for the Escrow Agent to ensure its compliance with all applicable laws concerning money laundering and similar activities, subject to any confidentiality obligations (recognized or permitted by law) that may restrict or prohibit Huntington from providing such information. Escrow Agent agrees to keep any information provided by Huntington pursuant to this paragraph confidential, and will not disclose such information to any other party except to the extent necessary or appropriate to ensure compliance with all applicable laws concerning money laundering and similar activities; provided, however, that Escrow Agent shall give notice to Huntington as soon as practicable in the event it expects that such a disclosure will become necessary.

(c)     Huntington agrees that if at any time Escrow Agent determines that any of the foregoing representations are incorrect with respect to it, or if otherwise required by applicable law or regulation related to money laundering and similar activities, Escrow Agent may undertake whatever actions are reasonably appropriate to ensure compliance with applicable law or regulation.

15.     **Entire Agreement.**   This Escrow Agreement, including any Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern. Further, this Escrow Agreement is deemed to have been drafted by all parties hereto and no language contained herein shall be construed against any party hereto.

16.     **Governing Law.**   This Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17.     **Termination of Escrow Account.**   The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

18. **Miscellaneous Provisions.**

(a)  Counterparts. This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)  Further Cooperation. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (i) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (ii) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (iii) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)  Non-Waiver. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

(d)  The Escrow Agent shall transmit to Class Counsel, upon request, within five (5) business days after the receipt of each periodic (monthly) account statement until the termination of this Escrow Agreement (and within five (5) business days after the receipt of any periodic statement received after the termination of this Escrow Agreement), a statement of receipts and disbursements, and property on hand pertaining to the Escrow Account.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Escrow Agent

By:  _Christopher W. Ritchie_
        Christopher W. Ritchie, SVP
        The Huntington National Bank

Dated:  _2/15/11_

9

Class Counsel

By: _____

Joseph H. Meltzer
Edward W. Ciolko
Peter H. LeVan, Jr.
Mark K. Gyandoh
BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706

Lynn L. Sarko
Derek W. Loeser
T. David Copley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206-623-1900

Dated: _2 -16- 11_

Defense Counsel

By: _____

Erin E. Kelly
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Bradd N. Siegel
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Columbus, OH 43215
Telephone: 614-227-2000

Dated: _2)15)11_

10

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

IN RE HUNTINGTON BANCSHARES INC.   )    Case No. 2:08-CV-0165
ERISA LITIGATION                   )
                                    )    Hon. Gregory L. Frost
This document relates to:          )
                                    )    Hon. Terence P. Kemp
No. 2:08-CV-0175             )
No. 2:08-CV-0197             )
                                    )

**ORDER PRELIMINARILY APPROVING THE PARTIES' SETTLEMENT
AGREEMENT AND RELEASE, CERTIFYING A SETTLEMENT CLASS FOR
PURPOSES OF SETTLEMENT, APPROVING THE FORM AND MANNER OF
NOTICE, AND SCHEDULING A HEARING ON THE FAIRNESS OF THE
SETTLEMENT PURSUANT TO FEDERAL RULE 23(e)**

The Named Plaintiffs have filed an unopposed motion for an Order (a) preliminarily approving the settlement of this action pursuant to the terms and conditions of the Parties' Settlement Agreement and Release (the "Settlement Agreement"); (b) approving the form of Class Notice and Publication Notice and directing the manner of delivery and publication of the same; (c) approving the form and content of the notice prepared pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"); (d) certifying a Settlement Class under FED. R. CIV. P. 23(a) and 23(b)(l) and (b)(2) for purposes of settlement only; and (e) scheduling a hearing to consider the fairness of the Settlement Agreement pursuant to FED. R. CIV. P. 23(e) and to consider Class Counsel's petition for attorneys' fees, costs and Named Plaintiff's Case Contribution Awards (the "Fairness Hearing").

The parties having come before the Court, due notice having been given, and the Court having been duly advised in the premises, and upon consideration of the Settlement Agreement, Plaintiffs' unopposed motion and memorandum in support thereof and exhibits attached thereto, the pleadings and records on file, and good cause appearing, it is hereby ORDERED as follows:

1.      This Court has jurisdiction over the subject matters of this action, all members of the Settlement Class, and all Defendants pursuant to 29 U.S.C. § 1132(e).

2.      To the extent not otherwise defined herein, all capitalized terms shall have the same meaning as used in the Settlement Agreement.

3.      The Settlement Agreement is hereby preliminarily approved as fair, reasonable, and adequate.  The Court also preliminarily determines that (a) the Settlement Agreement is in the best interest of the Named Plaintiffs on behalf of themselves, the Settlement Class (as defined below), and the Huntington Investment and Tax Savings Plan (the "Plan") (collectively, "Plaintiffs"), (b) the Settlement Agreement has no obvious deficiencies, and (c) the Settlement Agreement is the product of serious, informed, arm's-length and non-collusive negotiations.

4.      The Class Notice and Publication Notice proposed by Plaintiffs are hereby approved.  Within the time permitted by Paragraph 5  below, Class Counsel shall arrange to mail the Class Notice by first-class mail, postage prepaid, to all known Settlement Class Members to the last known address on file with the Plan's recordkeeper.  Within the time permitted by Paragraph 5, below, Publication Notice shall be published through both PR Newswire and the Columbus Dispatch or in an alternative publication mutually agreed upon by the Parties.

5.      Class Counsel shall mail the Class Notice and publish the Publication Notice on or before June 17, 2011 (no later than seventy-five (75) days before the Fairness Hearing).  Class Counsel will ensure that the Class Notice and Publication Notice will be handled in the manner set forth herein and as required by the Settlement Agreement, and shall file an affidavit with the Court attesting to the mailing and publication of the Class Notice and Publication Notice on or before the date of the Settlement Fairness Hearing.  The form and manner of delivery and publication of the Class Notice and Publication Notice directed herein and in the Settlement

2

Agreement meet the requirements of FED. R. CIV. P. 23 and due process, constitute the best

notice practicable under the circumstances, and shall constitute due and sufficient notice to all

Settlement Class Members.  Class Counsel shall also post copies of the Settlement Agreement,

including the Plan of Allocation, the Class Notice, and the Publication Notice on an internet

website.

6.      The form of notice proposed by Defendants pursuant to the Class Action Fairness

Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice") complies with the requirements of the Act and

is hereby approved.  Huntington shall mail the CAFA Notice on or before May 6, 2011 (within

ten days of the date Plaintiffs filed their motion for preliminary approval of the Settlement).

7.      The Court hereby preliminarily approves the maintenance of this action as a class

action for purposes of settlement only, pursuant to FED. R. CIV. P. 23(a) and 23(b)(l) and (b)(2).

The Court hereby certifies the following Settlement Class:

> All persons, excluding the Defendants, who participated in the Plan for whose
> individual accounts the Plan purchased or held units in the Huntington Stock Fund
> at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class
> Period").

8.      The Court preliminarily finds that (a) the joinder of all proposed Settlement Class

Members is impracticable; (b) there are questions of law and fact common to the Settlement Class;

(c) the claims raised by the Named Plaintiffs are typical of the claims of the Settlement Class; (d)

the Named Plaintiffs will fairly and adequately represent the interests of the Settlement Class; and

(e) the prosecution of separate actions by individual members of the Settlement Class would create

a risk of (i) inconsistent or varying adjudications with respect to individual members of the

Settlement Class that would establish incompatible standards of conduct for all Defendants; and

(ii) adjudications with respect to individual members of the Settlement Class that would as a

practical matter be dispositive of the interests of the other members of the Settlement Class; and

(f) the Named Plaintiffs have alleged that the Defendants have acted or refused to act on grounds generally applicable to the Settlement Class. The Court further finds and determines, pursuant to FED. R. CIV. P. 23(a) that Hilda Riccio, Nathan Cedarleaf, Aileen Moening, and Carol Uberti have and will adequately represent the Settlement Class, and are hereby approved as Settlement Class Representatives.

9.      If the Litigation is not settled pursuant to the terms of the Settlement Agreement, then (a) no Settlement Class will be deemed to have been certified, and (b) no reference to the Settlement Class or any documents related thereto shall be made for any purpose. Defendants' agreement to a Settlement Class for the purpose of settling the Litigation does not constitute an admission that class certification would be appropriate if the Litigation were to proceed. If the Settlement Agreement is terminated pursuant to its terms, or is not approved by the Court, or is reversed, vacated, or modified, Defendants shall have the right to oppose any class certification that may subsequently be sought. Defendants preserve the right to object to class certification in any other lawsuit and under all other circumstances.

10.     The Court preliminarily appoints as Class Counsel the law firms of Keller Rohrback L.L.P. and Barroway Topaz Kessler Meltzer & Check, LLP ("Class Counsel").

11.     Huntington Bancshares Incorporated ("Huntington") retained Fiduciary Counselors, Inc. to serve as an independent fiduciary of the Plan ("Independent Fiduciary") to determine whether the Settlement Agreement should be authorized for the Plan and to make any other determinations called for by the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-39 ("Department of Labor's Class Exemption, PTE 2003-39"). This Court preliminarily finds that Fiduciary

Counselors, Inc. is qualified to serve as Independent Fiduciary and to make the determinations called for by the Department of Labor's Class Exemption, PTE 2003-39.

12.  A hearing (the "Fairness Hearing") pursuant to FED. R. CIV. P. 23(e) is hereby scheduled to be held before the Court on September 1, 2011, at 12:00 p.m. in Courtroom 169 to make a final determination as to:

      a.    whether the proposed Settlement Agreement (including, but not limited to, the Plan of Allocation) is fair, reasonable, and adequate and in the best interest of the Plaintiffs;

      b.    whether this Litigation satisfies the applicable prerequisites for class action treatment under FED. R. CIV. P. 23(a) and 23(b)(1) and (b)(2);

      c.    whether the Settlement Agreement has been entered into in good faith and is non-collusive;

      d.    whether the Class Notice and Publication Notice comply with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and are due and sufficient notice to all persons entitled to notice of the settlement of this Litigation;

      e.    whether the Independent Fiduciary is authorized to determine, and has determined, whether the Settlement Agreement is authorized for the Plan;

      f.    whether the Independent Fiduciary is authorized to make, and has made, any other determinations called for by the Department of Labor's Class Exemption, PTE 2003-39;

      g.    whether the Settlement Agreement complies with Internal Revenue Service Revenue Ruling 2002-45, 2002-2 C.B. 116 (June 26, 2002); and that the Settlement Payment is a restorative payment;

      h.    whether the Final Judgment and Order should be entered, whether the Litigation and each Defendant is dismissed with prejudice, and whether the Released Claims are all released and discharged as of the Effective Date of the Final Judgment and Order;

      i.    whether the bar order provisions in the Settlement Agreement should be entered permanently enjoining and barring the Plaintiffs from commencing or prosecuting any action that asserts any of the Released Claims against any of the Defendant Releasees, either directly,

5

representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located;

j.    to rule upon such other matters as the Settlement Agreement contemplates and as the Court may deem just and proper.

13.    Any petition by Class Counsel for attorneys' fees, costs and Case Contribution Awards to the Named Plaintiffs, and all briefs in support thereof, shall be filed with the Court and served on all counsel of record on or before July 7, 2011 (no later than fifty-six (56) days before the Fairness Hearing). In addition, briefs and other documents in support of final approval of the Settlement Agreement shall be filed on or before July 7, 2011. Responses to any objections shall be filed within the time permitted under Paragraph 21, below.

14.    The Court having preliminarily determined that this action may proceed as a class action under FED. R. CIV. P. 23(a) and 23(b)(l) and (b)(2), the Settlement Class shall be bound by any judgment subsequently entered in this action, in accordance with the Court's final determination at the Fairness Hearing.

15.    At the Fairness Hearing, the Court shall consider objections, if any, to (i) the certification of the Settlement Class under FED. R. CIV. P. 23(a) and 23(b)(1) and (b)(2), (ii) the Settlement Agreement, including the Plan of Allocation, (iii) any petition for an award of Class Counsel's attorneys' fees and costs, (iv) any petition for a Case Contribution Award to the Named Plaintiffs, or (v) any other matter pertaining to the Settlement Agreement.

16.    No Settlement Class Member shall be entitled to object unless he or she files and serves a written objection in the form and manner required by this Order and the Class Notice. The objections and any supporting papers must be filed with the Clerk of the Court, United States District Court for the Southern District of Ohio, Joseph P. Kinneary U.S. Courthouse, 85

Marconi Boulevard, Columbus, Ohio 43215, on or before July 28, 2011 (no later than thirty-five (35) days before the Fairness Hearing).

17.     The Independent Fiduciary shall make the determinations called for by the Department of Labor's Class Exemption, PTE 2003-39, on or before August 11, 2011 (no later than twenty-one (21) days before the Fairness Hearing).

18.     On or before the deadline for filing objections, copies of all such papers must be served upon the following counsel for Plaintiffs and Defendants:

### Counsel for Plaintiffs

> Joseph H. Meltzer
> Peter H. LeVan, Jr.
> Mark K. Gyandoh
> BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
> 280 King of Prussia Road
> Radnor, PA  19087
>
> Lynn L. Sarko
> Derek W. Loeser
> David Copley
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA  98101-3052

### Counsel for Defendants

> Walter C. Carlson
> Erin E. Kelly
> Sidley Austin LLP
> 1 South Dearborn Street
> Chicago, IL  60603

19.     Written objections must contain the following information:  (i) a statement certifying that the objector is a member of the Settlement Class, (ii) the objector's name, address, telephone number and, if applicable, the name, address and telephone number of his or her attorney, (iii) a detailed statement of the objector's specific objections to any matter before the Court and all of the

grounds for the objection, (iv) all of the documents such person wishes the Court to consider, (v) the names, addresses, and telephone numbers of any witness the objector may seek to call to testify, and (vi) any exhibits that the objector may seek to introduce into evidence at the Fairness Hearing. In addition, persons wishing to be heard orally must state in their written objection(s) their intention to appear at the Settlement Fairness Hearing (attendance at the Fairness Hearing, however, is not required). Any objection must be accompanied by copies of any supporting papers or briefs that the objector intends to submit in support of the objection.

20.  Any person who fails to file and serve a written objection within the time permitted and in the manner required by this Order and the Class Notice shall be deemed to have waived any objections and shall be barred from raising such objections.

21.  Any responses to objections shall be filed with the Court and served on opposing counsel on or before August 18, 2011 (no later than fourteen (14) days before the Fairness Hearing). There shall be no reply briefs.

22.  Pending final determination of whether the Settlement Agreement should be approved, the Plaintiffs are hereby barred and enjoined from instituting or prosecuting any action that purports to challenge the preparation or structuring of the methodology for the distribution of the Gross Settlement Fund and the Net Settlement Fund, including the Plan of Allocation or any amounts calculated in good faith in accordance therewith or that asserts any Released Claim against any Defendant Releasee (as those terms are defined in the Settlement Agreement), either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located. Any person or entity who knowingly violates this injunction shall pay the costs and attorneys' fees incurred by any Defendant Releasee as a result of the

violation.  Nothing in this paragraph shall be construed to prevent a member of the Settlement

Class from presenting objections to this Court regarding the Settlement Agreement in accordance

with the terms of this Order and the Class Notice.

23.　　In the event that the Settlement Agreement is not finally approved, this Order

shall be vacated.  Each party to the Settlement Agreement shall be restored to his, her, or its

respective position as it existed prior to the execution of the Settlement Agreement.

24.　　The Court may, for good cause, extend any of the deadlines set forth in this Order

or adjourn or continue the Fairness Hearing without further notice to the Class.

　　　　**SO ORDERED** this _____ day of _____, 2011.


　　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　HON. GREGORY L. FROST
　　　　　　　　　　　　　　　　　　　　　United States District Court
　　　　　　　　　　　　　　　　　　　　　Southern District of Ohio

EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| IN RE HUNTINGTON BANCSHARES INC. | ) | Case No. 2:08-CV-0165 |
| ERISA LITIGATION | ) | |
| | ) | Hon. Gregory L. Frost |
| This document relates to: | ) | |
| | ) | Hon. Terence P. Kemp |
| No. 2:08-CV-0175 | ) | |
| No. 2:08-CV-0197 | ) | |
| | ) | |

## FINAL JUDGMENT AND ORDER

Plaintiffs' motion for final approval of the Settlement Agreement and Release ("Settlement Agreement") was heard on __ _____, 2011.

On __ _____, 2011, this Court entered an order that, *inter alia*, granted preliminary approval of the Settlement Agreement, certified a Settlement Class for purposes of settlement only, and approved the form and manner of Class Notice and Publication Notice (the "Preliminary Approval Order").

On _____, 2011, the Court held a settlement fairness hearing (the "Settlement Fairness Hearing"), for which the Settlement Class had been given appropriate notice. A full and fair opportunity to be heard was given to all persons who requested to be heard in accordance with the Preliminary Approval Order, Class Notice, and Publication Notice.

Having considered the Plaintiffs' moving papers, the Settlement Agreement (including, but not limited to, the Plan of Allocation), and all other evidence concerning Plaintiffs' motion for final approval of the Settlement Agreement, this Court having been duly advised in the premises,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.     This Court has jurisdiction over the subject matters of this action, all members of the Settlement Class, and all Defendants pursuant to 29 U.S.C. § 1132(e).

2.     To the extent not otherwise defined herein, all terms shall have the same meaning as used in the Settlement Agreement.

3.     The Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as being fair, reasonable, and adequate.  The Court also determines that (a) the Settlement Agreement is in the best interest of the Named Plaintiffs on behalf of themselves, the Settlement Class, and the Huntington Investment and Tax Savings Plan (the "Plan") (collectively, "Plaintiffs"), (b) the Settlement Agreement is fair, reasonable and adequate, and (c) the Settlement Agreement is the product of serious, informed, arm's-length and non-collusive negotiations.

4.     The Plan of Allocation is fair and reasonable.  The Parties shall direct the distribution of the Net Settlement Fund in accordance with the Plan of Allocation and the Settlement Agreement.

5.     The Independent Fiduciary is authorized to determine whether the Settlement should be authorized for the Plan and to make any other determinations called for by the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-39 (the "Department of Labor's Class Exemption, PTE 2003-39").

6.     The Settlement is supported by a determination from the Independent Fiduciary that the Settlement Agreement is authorized by, and is appropriate for, the Plan.  This Court finds that the Settlement complies with the terms of the Department of Labor's Class Exemption, PTE 2003-39 and does not constitute a "prohibited transaction" under ERISA.

2

7.     The Settlement Agreement complies with Internal Revenue Service Revenue Ruling 2002-45, 2002-2 C.B. 116 (June 26, 2002), and the Settlement Payment is a restorative payment.

8.     The Court determines that the Class Notice and Publication Notice (collectively, "Notice") transmitted to the Settlement Class Members pursuant to the Preliminary Approval Order and the Settlement Agreement constituted the best notice practicable under the circumstances and provided individual notice to all members of the Settlement Class who could be identified through reasonable efforts.  The Class Notice and Publication Notice provided valid, adequate, and sufficient notice of, among other things, these proceedings, the Settlement, the Released Claims, and the Plan of Allocation to all persons entitled to such notice.  Such notice has fully satisfied the requirements of FED. R. CIV. P. 23 and the requirements of due process.

9.     The form and manner of the notice provided by Huntington Bancshares Incorporated pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA") is hereby determined to have been given in compliance with CAFA (the "CAFA Notice").

10.     The Court certifies this Litigation as a class action pursuant to FED. R. CIV. P. 23(a) and 23(b)(l) and (b)(2) for settlement purposes only.  The Settlement Class consists of the following individuals:

> All persons, excluding the Defendants, who participated in the Plan for whose individual accounts the Plan purchased or held units in the Huntington Stock Fund at any time from July 1, 2007 through April 1, 2009, inclusive (the "Class Period").

11.     The Court finds that (a) the joinder of all proposed Settlement Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims raised by Named Plaintiffs are typical of the claims of the Settlement Class Members; (d)

the Named Plaintiffs have fairly and adequately represented the interests of the Settlement Class; and (e) the prosecution of separate actions by individual members of the Settlement Class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the Settlement Class that would establish incompatible standards of conduct for all Defendants; and (ii) adjudications with respect to individual members of the Settlement Class that would as a practical matter be dispositive of the interests of the other members of the Settlement Class; and (f) Named Plaintiffs have alleged that the Defendants have acted or refused to act on grounds generally applicable to the Settlement Class.

12.     The Court finds and determines pursuant to FED. R. CIV. P. 23(a) that Named Plaintiffs Hilda Riccio, Nathan Cedarleaf, Aileen Moening, and Carol Uberti have adequately represented the Settlement Class as Class Representatives, and are hereby approved as Settlement Class Representatives.

13.     This Court has duly considered any objections to the Settlement that were filed and [overrules] them.  **[Court to insert if applicable]**

14.     The Court hereby dismisses the Litigation against the Defendants with prejudice on the merits.

15.     The Released Claims, as defined in the Settlement Agreement, are released and discharged as of the Effective Date of this Final Judgment and Order.

16.     The Plaintiffs are enjoined and barred from commencing or prosecuting any action that purports to challenge the preparation or structuring of the Plan of Allocation or that asserts any Released Claim against any Defendant Releasee (as those terms are defined in the Settlement Agreement), either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or

4

in any agency or other authority or forum wherever located.  Any person or entity who knowingly violates this injunction shall pay the costs and attorneys' fees incurred by any Defendant Releasee as a result of the violation.

17.  The Court hereby decrees that the Settlement Agreement, the Preliminary Approval Order, this Final Judgment and Order, all drafts of the foregoing, and any negotiations or proceedings relating to the foregoing shall not be construed as or deemed to be evidence of an admission, concession, or of any liability or wrongdoing by any Defendant, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except to enforce the terms of the Settlement Agreement or except as may be required by law or court order.  This Final Judgment and Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Litigation.

18.  Disbursements for Tax Expenses and other costs of administering the Settlement, including (a) the costs and expenses associated with identifying and notifying the Settlement Class Members of the Settlement and effectuating Notice, including, without limitation, (i) the costs of printing, mailing, and publishing the Class Notice and the Publication Notice,  (ii) the reasonable costs of the Settlement Administrator, and (iii) any out-of-pocket costs that Huntington may incur to gather required data, perform required settlement calculations, and establish Plan accounts for the purpose of distributing the Net Settlement Fund Payments, and (b) any out-of-pocket costs and expenses incurred by the Escrow Agent, are hereby approved.

19.  Without affecting the finality of this Final Judgment and Order, the Court retains jurisdiction to implement, interpret, or enforce the Final Judgment and Order, the Preliminary Approval Order, and the Settlement Agreement.

20.     In the event that (a) the Settlement Agreement is terminated pursuant to its terms, (b) the Settlement Agreement, Preliminary Approval Order, and Final Judgment and Order do not for any reason become effective under the terms of the Settlement Agreement; or (iii) the Settlement Agreement, Preliminary Approval Order, or the Final Judgment and Order are reversed, vacated, or modified in any material respect, then any and all orders entered pursuant to the Settlement Agreement, including this Final Judgment and Order, shall be deemed vacated. Under such circumstances, each party to the Settlement Agreement shall be restored to his, her, or its respective position as it existed prior to the execution of the Settlement Agreement. Defendants shall have the right to oppose any class certification motion that may subsequently be brought.

21.     This Court hereby retains jurisdiction for the purpose of interpreting or enforcing the Settlement Agreement.

SO ORDERED this _____ day of _____ _____, 2011.


_____
HON. GREGORY L. FROST
United States District Court
Southern District of Ohio

6